David M. Barkan (CA 160825 / barkan@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA  94063
Tel: (650) 839-5070 / Fax: (650) 839-5071

Robert Courtney (CA 248392 / courtney@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth St., Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

A. Louis Dorny (CA 212054 / ldorny@tesla.com)
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Paul Margulies (*pro hac application to be filed*)
pmargulies@tesla.com
TESLA, INC.
800 Connecticut Ave. NW
Washington, DC 20006
Tel: (202) 695-5388

Attorneys for Plaintiff, TESLA, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
_____ DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>MATTHEWS INTERNATIONAL CORPORATION, a Pennsylvania corporation,<br><br>      Defendant. | Case No.<br><br>**PLAINTIFF TESLA, INC.'S ORIGINAL COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tesla, Inc. ("Tesla"), by way of this Original Complaint against Matthews

International Corporation ("Matthews"), states and alleges as follows:

## NATURE OF ACTION

1.       This is an action for Matthews' willful and malicious misappropriation of Tesla's confidential trade secrets, as well as for unfair competition, both relating to Matthews' misuse and publication of trade secrets entrusted by Tesla to Matthews in confidence.

## PARTIES

2.       Plaintiff Tesla is a Texas company (recently redomesticated from Delaware), having its principal place of business at 1 Tesla Road, Austin, Texas.

3.       On information and belief, Defendant Matthews International Corporation is a corporation organized and incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business at Two Northshore Center, Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this case because it presents claims arising under federal trade secret law.  28 U.S.C. § 1331; 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over the other claims presented herein because they form part of the same case or controversy.  28 U.S.C. § 1367(a).

5.       This Court also has subject matter jurisdiction over this case because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because the matter in controversy is between citizens of different States in which a citizen of a foreign state is an additional party.  *See* 28 U.S.C. § 1332(a).

6.       Matthews has consented in writing to the personal jurisdiction of courts in the State of California, which is sufficient to confer this Court with personal jurisdiction over Matthews.  *SEC v. Blazon Corp.*, 609 F.2d 960, 965 (9th Cir. 1979).  Exhibit A to this Original Complaint is an agreement, executed by Matthews, bearing the title "Mutual Non-Disclosure Agreement."  Exhibits B and C are similar agreements, also executed by Matthews.  Paragraph 12 of each agreement identifies courts in California as appropriate forums for disputes "arising out of or relating to" that agreement and waives any challenge to jurisdiction.

7.       Even had Matthews not consented in writing to the personal jurisdiction of courts in the State of California, those courts would have personal jurisdiction over Matthews as to Tesla's

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

claims because Matthews has committed acts within and specifically directed to the State of California giving rise to those claims and has thus established minimum contacts with California such that the exercise of specific personal jurisdiction would not offend traditional notions of fair place and substantial justice.  Matthews employees regularly traveled to California, and otherwise directed communication to California, as part of their improper activities.  This included, but is not limited to, repeated trips to California over the last four years by Matthews' Chief Technology Officer Gregory Babe, frequently accompanied by other employees of Matthews and/or its subsidiaries.  During those trips, Mr. Babe and other employees of Matthews and its subsidiaries attended meetings with Tesla employees at which Tesla confidential trade secrets were discussed. Those trips to California were instrumental in Matthews' misconduct including, but not necessarily limited to, providing Matthews with access to Tesla's confidential trade secrets, as well as giving Matthews opportunities to compound the harm to Tesla by attempting to conceal its misappropriation of those secrets from Tesla.  Additional to those trips, employees of Matthews regularly directed communications to Tesla in California, including by both email and videoconference.  Those communications were also instrumental to Matthews misconduct including, but not necessarily limited to, providing Matthews with access to Tesla's confidential trade secrets, as well as giving Matthews opportunities to compound the harm to Tesla by attempting to conceal its misappropriation of those secrets

8.       Matthews has consented in writing to venue in this District, which is sufficient to establish that venue is proper in this District.  *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989).  Paragraph 12 of Exhibit A identifies this Court as an appropriate venue for disputes "arising out of or relating to" that agreement and waives any challenge to venue.

9.       Even had Matthews not consented in writing to venue in this District, venue would be proper in this District under 28 U.S.C. § 1391.  Upon information and belief, Matthews' contacts with the Northern District of California would be sufficient to subject it to personal jurisdiction if that District were a separate State.  Said contacts include Matthews' numerous trips, communications, and other contacts directed to California, each of which was specifically directed to Tesla's operations in California.

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

**DIVISIONAL ASSIGNMENT**

10.     Pursuant to Civil Local Rule 3-6(b), the undersigned notes that Paragraph 12 of Exhibit A identifies courts in Santa Clara County as appropriate venues for judicial actions "arising out of or relating to" that agreement, supporting assignment to this Court's San Jose Division.

**FACTUAL BACKGROUND**

11.     Tesla is the world's innovation and manufacturing leader for sustainable energy production, storage, and automotive technologies.  From its roots in California, Tesla employs over 100,000 employees globally.  This case relates to a technology at the very heart of Tesla's business which is its world-leading battery technology.  Specifically, this case concerns unauthorized theft and conversion by Matthews, a Tesla supplier, of Tesla's proprietary dry-electrode battery manufacturing technology.

12.     Tesla's dry-electrode battery manufacturing technology is one of its most path-breaking innovations.[1]  It is already reducing cost, energy consumption, and production cycle time for Tesla's assembly lines.  This includes Tesla's factory in Austin, which recently manufactured its *fifty millionth* battery cell using dry-electrode manufacturing technology.

13.     Like any large manufacturer, Tesla relies on trusted suppliers to supply "pilot" (i.e., pre-mass-production) and assembly line machinery that Tesla deploys as needed.  Matthews is one of those suppliers.  In 2019, Tesla selected Matthews to be one of its suppliers for equipment that Tesla used to refine its dry-electrode battery manufacturing and to put it into mass-production.

14.     As a trusted supplier, Matthews had access to Tesla's most confidential secrets regarding Tesla's proprietary dry-electrode manufacturing process.  Matthews agreed, in writing, that it would hold those secrets in the strictest confidence, and on that basis Tesla trusted Matthews with highly confidential designs of industrial machinery necessary to Tesla's proprietary manufacturing process.

15.     However, Matthews betrayed that trust.  Without Tesla's knowledge, Matthews applied Tesla's confidential trade secrets to a variety of impermissible purposes, and in so doing

---

[1] *E.g.*, *Tesla 4680 battery's secret sauce; Dry electrode coating*, Reuters.com (Mar. 10, 2023), https://www.reuters.com/technology/tesla-4680-batterys-secret-sauce-dry-electrode-coating-2023-03-10/.

visited extraordinary harm on Tesla.  First, Matthews improperly incorporated Tesla's confidential trade secrets into patent filings.  By so doing, Matthews unambiguously attempted to claim for itself both ownership and inventorship of Tesla's confidential trade secrets.  Still further, by filing these applications Matthews set into motion events that could lead (and in some cases have already led) to *publication* of certain Tesla confidential information regarding the dry-electrode manufacturing process.  Matthews never sought Tesla's permission to file these applications, nor even disclosed their existence until Tesla discovered the applications on its own by finding Tesla-proprietary secrets in *published patent applications* submitted by Matthews.  Since discovering Matthews' improper conduct, Tesla has been working to block and/or delay publication of affected applications, and only a subset of Tesla's confidential information regarding dry-electrode manufacturing has published thus far.  Regardless, the result of Matthews' improper conduct has been both to deny Tesla patent rights to its own technology and, just as troubling, to share with the public, including Tesla's competitors, high-value technology that would not otherwise have been accessible, leading to direct and serious harm to Tesla and its business.

16.     Second, Matthews disclosed Tesla's confidential trade secrets to other companies, including Tesla competitors.  This included Matthews attempting to sell and, in some cases, actually selling equipment for dry-electrode battery manufacturing to Tesla competitors, where said equipment embodied Tesla's confidential trade secrets.  Such acts were improper because Tesla never authorized, and in fact expressly proscribed, the sale or use of its confidential technology to or for anyone other than itself.  Similarly, Tesla never authorized, and in fact expressly proscribed, any inspection or demonstration of any equipment or machines embodying Tesla trade secrets by or to any Tesla competitor.  As a result, certain of Tesla's high-value confidential technology for dry-electrode manufacturing has been conveyed, or is imminently about to be conveyed by Matthews, without authorization to Tesla's direct competitors, resulting in direct and serious harm to Tesla and its business.

/ / /

/ / /

/ / /

## COUNT I—TRADE SECRET MISAPPROPRIATION
## <u>VIA IMPROPER PATENT APPLICATIONS (18 U.S.C. § 1836 *et seq.*)</u>

17.     Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

18.     The Defend Trade Secrets Act ("DTSA," 18 U.S.C. § 1836 *et seq.*) prohibits the threatened or actual misappropriation of trade secrets that are related to a product or service used or intended for use in interstate commerce.

19.     Tesla has developed and preserved certain confidential and proprietary information that constitutes one or more trade secrets, as that term is applied in DTSA litigation.

20.     Tesla's protectable trade secrets include, but are not limited to, confidential details relating to industrial processes for "dry-electrode" battery manufacture.

21.     Those trade secrets relate to products or services used or intended for use in interstate commerce including, but not limited to, electric vehicle ("EV") batteries used in interstate commerce.

22.     Tesla has taken reasonable measures to keep secret and prevent disclosure of its trade secrets and other confidential and proprietary information, including requiring that its suppliers who may have access to such information sign confidentiality agreements.

23.     Tesla's trade secret information is not generally known to individuals or entities outside of Tesla and those companies and/or individuals who have committed to maintaining the secrecy of such information, and that information derives independent economic value from not being generally known to or reasonably ascertainable through proper means by another person who could obtain such economic value from its disclosure or use.

24.     During its work with Tesla, Matthews was given access to, and acquired knowledge of, Tesla's trade secrets for the exclusive purpose of collaborating with Tesla and for the exclusive benefit of Tesla.

25.     Matthews had an express duty to maintain the secrecy of those trade secrets, and to limit the use thereof.  It also knew, or had reason to know, that Tesla intended and expected that the secrecy of its trade secrets would be maintained and strictly observed.

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

26.     Matthews has misappropriated and has threatened to misappropriate Tesla's trade secrets improperly, and has wrongfully used or will wrongfully use such trade secrets to Matthews' material benefit, to the direct and material detriment of Tesla.  Such misappropriation was both knowing and willful.  Specifically, Matthews has improperly filed patent applications incorporating Tesla's trade secrets without Tesla's express or implied consent, and specifically contradicting its duty to maintain the secrecy of those trade secrets, and to limit use thereof.

27.     Tesla has suffered, and will continue to suffer, irreparable harm in lost business opportunities and in having its internal confidential and trade secret information incorporated into patent applications by Matthews, thus purporting to give Matthews ownership of technology that should belong wholly to Tesla.  Tesla has also suffered, and will continue to suffer irreparable harm in lost business opportunities and in having its internal confidential and trade secrets made available, or proposed to be made available, to Tesla's direct competitors.

28.     Matthews' violations of the DTSA relating to its filing of improper patent applications pose an ongoing and imminent threat of irreparable harm to Tesla, including diminution of value of its trade secrets, lost profits, diminution of Tesla's business value, and unfair diminishment of its competitive advantage.

29.     Unless Matthews is enjoined from continuing its unlawful actions, Tesla will suffer immediate and irreparable harm.  It also comprises monetary damages in an amount far exceeding $75,000, which Tesla conservatively estimates will exceed $1 billion.

**COUNT II—TRADE SECRET MISAPPROPRIATION**
**VIA IMPROPER PATENT APPLICATIONS (Cal. Civ. Code § 3426 *et seq.*)**

30.     Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

31.      California's Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426 *et seq.*) prohibits the threatened or actual misappropriation of trade secrets.

32.     Tesla has developed and preserved certain confidential and proprietary information that constitutes one or more trade secrets, as that term is applied in CUTSA litigation.

33.    Tesla's protectable trade secrets include, but are not limited to, confidential details relating to industrial processes for "dry-electrode" battery manufacture.

34.    Those trade secrets relate to products or services used or intended for use in interstate commerce including, but not limited to, electric vehicle ("EV") batteries.

35.    Tesla has taken efforts that are reasonable under the circumstances to keep secret and prevent disclosure of its trade secrets and other confidential and proprietary information, including requiring that its suppliers who may have access to such information sign confidentiality agreements.

36.    Tesla's trade secret information is not generally known to individuals or entities outside of Tesla and those companies and/or individuals who have committed to maintaining the secrecy of such information, and that information derives independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.

37.    During its work with Tesla, Matthews was given access to, and acquired knowledge of, Tesla's trade secrets for the exclusive purpose of collaborating with Tesla and for the exclusive benefit of Tesla.

38.    Matthews had an express duty to maintain the secrecy of those trade secrets, and to limit the use thereof.  It also knew, or had reason to know, that Tesla intended and expected that the secrecy of its trade secrets would be maintained and strictly observed.

39.    Matthews has misappropriated and has threatened to misappropriate Tesla's trade secrets improperly, and has wrongfully used or will wrongfully use such trade secrets to Matthews' material benefit, to the direct and material detriment of Tesla.  Such misappropriation was both knowing and willful.  Specifically, Matthews has improperly filed patent applications incorporating Tesla's trade secrets without Tesla's express or implied consent, and specifically contradicting duty to maintain the secrecy of those trade secrets, and to limit use thereof.

40.    Tesla has suffered, and will continue to suffer, irreparable harm in lost business opportunities and in having its internal confidential and trade secret information incorporated into patent applications by Matthews, thus purporting to give Matthews ownership of technology that

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

1    should belong wholly to Tesla.  Tesla has also suffered, and will continue to suffer irreparable harm

2    in lost business opportunities and in having its internal confidential and trade secrets made

3    available, or proposed to be made available, to Tesla's direct competitors.

4         41.     Matthews' violations of the CUTSA pose an ongoing and imminent threat of

5    irreparable harm to Tesla, including diminution of value of its trade secrets, lost profits, diminution

6    of Tesla's business value, and unfair diminishment of its competitive advantage.

7         42.     Unless Matthews is enjoined from continuing its unlawful actions, Tesla will suffer

8    immediate and irreparable harm.  It also comprises monetary damages in an amount far exceeding

9    $75,000, which Tesla conservatively estimates will exceed $1 billion.

10

11   **COUNT III—TRADE SECRET MISAPPROPRIATION**
     **VIA IMPROPER BUSINESS ACTIVITIES (18 U.S.C. § 1836 *et seq.*)**

12        43.     Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set

13   forth herein.

14        44.     The Defend Trade Secrets Act ("DTSA," 18 U.S.C. § 1836 *et seq.*) prohibits the

15   threatened or actual misappropriation of trade secrets that are related to a product or service used or

16   intended for use in interstate commerce.

17        45.     Tesla has developed and preserved certain confidential and proprietary information

18   that constitutes one or more trade secrets, as that term is applied in DTSA litigation.

19        46.     Tesla's protectable trade secrets include, but are not limited to, confidential details

20   relating to industrial processes for "dry-electrode" battery manufacture.

21        47.     Those trade secrets relate to products or services used or intended for use in

22   interstate commerce including, but not limited to, electric vehicle ("EV") batteries used in interstate

23   commerce.

24        48.     Tesla has taken reasonable measures to keep secret and prevent disclosure of its trade

25   secrets and other confidential and proprietary information, including requiring that its suppliers who

26   may have access to such information sign confidentiality agreements.

27        49.     Tesla's trade secret information is not generally known to individuals or entities

28   outside of Tesla and those companies and/or individuals who have committed to maintaining the

secrecy of such information, and that information derives independent economic value from not being generally known to or reasonably ascertainable by another person who could obtain such economic value from its disclosure or use.

50.     During its work with Tesla, Matthews was given access to, and acquired knowledge of, Tesla's trade secrets for the exclusive purpose of collaborating with Tesla and for the exclusive benefit of Tesla.

51.     Matthews had an express duty to maintain the secrecy of those trade secrets, and to limit the use thereof.  It also knew, or had reason to know, that Tesla intended and expected that the secrecy of its trade secrets would be maintained and strictly observed.

52.     Matthews has misappropriated and has threatened to misappropriate Tesla's trade secrets improperly, and has wrongfully used or will wrongfully use such trade secrets to Matthews' material benefit, to the direct and material detriment of Tesla.  Such misappropriation was both knowing and willful.  Specifically, Matthews sold, attempted to sell, and/or demonstrated to companies other than Tesla machines and other technologies embodying Tesla's trade secrets without Tesla's express or implied consent, and specifically contradicting its duty to maintain the secrecy of those trade secrets, and to limit use thereof.

53.     Tesla has suffered, and will continue to suffer, irreparable harm in lost business opportunities and in having its internal confidential and trade secret information made available, or proposed to be made available, to Tesla's direct competitors.

54.     Matthews' violations of the DTSA relating to its disclosure of Tesla's trade secrets, including but not necessarily limited to its improper sale of machines/equipment embodying Tesla trade secrets, pose an ongoing and imminent threat of irreparable harm to Tesla, including diminution of value of its trade secrets, lost profits, diminution of Tesla's business value, and unfair diminishment of its competitive advantage.

55.     Unless Matthews is enjoined from continuing its unlawful actions, Tesla will suffer immediate and irreparable harm.  It also comprises monetary damages in an amount far exceeding $75,000, which Tesla conservatively estimates will exceed $1 billion.

**COUNT IV—TRADE SECRET MISAPPROPRIATION
VIA IMPROPER BUSINESS ACTIVITIES (Cal. Civ. Code § 3426 *et seq.*)**

56.     Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

57.      The California Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426 *et seq.*) prohibits the threatened or actual misappropriation of trade secrets.

58.     Tesla has developed and preserved certain confidential and proprietary information that constitutes one or more trade secrets, as that term is applied in CUTSA litigation.

59.     Tesla's protectable trade secrets include, but are not limited to, confidential details relating to industrial processes for "dry-electrode" battery manufacture.

60.     Those trade secrets relate to products or services used or intended for use in interstate commerce including, but not limited to, electric vehicle ("EV") batteries.

61.     Tesla has taken efforts that are reasonable under the circumstances to keep secret and prevent disclosure of its trade secrets and other confidential and proprietary information, including requiring that its suppliers who may have access to such information sign confidentiality agreements.

62.     Tesla's trade secret information is not generally known to individuals or entities outside of Tesla and those companies and/or individuals who have committed to maintaining the secrecy of such information, and that information derives independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.

63.     During its work with Tesla, Matthews was given access to, and acquired knowledge of, Tesla's trade secrets for the exclusive purpose of collaborating with Tesla and for the exclusive benefit of Tesla.

64.     Matthews had an express duty to maintain the secrecy of those trade secrets, and to limit the use thereof.  It also knew, or had reason to know, that Tesla intended and expected that the secrecy of its trade secrets would be maintained and strictly observed.

65.     Matthews has misappropriated and has threatened to misappropriate Tesla's trade secrets improperly, and has wrongfully used or will wrongfully use such trade secrets to Matthews' material benefit, to the direct and material detriment of Tesla.  Such misappropriation was both knowing and willful.  Specifically, Matthews sold, attempted to sell, and/or demonstrated to companies other than Tesla machines and other technologies embodying Tesla's trade secrets without Tesla's express or implied consent, and specifically contradicting duty to maintain the secrecy of those trade secrets, and to limit use thereof.

66.     Tesla has suffered, and will continue to suffer, irreparable harm in lost business opportunities and in having its internal confidential and trade secret information made available, or proposed to be made available, to Tesla's direct competitors.

67.     Matthews' violations of the CUTSA pose an ongoing and imminent threat of irreparable harm to Tesla, including diminution of value of its trade secrets, lost profits, diminution of Tesla's business value, and unfair diminishment of its competitive advantage.

68.     Unless Matthews is enjoined from continuing its unlawful actions, Tesla will suffer immediate and irreparable harm.  It also comprises monetary damages in an amount far exceeding $75,000, which Tesla conservatively estimates will exceed $1 billion.

## COUNT V—BREACH OF CONTRACT

69.     Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70.     Tesla and Matthews are parties to several documents titled "Mutual Non-Disclosure Agreement" (the "NDAs") attached as Exhibit A–C.  Per the NDAs, in exchange for receiving access to Tesla' confidential and proprietary information, Matthews agreed to protect that information and not disclose it to those not authorized to receive it, or to use it in any manner not authorized by Tesla.  Matthews also agreed to similar restrictions in other contracts between itself and Tesla.  In reliance on Matthews' agreement, Tesla provided its confidential and proprietary information to Matthews.  Tesla has performed all its obligations under each of the NDAs.

71.     Matthews has breached its contract to protect Tesla's confidential information by (1) improperly incorporating Tesla's confidential trade secrets into patent filings, and (2) by disclosing

1  Tesla's confidential trade secrets to other companies, including Tesla competitors.  This includes
2  Matthews attempting to sell and/or selling equipment for dry-electrode battery manufacturing to
3  Tesla competitors, where said equipment embodied Tesla's confidential trade secrets.  No later than
4  November 10, 2023, Tesla demanded that Matthews cease such acts and resume compliance with its
5  contractual obligations.  Matthews refused and continues to refuse to comply with the NDAs.

6  72.   Matthews' improper acts have visited, and may imminently visit, substantial harm
7  upon Tesla.  That harm comprises immediate, irreparable harms to Tesla.  It also comprises
8  monetary damages in an amount far exceeding $75,000, which Tesla conservatively estimates will
9  exceed $1 billion.

10  **COUNT VII—UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200)**

11  73.   Tesla realleges and incorporates by reference the foregoing paragraphs as if fully set
12  forth herein.

13  74.   Unfair business practices include any unfair, unlawful, or fraudulent business act or
14  practice.  Matthews' misconduct, including both its improper filing of patent applications
15  containing Tesla's proprietary and confidential information and its sales, attempts to sell, and/or
16  demonstrations to others of machines embodying Tesla's proprietary and confidential information,
17  are unfair business practices because they are unlawful, unfair, and/or fraudulent business acts.  By
18  and through those unfair, unlawful, and/or fraudulent business practices, Matthews has obtained
19  valuable recompense, and has deprived Tesla of valuable rights and benefits guaranteed by law, all
20  to Tesla's detriment.  As a direct and proximate result of those acts and practices, Matthews has
21  received, or will receive, income, profits, and other benefits associated with those practices that it
22  would not have received if it had not engaged in the violations of the law described herein.
23  Matthews has also obtained an unfair advantage over similar businesses that have not engaged in
24  such practices.

25  75.   A substantial part of Matthews' misconduct occurred in the State of California.  This
26  includes, but is not limited to, Matthews' representations (both before and after the improper
27  conduct described herein) that it would comply with its confidentiality obligations to Tesla, as well
28  as Tesla's demonstration to Matthews of the confidential information and proprietary information

13

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

1    that Matthews misappropriated.  Further, the injuries visited on Tesla by Matthews' unfair and

2    improper conduct occurred in California, which is the location of Tesla's research and development

3    for dry-electrode battery technology.

4        76.    Matthews conducts business in California, including but not limited to its business

5    with Tesla.  Additionally, Matthews specifically directed visits and correspondence relating its

6    misconduct to California.

7        77.    Matthews' improper acts have visited, and may imminently visit, substantial harm

8    upon Tesla.  That harm comprises immediate, irreparable harms to Tesla.  It also comprises

9    monetary damages in an amount far exceeding $75,000, which Tesla conservatively estimates will

10   exceed $1 billion.

11                              **PRAYER AND RELIEF**

12       WHEREFORE, Tesla respectfully requests that this Court enter:

13       (a)    A judgment in favor of Tesla that Matthews has misappropriated Tesla's

14   trade secrets in connection with Matthews' improper filing of patent applications incorporating

15   Tesla's confidential and proprietary technology;

16       (b)    A judgment in favor of Tesla that Matthews has also misappropriated Tesla's

17   trade secrets in connection with Matthews' sale, offers to sell, and/or demonstrations to others of

18   machines embodying Tesla's confidential and proprietary technology;

19       (c)    A judgment in favor of Tesla that Matthews has breached its contractual

20   obligations to Tesla;

21       (d)    A judgment in favor of Tesla that Matthews has engaged in unfair business

22   practice proscribed by California law;

23       (e)    During the pendency of this action, a preliminary injunction ordering

24   Matthews and all those acting in concert with it to cease all sales, offers to sell, and/or

25   demonstrations to others of machines embodying any of Tesla's confidential and proprietary

26   technology;

27       (f)    During the pendency of this action, a preliminary injunction ordering

28   Matthews to transfer ownership of all patent applications incorporating any of Tesla's confidential

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____

and proprietary technology, and to otherwise take any and all steps necessary to prevent further publication of any of Tesla's confidential and proprietary technology;

(g)   On a final hearing, a permanent injunction ordering Matthews and all those acting in concert with it to cease all sales, offers to sell, and/or demonstrations to others of machines embodying any of Tesla's confidential and proprietary technology;

(h)   On a final hearing, a permanent injunction ordering Matthews to transfer ownership of all patent applications incorporating any of Tesla's confidential and proprietary technology, and to otherwise take any and all steps necessary to prevent further publication of any of Tesla's confidential and proprietary technology;

(i)   An order requiring Matthews to pay Tesla its damages, costs, expenses, and pre-judgment and post-judgment interest for Matthews' improper acts;

(j)   An order requiring Matthews to disgorge any and all unjust enrichment;

(k)   A judgment in favor of Tesla that Matthews misconduct has been knowing, willful, and malicious, and appropriately enhancing any damages award; and

(l)   Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Dated:  June 14, 2024                    FISH & RICHARDSON P.C.


                                         By:  */s/ David M. Barkan*
                                              David M. Barkan

                                         Attorney for Plaintiff,
                                         TESLA, INC.

PLAINTIFF'S ORIGINAL COMPLAINT
Case No. _____