David C. Kiernan (SBN 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  (415) 875–5745
Facsimile:  (415) 875–5700

Ryan K. Walsh
(*pro hac vice* motion forthcoming)
rkwalsh@jonesday.com
JONES DAY
1221 Peachtree Street, N.E.
Atlanta, GA 30361
Telephone:  (404) 521–3939
Facsimile:  (404) 581–8330

Stuart W. Yothers
(*pro hac vice* motion forthcoming)
syothers@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326–3939
Facsimile:  (212) 755–7306

*Attorneys for Defendant Matthews International Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEWS INTERNATIONAL CORPORATION,<br><br>Defendant. | Case No. 5:24-cv-03615-VKD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  August 6, 2024<br>Time:  10:00 am<br>Place:  Courtroom 2, 5th Floor<br>Judge:  Hon. Virginia K. DeMarchi<br><br>Complaint Filed:  June 14, 2024 |

**PUBLIC / REDACTED**

**TO THE COURT, PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE** of a hearing on August 6, 2024 at 10:00 AM Pacific Time, the Honorable Virginia K. DeMarchi presiding.

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* and the parties' operative arbitration agreement, at that hearing Defendant Matthews International Corporation will and hereby does move this Court for an Order compelling arbitration and staying the case.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations filed concurrently herewith, the Proposed Order, all pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing on this matter.

Defendant respectfully requests that the Court compel arbitration and stay this litigation pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

Dated: June 25, 2024                                JONES DAY

By: */s/ David C. Kiernan*
    David C. Kiernan
    Ryan K. Walsh
    Stuart W. Yothers

    *Attorneys for Defendant Matthews*
    *International Corporation*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................. 3

STATEMENT OF FACTS ................................................................................. 4

I.    MATTHEWS IS A WELL-KNOWN PIONEER IN DRY-BATTERY
      ELECTRODE MANUFACTURING TECHNOLOGY. .................................. 4

II.   ███████████████████████████████████ .................. 6

III.  ███████████████████████████████ ........................... 8

IV.   █████████████████████████████ ................................ 8

V.    TESLA FILED THIS COMPLAINT ████████████████████████
      ███████████████████. ...................................................................... 9

ARGUMENT ................................................................................................... 10

I.    TESLA MUST ARBITRATE ITS CLAIMS AGAINST MATTHEWS. ........... 10

      A.    THE FEDERAL ARBITRATION ACT REQUIRES COURTS TO
            ENFORCE ARBITRATION AGREEMENTS. .................................... 10

      B.    ████████████████████████ ..................................... 12

      C.    ███████████████████████ ........................................ 13

      D.    TESLA CANNOT AVOID ARBITRATION BY REFERENCE TO
            THE NDAS. ........................................................................... 14

      E.    TESLA'S CLAIMS FALL SQUARELY WITHIN THE
            ARBITRATION AGREEMENT. .......................................................... 15

      F.    THE COURT SHOULD STAY THIS ACTION. ................................... 18

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

Page

**CASES**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................ 10, 12

*AT&T Tech, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) .............................................................................................. 12

*Balandran v. Labor Ready, Inc.*,
124 Cal. App. 4th 1522 (2004) ............................................................................. 12

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .............................................................................. 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ......................................................................... 11, 15

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) .............................................................................. 13

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ......................................................................... 11, 14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ................................................................................................ 12

*Hansen v. LMB Mortgage Service, Inc.*,
1 F.4th 667 (9th Cir. 2021) ................................................................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63, 69 (2019) ..................................................................................... 12, 13

*In re Juul Labs, Inc., Antitrust Litig.*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) .................................................................. 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ......................... 15

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ................................................................................ 12

*Loewen v. McDonnell*,
   403 F. Supp. 3d 832 (N.D. Cal. 2019) ............................................................................ 14, 15

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
   89 Cal. App. 4th 1042 (2001) .................................................................................................. 13

*McEnery v. McEnery*,
   621 F. Supp. 3d 1059 (N.D. Cal. 2022) .............................................................................. 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................................................... 11

*Navarro v. SmileDirectClub, Inc.*,
   No. 22-CV-00095-WHO, 2022 WL 1786582 (N.D. Cal. June 1, 2022) ............................... 12

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................................. 12

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ..................................................................................................... 13

*Regents of Univ. of California v. Japan Sci. & Tech. Agency*,
   2014 WL 12690187 (C.D. Cal. Oct. 16, 2014) ...................................................................... 11

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ..................................................................................................................... 11

*Scudieri v. Chapman Chevrolet Chandler, LLC*,
   No. 2:16-CV-01988 JWS, 2016 WL 6997164 (D. Ariz. Oct. 25, 2016) ............................... 11

*Shearson/Am. Express v. McMahon*,
   482 U.S. 220 (1987) ................................................................................................................... 12

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ..................................................................................................... 16

*Smith v. Spizzirri*,
   144 S. Ct. 1173 (2024) ............................................................................................................... 18

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ................................................................................................................... 11

STATUTES

9 U.S.C. § 2 .................................................................................................... 10, 12

9 U.S.C. § 3 .......................................................................................................... 18

9 U.S.C. § 4 .......................................................................................................... 11

Cal. Civ. Code § 1550 ........................................................................................... 12

Federal Arbitration Act ................................................................................. *passim*

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY ...................................................................................... 17

**INTRODUCTION**

For over twenty-five years, Matthews International Corporation has been a pioneer at the forefront of the design, development, and manufacture of industrial-scale continuous process machinery for use in battery electrode manufacturing equipment and solutions. Over that quarter century, Matthews has developed a wealth of technology, intellectual property, and know-how in the energy storage space, including in solutions for the manufacture of battery electrodes from dry powder ("**dry battery electrodes**" or "**DBE**"). Today, Matthews' technology lies at the heart of these DBE manufacturing solutions, which streamline the production of lithium-ion batteries and significantly reduce the cost of EVs.

Tesla—which had no prior experience in the DBE manufacturing space— Matthews' history of expertise and innovation in this area. Now, Tesla has filed a flawed, poorly pled complaint that makes vague, baseless allegations of trade secret misappropriation, but that fails to identify even a single Tesla trade secret. Tesla's complaint represents only the most recent example of Tesla's ongoing efforts to try to bully the much smaller Matthews into surrendering its intellectual property and to prevent Matthews from offering its innovative DBE solutions to other companies that compete with Tesla.

As Tesla's complaint acknowledges, Matthews has been a "trusted supplier" of DBE equipment for Tesla for roughly five years.

1

There is no dispute that

Indeed, Tesla has acknowledged in other cases that the JAMS Streamlined Rules require that the arbitrator decide threshold issues of arbitrability.  Accordingly, this case must be stayed and the parties ordered to arbitrate so that an arbitrator may decide the arbitrability of this dispute.

But even if arbitrability was up to the Court to decide, Tesla's claims are clearly arbitrable because

Tesla knows this, too, having repeatedly argued

.

Accordingly, Matthews respectfully requests that the Court grant its Motion to Compel an arbitration proceeding and stay this action pending the outcome of that arbitration proceeding.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided here are straightforward:

(1) whether the parties have a valid agreement to arbitrate; and

(2) if so, whether the parties have clearly and unmistakably delegated questions regarding arbitrability to the arbitrator.

## STATEMENT OF FACTS

## I.   MATTHEWS IS A WELL-KNOWN PIONEER IN DRY-BATTERY ELECTRODE MANUFACTURING TECHNOLOGY.

Matthews is, among other things, a global innovator in industrial-scale continuous process machinery.  Matthews takes things historically done in batches, such as stamping or pressing, and designs equipment to perform these actions in a continuous process using rolls—so-called calendering machinery.  Calendering refers to the process of smoothing and compressing a material during production by passing a single continuous sheet through a number of pairs of heated rolls; the rolls in combination are called calenders.  Matthews' engineering solutions make industrial tasks rotary and continuous, thereby making industrial-scale production cheaper and faster.  Matthews' calendering machinery can be used to manufacture a variety of products, including battery electrodes.  Babe Decl. ¶ 6.

Matthews has long been a pioneer in designing and building machines for electrode manufacturers and partnering with research organizations to help improve electrode production techniques.  Through its extensive experience over many decades, Matthews has amassed a vast body of know-how and intellectual property rights in the machinery used to produce battery electrodes.

A key contributor to Matthews' expertise in this area is Matthews' wholly owned German subsidiary, Saueressig, a leading provider of state-of-the-art rotary processing machinery, particularly calendering technology.  Over twenty-five years ago, before Tesla even existed, Saueressig's engineers began developing the technology that forms the basis of Matthews' dry battery electrode solutions.  Among other things, in 1998, Saueressig worked with the ExxonMobil Technology and Engineering Company (Emtec) and BASF (a German chemical producer) on battery technology and designed advanced calendering machines for producing battery films.  Babe Decl. ¶ 9.

In 2009, Matthews designed two calender lines for compressing cathode and anode electrodes for European Batteries OY, laying the foundation for the first large-scale production of lithium-ion batteries in Europe.  *Id*.  Matthews' calender lines were the first reference systems on

the market for energy storage applications.

In 2010, Matthews designed four calender lines for compacting cathode and anode electrodes for Evonik Litarion GmbH for the first large-scale production of lithium-ion batteries in Germany.  The next year, Saueressig built mass production calendering machines for Evonik Degussa GmbH and Varta Microbattery GmbH.  *Id.*  Saueressig has also designed specialty machines for battery manufacturers such as Volkswagen, Bosch, Continental, and Dyson.  By the end of 2014, Matthews had delivered fourteen production-scale calendering machines to its energy-storage customers, along with several laboratory lines.  Years before Tesla came to Matthews in 2019, Matthews was well known as an innovative and creative partner to serve the battery industry with tailor-made equipment.

In 2012–2014, Matthews designed and successfully tested multiple production lines for dry electrodes for use in nickel batteries and supercapacitors for two customers that were unaffiliated with Tesla.  Saueressig continued its foray into designing calenders for dry battery process lines for two more customers in 2015 and 2018.  After Matthews had successfully designed dry process calendering equipment to these customers, Tesla approached Matthews seeking Matthews' engineering solutions and access to Matthews' valuable intellectual property and global engineering talent.

In 2014, Matthews pioneered a new product area—laboratory calendering equipment for compressing, powder milling, embossing, and laminating that is small enough to fit on a cart.  Such equipment could be used by fledgling companies unprepared to enter the lithium-ion market at full-scale production to finetune their chemistry and processes.  These lab calenders formed the starting point for two innovative German consortiums, driven by Matthews.  From 2015 through 2018, Matthews partnered with the Fraunhofer Institute, a German research organization, to produce electrodes for fuel cells (which are similar to batteries) using the powder-to-film process described above.  Babe Decl. ¶ 10.  The collaboration was called the "Kontiflex project."  In the face of skepticism and adversity, Saueressig engineers pioneered the use of a multi-roll calender to create a stable web out of a dry powder, transforming what was previously a batch process into a continuous process as part of the Kontiflex project.

While the Kontiflex project was underway, in 2016 Matthews initiated the FesKaBat project (Feststoff Kathode Batterie: Solid Cathode Battery) with German automotive parts supplier Robert Bosch GmbH and others.  Babe Decl. ¶ 10.  As early as 2017, as part of the FesKaBat project, Matthews developed the breakthrough "All-in-One" concept.  The All-in-One concept combined the calendering and lamination stages of the dry battery electrode process into a single continuous process.  *Id.*  Shortly thereafter, Matthews had the novel idea to *combine* the multi-roll-calender from the Kontiflex project with the "All-in-One" concept from the FeKaBat project, which allowed for the production of both dry anode and dry cathode material.  Tesla was not involved in either of these groundbreaking projects,                               .

**II.**

In 2019, Tesla acquired Maxwell Technologies, a battery and supercapacitor manufacturer.







**V.      TESLA FILED THIS COMPLAINT**

on June 14, 2024, Tesla filed its complaint in this action. ECF No. 1.

Tesla's complaint alleges, in highly general terms, that Matthews "had access to Tesla's most confidential secrets regarding Tesla's proprietary dry-electrode manufacturing process." ECF No. 1, ¶ 14.  Tesla further alleges that Matthews has "improperly incorporated Tesla's confidential trade secrets into patent filings" and that Matthews has "disclosed Tesla's confidential trade secrets to other companies." ECF No. 1, ¶¶ 15–16.  The complaint broadly explains that Matthews is one of Tesla's suppliers, and that the parties' commercial relationship relates to dry-electrode battery manufacturing technology. *Id.* ¶¶ 11, 14.  The general allegations of misappropriation by Matthews

1

2

3        Beyond these threadbare allegations, the complaint fails to identify one Tesla "confidential

4  trade secret" that was included in a patent filing or that Tesla otherwise disclosed to Matthews.

5  ECF No. 1.

6

7

8

9        Not only does the complaint fail to identify any intellectual property owned by Tesla (or

10  anything that Tesla ever disclosed to Matthews),

11

12  .

13        Based on its skeletal allegations, Tesla asserts claims under the Defend Trade Secrets Act,

14  California's Uniform Trade Secrets Act, and Section 17200 of California's Business and

15  Professions Code, as well as for breach of the parties' NDAs.  Tesla seeks declaratory judgments

16  in its favor, as well as preliminary and permanent injunctive relief, and damages.

17        Matthews seeks to                                                    send these disputes to

18  arbitration,

19

20                                      **ARGUMENT**

21  **I.    TESLA MUST ARBITRATE ITS CLAIMS AGAINST MATTHEWS.**

22        **A.    The Federal Arbitration Act Requires Courts to Enforce Arbitration
              Agreements.**

23

24        The Federal Arbitration Act ("**FAA**") provides that a written arbitration provision contained

25  in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and

26  enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

27  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration, and the

28  fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*,

563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted).  It requires courts to "give effect to the contractual rights and expectations of the parties." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

Under the FAA, the court must determine whether the parties have a valid agreement to arbitrate and, if so, whether that agreement covers the dispute in question. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  But "[w]hen the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)).  Simply, "a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator. . . ." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015).

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  In reviewing such motions, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

On a motion to compel, the court may consider the operative contracts as well as other evidence beyond the complaint. *See Regents of Univ. of California v. Japan Sci. & Tech. Agency*, 2014 WL 12690187, at *3 n.24 (C.D. Cal. Oct. 16, 2014) ("Although the court normally cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss . . . it may consider such evidence in deciding a motion to compel arbitration.").  If it considers just the complaint and documents incorporated within it, it uses the motion to dismiss standard. *Cf. id.*; *see Scudieri v. Chapman Chevrolet Chandler, LLC*, No. 2:16-CV-01988 JWS, 2016 WL 6997164, at *1 (D. Ariz. Oct. 25, 2016).  If, however, the court considers—as it may—evidence submitted by

the parties, it applies a standard similar to the summary judgment standard.  *See Navarro v. SmileDirectClub, Inc.*, No. 22-CV-00095-WHO, 2022 WL 1786582, at *5 (N.D. Cal. June 1, 2022); *Hansen v. LMB Mortg. Serv., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

Matthews must prove "the existence of an agreement to arbitrate" only "by a preponderance of the evidence."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  An arbitration agreement governed by the FAA is presumed to be valid and enforceable.  *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987).  There is a presumption in favor of arbitrability, *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), and the party seeking to evade arbitration under these circumstances bears the burden of showing that the arbitration provision is invalid.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

**B.**

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).  To do so, "federal courts apply ordinary state law governing the formation of contracts, and federal courts sitting in diversity 'look to the law of the forum state' when making choice of law determinations."  *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 947 (N.D. Cal. 2021) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). Here, that is California law.  GTCs, § 15.6(a).

Under California law, the existence of a contract requires:   "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." Cal. Civ. Code § 1550.  These requirements are met here.  *First*, the parties are plainly capable of contracting.  Tesla and Matthews are both sophisticated commercial entities.  *Second*,

*Concepcion*, 563 U.S. at 339; *Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1527 (2004) ("California also has a policy in favor of arbitration, which is as strong as that of the FAA.").  *Third*, there is mutual consent.  Under California law, "one who signs an

instrument which on its face is a contract is deemed to assent to all its terms." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001). *Fourth*, there is sufficient consideration because both parties ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("Circuit City's promise to be bound by the arbitration process itself serves as adequate consideration.").

**C.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Supreme Court has held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Courts in this jurisdiction routinely apply this principle. *See, e.g.*, *McEnery v. McEnery*,

---

[1] *Patrick* involved Rule 11(b) of the JAMS Comprehensive Rules, but the text of that rule (quoted by the Ninth Circuit) is precisely identical to Rule 8(b) of the JAMS Streamlined Rules, which is at issue here.

621 F. Supp. 3d 1059, 1063–65 (N.D. Cal. 2022) (where an agreement delegated the question of arbitrability to the arbitrator, "it is neither necessary nor appropriate for the Court to consider the parties' positions regarding the scope of the arbitration agreements"); *Loewen v. McDonnell*, 403 F. Supp. 3d 832, 838 (N.D. Cal. 2019) (whether plaintiff's breach of fiduciary duty claims fell within the scope of the shareholder agreement's arbitration provision was a question delegated to the arbitrator, not the court).

Tesla knows this, as it has previously argued in multiple filings in other lawsuits that Rule 8(b) of the JAMS Streamlined Rules requires an *arbitrator* to decide the threshold question of arbitrability. *See, e.g.*, Kiernan Decl., Ex. 5, Brief for Tesla's Motion to Compel Arbitration at 5–7, *Luckert v. Tesla Energy Operations, Inc.*, Case No. 3:21-cv-03027-VC (N.D. Cal. July 1, 2021) (arguing the contracting parties agreed to have the arbitrator decide arbitrability pursuant to JAMS Streamlined Rule 8(b)); Kiernan Decl., Ex. 6, Reply Brief in Support of Tesla's Motion to Compel Arbitration at 1–2, *Chaine v. Tesla Energy Operation, Inc.*, Case No. 2:20-CV-09082-JFW-GJS (C.D. Cal. Mar. 29, 2021) (same).  Where a contract incorporates Rule 8(b), to quote Tesla, it "ends this Court's inquiry into the Arbitration Clause's enforceability." *Id.*  The same is true here.

### D.    Tesla Cannot Avoid Arbitration by Reference to the NDAs.

"[A] valid—*i.e.*, enforceable—delegation clause commits to the arbitrator nearly all challenges to an arbitration provision.  These challenges include . . . whether the agreement covers a particular controversy." *Fli-Lo Falcon*, 97 F.4th at 1194 (cleaned up).

For instance, *McEnery*, 621 F. Supp. 3d 1059, is directly on point.  In that case, the plaintiff and defendant were co-owners of a property in San Jose, engaged in ongoing arbitration over certain claims related to their LLC agreements. *Id.* at 1063.  Amid the arbitration, the plaintiff filed a federal-court action asserting a cause of action for intentional interference with prospective

economic relations.  *Id.* at 1061.  On the defendant's motion, the court stayed the action pending completion of the arbitration.

The court explained that the parties clearly had an arbitration agreement, since they were currently involved in an arbitration.  *Id.* at 1063.  To escape the arbitration agreement, the plaintiff contended that this particular claim did not arise from the contracts with arbitration agreements, or require their interpretation.  *Id.*  The court held that this was a challenge to the scope of the arbitration agreement, and that the court lacked the authority to decide the dispute, because the parties had an agreement delegating the question of arbitrability to the arbitrator.  *Id.* at 1063–64.  That being so, "it is neither necessary nor appropriate for the Court to consider the parties' positions regarding the scope of the arbitration agreements as they pertain to Plaintiff's claim for intentional interference with prospective economic relations."  *Id.* at 1064–65; *see also Loewen*, 403 F. Supp. 3d at 838 (whether plaintiff's breach of fiduciary duty claims fell within the scope of the shareholder agreement's arbitration provision was a question delegated to the arbitrator, not the court).

**E.      Tesla's Claims Fall Squarely within the Arbitration Agreement.**

Even if the issue of arbitrability were for the Court to decide rather than the arbitrator,

As with other jurisdictions, the Ninth Circuit treats the phrase "relating to" in an arbitration clause as "broad and far reaching."  *Chiron*, 207 F.3d at 1131; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-05609 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("[T]he language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.  This must include matters that, while not arising directly under the contractual relationship, are nevertheless related to it.").

Many cases illustrate this principle.  For instance, in *Balan v. Tesla, Inc.*, Tesla itself obtained a reversal of a district court's denial of Tesla's motion to compel arbitration, on the basis that an arbitration agreement compelling arbitration of all claims "arising from or relating to" an individual's employment "encompasse[d] any disputes that have 'a significant relationship to,' or

at least 'some direct relationship' with" the individual's employment.  840 F. App'x 303, 304 (9th Cir. 2021) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *see also Simula*, 175 F.3d at 721 ("To require arbitration, Simula's factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").

Here, Tesla alleges that, through the parties' business relationship, Matthews came to learn certain unspecified "trade secrets" of Tesla's "regarding Tesla's proprietary dry-electrode manufacturing process."  ECF No. 1, ¶ 14.  Tesla then alleges that Matthews incorporated these "trade secrets" into (unspecified) patent filings.  *Id.* ¶ 15.  Tesla further alleges that Matthews disclosed these "trade secrets" to other companies, and sold them "equipment for dry-battery electrode manufacturing" that embodied these "trade secrets."  *Id.* ¶ 16.  Tesla alleges, broadly speaking, that these actions violated federal and California trade secret law and the parties' NDAs.

Tesla's claims fall within the scope of the arbitration agreement for a number of reasons, including without limitation the following:



*See*

BLACK'S LAW DICTIONARY, "Incorporation by Reference" ("A method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one.").

1
2
3
4
5
6 **F.      The Court Should Stay This Action.**

7    Because Plaintiffs' claims are subject to contractual arbitration, the FAA dictates that this

8 case be stayed pending arbitration under 9 U.S.C. § 3. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1178

9 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party

10 requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

11 Absent such a stay, Matthews will be prejudiced by being forced to litigate in this forum despite its

12 agreement with Tesla to arbitrate, and any continued litigation would improperly invade the

13 province of the arbitrator while arbitration is pending.

14                                    **CONCLUSION**

15    For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's

16 Motion to Compel Arbitration and stay this case, consistent with 9 U.S.C. § 3, pending the outcome

17 of arbitration.

18

19 Dated: June 25, 2024                    JONES DAY

20

21                               By: */s/ David C. Kiernan*

22                                    David C. Kiernan
                                     Ryan K. Walsh
23                                    Stuart W. Yothers

24                                    *Attorneys for Defendant Matthews*
                                     *International Corporation*

25

26

27

28