David M. Barkan (CA 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA  94063
Tel: (650) 839-5070 / Fax: (650) 839-5071

Robert Courtney (CA 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
60 South Sixth St., Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070 / Fax: (612) 288-9696

A. Louis Dorny (CA 212054)
ldorny@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Paul Margulies (*pro hac vice*)
pmargulies@tesla.com
TESLA, INC.
800 Connecticut Ave. NW
Washington, DC 20006
Tel: (202) 695-5388

Attorneys for Plaintiff, TESLA, INC.

David C. Kiernan (CA 215335)
dkiernan@jonesday.com
Jacob Miller (*pro hac vice*)
jakemiller@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 95104
Tel: (415) 626-3939 / Fax: (415) 875-5700

Ryan K. Walsh (*pro hac vice*)
rkwalsh@jonesday.com
JONES DAY
1221 Peachtree Street, N.E.
Atlanta, GA 30361
Tel: (404) 521-3939 / Fax: (404) 581-8330

Stuart W. Yothers (*pro hac vice*)
syothers@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939 / Fax: (212) 755-7306

Attorneys for Defendant
MATTHEWS INTERNATIONAL
CORPORATION

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEWS INTERNATIONAL CORPORATION, a Pennsylvania corporation,<br><br>Defendant. | Case No. 5:24-cv-03615-EJD-VKD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Initial Case Management Conference<br><br>Date:     October 3, 2024<br>Time:    10:00 a.m.<br>Place:   Courtroom 4, 5th Floor<br>Judge:   Hon. Edward J. Davila |

Pursuant to Rule 26(f), Local Rule 16-9, and the Standing Orders applicable to this case, Plaintiff Tesla, Inc. ("Tesla") and Defendant Matthews International Corp. ("Matthews") jointly certify that they have satisfied the case management conference requirement.  Counsel for the

1  parties have met and conferred about the matters herein, including at a video conference on

2  September 11, 2024.  Accordingly, the parties present this Joint Case Management Statement.

3  **A.      Jurisdiction and Service**

4  Tesla's Original Complaint (Dkt. 1) was served on Matthews on June 24, 2024.

5  Tesla's Position:  The Court has subject matter jurisdiction over Tesla's claims.  Tesla's

6  Original Complaint presents claims arising under federal trade secret law (i.e., Counts I & III) that

7  are within the Court's federal question jurisdiction.  Tesla's other claims are within the Court's

8  supplemental jurisdiction because they form part of the same case or controversy as the federal

9  question claims.  Each claim in Tesla's Original Complaint also presents a controversy whose

10  value exceeds $75,000 that is between citizens of different States, which is within the Court's

11  diversity jurisdiction.  Matthews has consented to both personal jurisdiction and venue.  No parties

12  remain to be served.

13  Matthews' Position: Matthews has moved to compel arbitration and reserves the right to

14  challenge jurisdiction and venue.  Matthews does not challenge service of the Complaint.

15  **B.      Facts**

16  Tesla's Trade Secret, Unfair Business Practice, and Contract Claims: This case arises from

17  Matthews' misappropriation of Tesla technology relating to the "dry" production of electrodes for

18  lithium-ion batteries (i.e., "DBE" or "dry battery electrode") that is valuable, confidential, and

19  wholly proprietary to Tesla.  Beginning five years ago, Tesla selected Matthews a supplier for

20  equipment that Tesla required for refining that technology.  Matthews agreed, in writing and

21  several times over, to hold Tesla's valuable and confidential technology in the strictest confidence,

22  and on that basis Tesla shared critical secrets with Matthews.

23  Matthews then betrayed that trust.  Without Tesla's knowledge, Matthews improperly

24  incorporated Tesla's confidential trade secrets into patent filings, attempting to claim for itself

25  Tesla's confidential secrets and causing, in some cases, publication of certain Tesla confidential

26  information regarding the dry-electrode manufacturing process.  Matthews also disclosed Tesla's

27  confidential trade secrets to other companies, including Tesla competitors.  This included

28  Matthews attempting to sell and, in some cases, actually selling equipment for DBE

manufacturing to Tesla competitors, where said equipment embodied Tesla's confidential trade secrets.

In view of the drastic harms caused by Matthews' actions, Tesla seeks all available remedies in this case. Tesla's Original Complaint presents trade secret claims under both federal law and the law of California. It also presents a damages claim for Matthews' clear breach of its non-disclosure agreements, and an unfair business practices claim under California law. Damages for Matthews' misconduct are conservatively estimated at $1 billion.

Matthews has moved to compel arbitration, but its motion is baseless. As Tesla's response papers explain, Tesla has no arbitration obligation, and Matthews' non-disclosure agreements with Tesla unambiguously identify this Court as an appropriate tribunal.

Matthews' Defenses: As Tesla describes, this case arises out of the agreement between Tesla and Matthews under which Matthews would manufacture DBE equipment for Tesla. Under those agreements, Matthews is permitted to sell DBE equipment to others. Despite that, Tesla filed this baseless lawsuit—a deliberate effort to stifle competition by trying to prevent Matthews from selling DBE equipment to competitors. This is no surprise given Tesla's waning sales of electric vehicles as competitors enter global markets.

As Tesla notes, about five years ago, Tesla selected Matthews to manufacture DBE equipment. What Tesla leaves out is that Tesla chose Matthews because Tesla did not have the technology or wherewithal to develop DBE equipment. Not only was it a newcomer, it had no experience to manufacture DBE equipment. By stark contrast, Matthews had developed a wealth of technology, intellectual property, and know-how in DBE solutions. And it had delivered a DBE machine to a company acquired by Tesla. Tesla retained Matthews because Tesla had nothing and Matthews was the only company who could do it.

As Tesla also describes, the parties entered into a series of agreements governing the relationship. In 2019, Tesla and Matthews entered two non-disclosure agreements ("NDAs") to govern the sharing of information in connection with a potential business relationship between the parties under which Matthews would manufacture DBE equipment for Tesla. Tesla then entered an agreement with Matthews to actually manufacture the equipment—this is the agreement that

governs the parties' relationship Tesla details above.  That agreement includes the terms and conditions governing that relationship, including, among other things, confidentiality obligations, rights and restrictions to the sale of DBE equipment, and intellectual property and other rights. And the parties agreed to arbitrate all disputes related to the agreements.  On March 2022, the parties entered a third NDA because the prior NDAs were set to expire three years after their effective dates.

Between 2019 and the present, Matthews manufactured DBE equipment for Tesla.  As a prelude to this lawsuit, in late 2023, Tesla sent a letter to Matthews asserting that Matthews had breached the parties' agreements and violated its intellectual property rights by selling equipment containing Tesla IP to third parties and filing patents that included Tesla's IP and supposed "trade secrets."  These are the same allegations that are in the Complaint.  Tesla, however, alleges facts about the NDAs but deliberately omits any reference to the master governing agreement.  Tesla attempts to hide that from the Court because that governing document requires arbitration.

On June 25, 2024, Matthews filed a motion to stay these proceedings and to compel arbitration (Dkt. 16).  Matthews' position is that the claims and the underlying conduct alleged in the Complaint, including the alleged breaches of the NDAs, must be resolved by arbitration, pursuant to the parties' agreement.  Matthews otherwise denies the allegations that it has engaged in any wrongdoing and reserves the right to assert any defenses in the arbitration or in this proceeding, should any claims survive the Motion to Compel Arbitration.  Moreover, should any claims survive the Motion to Compel and any motion to dismiss, Matthews anticipates filing counterclaims against Tesla, which would raise additional legal issues and damages issues.

**C.     Legal Issues**

At this time, the parties anticipate that the principal disputed legal issues will be:

- The interpretation of certain contracts between Tesla and Matthews;

- Whether Matthews was entrusted with Tesla's protectable trade secrets;

- Whether Matthews, in the context of filing certain patent applications, misappropriated one or more of Tesla's trade secrets under the laws of the United States (18 U.S.C. § 1836 *et seq.*) and/or California (Cal. Civ. Code § 3426 *et seq.*);

- Whether Matthews, in the context of attempting to sell certain equipment, misappropriated one or more of Tesla's trade secrets under the laws of the United States (18 U.S.C. § 1836 *et seq.*) and/or California (Cal. Civ. Code § 3426 *et seq.*);

- Whether Matthews has breached its contractual obligations to Tesla;

- Whether Matthews' conduct comprises unfair, unlawful, or fraudulent business acts or practices under California law (Cal. Bus. & Prof. Code § 17200);

- Whether Matthews' alleged conduct entitles Tesla to legal relief, including damages;

- Whether Matthews' alleged conduct entitles Tesla to preliminary and/or permanent equitable relief, including injunctions to prevent continued unlawful conduct or to remedy unjust enrichment;

- Whether Matthews' alleged conduct has been knowing, willful, and malicious, misconduct warranting enhancement of any monetary award; and

Matthews' Additional Legal Issues:

- Whether the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires staying this case and ordering Tesla to submit its claims to arbitration.

- Whether Matthews has defenses to any of Tesla's claims.

- Should the Court not compel arbitration and stay the case, Matthews anticipates filing a motion to dismiss all claims in the Complaint for failure to state a claim. Among other reasons, Tesla's complaint does not identify any trade secrets.

- Should the Court not dismiss the complaint, Matthews anticipates filing counterclaims against Tesla, which would raise additional legal issues and damages issues.

**D.     Motions**

The following table identifies all prior and pending motions, their current status, and any anticipated motions:

| Dkt. | Date filed | Title | Party | Status |
|------|------------|-------|-------|--------|
| **Prior Motions** | | | | |
| 6 | 14 Jun 2024 | Admin. Motion to File Under Seal | Tesla | Granted (Dkt. 11) |
| **Pending Motions** | | | | |
| 15 | 25 Jun 2024 | Admin. Motion to File Under Seal re Motion to Compel Arbitration | Matthews | Unopposed, pending. (Wrong case no. on caption; otherwise identical to Dkt. 17) |
| 16 | 25 Jun 2024 | Motion to Compel Arbitration | Matthews | Briefing complete. Hearing set for 3 Oct 2024 |
| 17 | 25 Jun 2024 | Admin. Motion to File Under Seal re Motion to Compel Arbitration | Matthews | Unopposed, pending. |
| 32 | 9 Jul 2024 | Admin. Motion to File Under Seal re Opposition for Dkt. 16 (Mot. Compel Arbitration) | Tesla | Unopposed, pending. |
| 37 | 23 Jul 2024 | Admin. Motion to File Under Seal re Reply for Dkt. 16 (Mot. Compel Arbitration) | Matthews | Unopposed, pending. |
| 39 | 24 Jul 2024 | Motion to Remove Incorrectly Filed Document re Dkt. 37 | Matthews | Unopposed, pending. |
| **Anticipated Motions** | | | | |
| – | – | Motion to dismiss if the case is not stayed. | Matthews | – |

If the Court denies the Motion to Compel Arbitration, the parties propose that the Court set a further Case Management Conference ("Post-Motion CMC") to take place within 30 days of remand after any appeal, or within 30 days of the expiration of any period for Matthews to file an appeal of an order denying the Motion to Compel. In advance of the Post-Motion CMC, the

parties propose that they submit a further joint CMC Statement setting forth a proposal for the schedule for the remaining pretrial deadlines.

### E.     Amendment of Pleadings

The parties agree that a schedule for pleadings, including amendments, may be set after final resolution of Matthews' motion to compel arbitration.

<u>Matthews' Statement:</u>  Matthews notes that the time for filing a response to the complaint under Rule 12 does not elapse until after the resolution of a motion to compel arbitration, and reserves the right to move to dismiss the Complaint, if the Court denies Matthews' Motion to Compel and the Ninth Circuit affirms or Matthews elects not to appeal.

### F.     Evidence Preservation

The parties have reviewed the Northern District of California's Guidelines for the Discovery of Electronically Stored Information ("ESI"), the Northern District of California's Model ESI Order, and the Checklist for Rule 26(f) Meet and Confer Regarding ESI, including those portions related to evidence preservation.  Additionally, the parties have met and conferred at their Rule 26(f) conference regarding evidence preservation.  Each party has implemented a litigation hold with respect to all ESI and hardcopy documents and media identified as relevant.

### G.     Disclosures

The parties have stipulated to delay initial disclosures pending resolution of Matthews' Motion to Compel Arbitration (Dkt. 16).

### H.     Discovery

No discovery has been requested or produced to date.  The parties jointly believe, however, that a full discovery plan is premature in view of Matthews' pending motion to compel arbitration. They jointly propose that discovery matters be held in abeyance pending the Court's resolution of that motion.  The parties further propose that, upon final resolution of that motion, a discovery plan can be set in connection with the Post-Motion CMC.

<u>Tesla's Statement</u>:  To develop its claims, Tesla requires discovery into Matthews' interactions relating to misappropriation of Tesla technology or likely to lead to information relating to said misappropriation.  This includes, but is not limited to:

- Discovery from Matthews regarding its preparation and submission of patent applications incorporating valuable, confidential Tesla technology;
- Discovery from Matthews regarding its DBE sales activity, including but not limited to its actual sales, attempts to sell, demonstrations, commissions, tests, or correspondence with companies other than Tesla relating to DBE technology;
- Discovery from Matthews regarding Matthews' internal valuations of DBE technology, including of Tesla's DBE technology;
- Discovery from Matthews regarding Matthews' confidentiality commitments to Tesla, and its failure to uphold those commitments;
- Discovery from Matthews regarding the technical details of equipment sold, offered, demonstrated, commissioned, tested, or proposed by Matthews to companies other than Tesla that are tailored or adapted for DBE;
- Discovery from third parties, including parties located overseas, who are or have been targets of Matthews' DBE sales efforts.

Matthews' Statement:  Should any claims survive the Motion to Compel and any motion to dismiss, to develop its defenses, Matthews will require discovery into Tesla's claims to own certain intellectual property and/or alleged trade secrets in connection with equipment for the manufacture of DBE solutions, as well as the damages Tesla alleges.  This includes, but is not limited to:

- Discovery from Tesla regarding the genesis, invention, creation, or design history of the intellectual property and/or alleged trade secrets it purports to possess in DBE technology;
- Discovery from Tesla regarding the drafting and negotiating history of the parties' agreements;
- Discovery from Tesla regarding Tesla's knowledge of Matthews' sale of DBE equipment to third parties, including discovery sufficient to demonstrate the date Tesla first became aware Matthews had sold DBE equipment to third parties;

- Discovery from Tesla regarding Tesla's decision to select Matthews as its supplier for DBE equipment;

- Discovery from Tesla regarding any knowledge and experience in the manufacture of DBE equipment Tesla possessed prior to retaining Matthews as its supplier;

- Discovery from Tesla regarding any third parties (other than Matthews) Tesla has used to supply Tesla with DBE manufacturing equipment;

- Discovery from Tesla regarding Tesla's internal valuations of DBE technology, including of Tesla's and Matthews' DBE technology;

- Discovery from Tesla regarding the extent of its investments in DBE equipment;

- Discovery from Tesla regarding its business plans for DBE technology; and

- Discovery from Tesla regarding its competitors with respect to DBE technology and its purported "head start" over those competitors.

Moreover, should any claims survive the Motion to Compel and any motion to dismiss, Matthews anticipates filing counterclaims against Tesla, which would necessitate further discovery into Tesla's conduct.

**I.     Class Actions**

This is not a class action case.

**J.     Related Cases**

No related cases or proceedings are pending before another judge of this court, or before another court or administrative body.

**K.     Relief**

<u>Tesla's Statement:</u> Based on the information presently available to it, and without having begun confidential discovery, Tesla seeks legal damages of approximately $1 billion.  The bases for that include:

- Estimation of the value to Tesla of its confidential, proprietary dry battery electrode "DBE" technology, which includes (but is not limited to) evaluation of the competitive advantage in the form of saved costs and production efficiency increases that Tesla obtains as a result of being able to limit access to said

technology to itself and its partners, as well as Tesla's investment of approximately
$1 billion in DBE technology in the last five years; and

- Estimation of the harm caused by Matthews' misappropriation of Tesla's
confidential, proprietary DBE technology, which includes (but is not limited to) the
extent to which Tesla's competitive advantage has been or will be diminished
should Tesla's DBE technology become available to its competitors as a result of
Matthews' misconduct.

Tesla also seeks enhancement of the above award in view of Matthews' knowing, willful,
and malicious conduct.  Tesla also seeks such equitable relief as the Court may deem appropriate.
This may include an equitable order awarding to Tesla the amount of Matthews' unjust
enrichment, with enhancement.

Matthews' Statement:  Matthews disputes the relief sought by Tesla.  Tesla is not entitled
to any damages or other relief, because Matthews did not engage in any misappropriation of
Tesla's technology, or other conduct justifying relief.  Matthews has the right to sell its DBE
technology to other customers.  For over a decade, Matthews has developed a wealth of
technology, intellectual property, and know-how in DBE solutions.  Tesla—which had no prior
experience in the DBE manufacturing space—approached Matthews precisely because of
Matthews' history of expertise and innovation in this area.  The parties' agreement governing the
relationship that Tesla describes permits Matthews to sell DBE equipment to other companies.
And Matthews told Tesla years ago that it was selling DBE equipment to others.  Any investments
by Tesla were therefore made with full knowledge of Matthews' right to do so and awareness that
Matthews was in fact selling to others.  Tesla recently changed its position, however, in an unfair
effort to stifle competition by attempting to prevent competitors from getting access to Matthews'
valuable DBE technology.  Moreover, Tesla's allegations fail to identify any alleged trade secrets
and Tesla cites nothing to substantiate its claim to "legal damages of approximately $1 billion," a
figure with no apparent basis.

Should any claims survive the Motion to Compel and any motion to dismiss, Matthews anticipates filing counterclaims against Tesla, which would raise additional legal issues and damages issues.

**L.      Settlement and ADR**

The parties have complied with ADR Local Rule 3-5.  Counsel for the parties have reviewed the Court's ADR handbook, discussed available ADR procedures, identified the processes that each believes would be most be helpful to the parties' settlement efforts, specified any formal or informal exchange of information needed before an ADR session, and attempted to agree on an ADR process and a deadline for an ADR session.  The parties do not intend to stipulate to an ADR process and deadline and prefer to discuss ADR selection with the Court at the case management conference.

Status of ADR: Matthews has moved to compel arbitration of Tesla's claims (*see* Dkt. 16). Tesla does not agree that arbitration for its claims is appropriate or productive.  Tesla believes arbitration of its claims is not required, for the reasons in its brief opposing compulsory arbitration (Dkt. 31).  As such, whether compulsory arbitration for the present dispute is warranted has already been presented to the Court for resolution.

ADR process options selected by each party: In view of the pending arbitration motion, the parties believe this case is not ripe for an ADR referral or that an ADR process would be likely to deliver benefits to the parties sufficient to justify the resources devoted to it.  Should the Court refer to ADR, the parties prefer mediation to the other options in Rule 3-4(a).

Key discovery or motions necessary to position the parties to negotiate a resolution: The parties jointly agree that resolution of Matthews' motion to compel arbitration is necessary before movement towards resolution is possible.  The parties propose that, should the Court deny Matthews' motion and the Ninth Circuit affirms or Matthews elects not to appeal, the parties present the Court with a proposed timeline for additional discussion of ADR under the ADR Local Rules and the Court's Standing Orders in connection with the Post-Motion CMC.

### M.   Other References

Matthews has moved for an order compelling arbitration of Tesla's claims, which Tesla opposes.  The parties jointly agree that resolution of that motion is necessary.  The parties do not view this case as suitable for a special master or for the Judicial Panel on Multidistrict Litigation.

### N.   Narrowing of Issues

The parties jointly agree that the most immediately consequential issue is Matthews' contention (which Tesla disputes) that mandatory arbitration is required for the claims in Tesla's Original Complaint.  That issue is fully briefed and will be presented at the October 3 hearing.

### O.   Scheduling

The parties jointly propose that a pre-trial schedule not be set unless and until the Court denies Matthews' Motion to Compel and the Ninth Circuit affirms or Matthews elects not to appeal, at which point the pre-trial schedule should be set in connection with the Post-Motion CMC.

### P.   Trial

Tesla has requested a jury trial.  At this time, the parties' best estimate of the expected length of trial is approximately seven to ten court days.

### Q.   Disclosure of Non-Party Interested Entities or Persons

Tesla's Statement: Tesla filed its Certification of Interested Entities or Parties, required by Civil Local Rule 3-15, on June 14, 2024 (Dkt. 3).  Tesla restates herein that, outside of the parties themselves, it knows of no persons, firms, partnerships, corporations (including parent corporations) or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to this proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of this proceeding.

Matthews' Statement: Matthews filed its Certification of Interested Entities or Parties, required by Civil Local Rule 3-15, on June 25, 2024 (Dkt. 14).  The contents of the certification stated:

BlackRock, Inc., a publicly traded corporation, owns 10% or more of Defendant's stock, as of September 30, 2023, derived from securities filings filed by the beneficial owner.

The Vanguard Group, Inc. owns 10% or more of Defendant's stock, as of September 30, 2023, derived from securities filings filed by the beneficial owner.

**R.  Professional Conduct**

All attorneys of record representing Tesla and Matthews have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**S.  Other Matters**

The parties have not identified other matters that would facilitate the just, speedy, and inexpensive disposition of this matter.

Dated:  September 20, 2024                    FISH & RICHARDSON P.C.


                                             By:  */s/ Robert Courtney*
                                                  Robert Courtney

                                             Attorney for Plaintiff,
                                             TESLA, INC.


Dated:  September 20, 2024                    FISH & RICHARDSON P.C.


                                             By:  */s/ Jacob Miller*
                                                  Jacob Miller

                                             Attorney for Defendant,
                                              MATTHEWS INTERNATIONAL CORPORATION


**ATTESTATION**

Pursuant to Civ. Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from counsel for Defendant Matthews International Corporation.

                                             */s/ Robert Courtney*
                                             Robert Courtney