UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEWS INTERNATIONAL CORPORATION, <br><br> Defendant. | Case No. 5:24-cv-03615-EJD <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. No. 16 |

This is a trade secret misappropriation, breach of contract, and unfair competition action filed by Tesla, Inc., ("Tesla") against one of its suppliers, Matthews International Corporation ("Matthews"). *See* Compl., ECF No. 1. Before the Court is Matthews's motion to compel arbitration pursuant to an arbitration clause in the parties' General Terms and Conditions for Procurement of Production Equipment and Services ("GTC"). Mot., ECF No. 16. This motion is fully briefed. Opp'n, ECF No. 31; Reply, ECF No. 38. The Court heard oral arguments from both parties on October 3, 2024. ECF No. 45.

For the reasons stated below, the Court **GRANTS** Matthews's motion to compel arbitration.

**I.   BACKGROUND**

Matthews designs, develops, and manufactures continuous process machinery for battery electrode manufacturing equipment, including solutions for the manufacture of battery electrodes from dry powder ("DBE"). Mot. 1. DBE manufacturing solutions essentially streamline the production of lithium-ion batteries and reduce the cost of EVs. *Id.* Tesla hired Matthews about five years ago to design equipment for Tesla's DBE process to Tesla's specifications. *Id.*; *see also*

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
1

Decl. of Gregory S. Babe ("Babe Decl."), Ex. 1, General Terms and Conditions for Procurement of Production Equipment and Services ("GTC"), ECF No. 16-1.

Tesla now alleges that Matthews misappropriated Tesla's proprietary dry-electrode battery manufacturing technology, breached its Mutual Non-Disclosure Agreement ("NDA"), and engaged in unfair competition by: (1) selling DBE solutions that incorporated Tesla's trade secrets to competitors, and (2) filing patent applications that disclose Tesla's trade secrets. *See* Compl. ¶¶ 15, 16.

### A.   Relevant Contracts

There are two contracts entered into by Tesla and Matthews that are relevant to this motion: (1) the GTC ▓▓▓▓▓▓ which has an arbitration clause, and (2) the NDAs signed in 2019 and 2022, which do not speak to arbitration, but instead contain a clause selecting Santa Clara County as the venue for any judicial action. The parties essentially dispute whether Tesla's claims are subject to the GTC's arbitration clause or the NDA's venue-selection clause.

#### 1.   GTC

The GTC generally governs the manufacture and sale of DBE solutions to Tesla. *See* GTC 1. The GTC includes three provisions particularly relevant to Matthews's motion: (1) an arbitration clause, (2) terms regarding intellectual property ("IP") rights, and (3) terms regarding confidentiality.

##### a.   Arbitration Clause

Section 15.6 of the GTC governs dispute resolution. GTC § 15.6. If the parties have a dispute, the GTC requires them to attempt good faith negotiations in mediation for 60 days. *Id.* §§ 15.6(b), (c). If the parties cannot resolve the dispute in that time, the GTC requires that "any dispute arising under or relating to" the GTC "shall be resolved exclusively by final and binding arbitration." *Id.* § 15.6(c). It also states that the arbitrator "will have full power and authority to determine issues of arbitrability." *Id.*

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Babe Decl. ¶¶ 15–16.

United States District Court
Northern District of California

### b. Terms Regarding IP Rights

Section 11 generally governs the parties' respective intellectual property rights. GTC § 11. Three provisions in Section 11 are particularly relevant here.

### c. Terms Regarding Confidentiality

Section 14 generally governs the parties' confidentiality obligations under the GTC. *See id.* § 14. Section 14.1 specifically states that the NDA then in effect between the parties "sets forth the Parties' respective confidentiality obligations" under the GTC, and "[t]he terms of the NDA are hereby incorporated by reference in these General Terms, and the obligations of the Parties under the NDA will continue in force throughout the term of these General Terms and each Contract even in the event of the expiration of the NDA." *Id.* § 14.1.

### 2. NDAs

Prior to entering the GTC, while the parties were beginning to communicate and negotiate the terms of the GTC, the parties executed two NDAs in 2019 which are substantively identical. Babe Decl., Exs. 2, 3, ECF No. 16-1. The NDAs expired three years after their effective dates, so the parties executed a third NDA in 2022. Babe Decl. ¶¶ 17, 24, ECF No. 16-1; *see also* Babe Decl., Ex. 5, Mutual Non-Disclosure Agreement ("NDA"), ECF No. 16-1.

The NDA's purpose was to allow each party to disclose confidential information to the other "in order to consider a potential business relationship with each other or fulfill the objectives of such relationship." NDA § 2. The NDA includes a venue-selection clause providing that "[t]he exclusive venue for any judicial action arising out of or relating to this NDA will be the state, federal, or regional courts for [Santa Clara County, California]. The parties . . . hereby waive any

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
3

challenge to venue and jurisdiction in such courts." *Id.* § 12.

### B.      Pre-Litigation Communications and ▮▮▮▮▮

From August to December 2023, Tesla repeatedly alleged that Matthews's conduct in selling DBE equipment with Tesla's trade secrets and filing a patent with Tesla's trade secrets violated the terms of the GTC, including the following instances:

#### 1.      August 2023 Email

In August 2023, Tesla Senior Director Bonne Eggleston emailed Matthews's Chief Technology Officer and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

#### 2.      November 2023 Notice of Breach Letter

In November 2023, Dr. Eggleston, on behalf of Tesla, mailed Matthews a letter titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In response, Matthews disputed Tesla's allegations and indicated that, if they could not resolve Tesla's claims informally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Babe Decl., Ex. 7, ECF No. 16-1.

Case No.:   5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
4

1    Tesla responded a few days later reiterating its position that ▮

2    ▮

3    ▮

4    ▮ Miller Decl., Ex. B, ECF No. 38-1.

### 3.  December 2023 Meeting

Representatives for both parties met in December 2023 to discuss Tesla's allegations.  *See* Miller Decl., Ex. C, ECF No. 38-1.  Tesla prepared a slide presentation for this meeting.  *Id.*  ▮

▮ *Id.* slides 4, 6.

### 4.  ▮

In response to Tesla's allegations, Matthews initiated ▮ in ▮ to ▮

▮ Babe Decl. ¶ 18. ▮

In June 2024, ▮, Tesla filed

1   its claims in this Court based on the same conduct it raised in its demand letters and the same

2   conduct subject to the ongoing ▮▮▮▮▮▮▮ proceedings.  *See* Compl. ¶¶ 15, 16.  Tesla now argues

3   that Matthews's misappropriation of Tesla's IP rights in selling DBE solutions and filing for

4   patents violates the NDA, not the GTC, and therefore is not restricted by the GTC's arbitration

5   clause.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  And like other contracts, arbitration agreements are subject to generally applicable state law contract defenses. *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

In determining whether to compel a party to arbitrate, the court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks and citation omitted).  Parties are also permitted to delegate the question of arbitrability to an arbitrator. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024).  Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

## III.  DISCUSSION

The parties do not dispute that they both agreed to a valid arbitration clause when they signed the GTC, or that they both agreed to a valid venue-selection clause when they signed the NDA.  Instead, the parties essentially dispute whether the two clauses conflict, and if so, which contract controls Tesla's claims.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
6

1    For the reasons explained below, the Court finds that the venue-selection clause in the NDA does not displace the arbitration clause in the GTC, and disputes regarding the arbitrability of Tesla's claims must be delegated to the arbitrator pursuant to the GTC's valid and enforceable arbitration agreement.

### A.     If Contracts Conflict, the Court Determines Which Contract Controls

The Court first addresses the threshold issue raised by Matthews and discussed during oral arguments—since the parties explicitly delegated the question of arbitrability to an arbitrator, who decides which contract controls, the Court or an arbitrator?

The Supreme Court recently addressed this very issue in *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024). There, the Court cited California law and held that when there are two conflicting contracts regarding arbitrability, which contract controls the claims or supersedes the other turns on the contracts' validity and enforceability, not the arbitration agreement's scope, and therefore must be answered by a court. *Id.*

Tesla argues that, pursuant to *Coinbase*, the Court must decide whether Tesla's claims are controlled by the NDA or the GTC. Opp'n 7–8. However, in its Reply, Matthews argues that the *Coinbase* holding is specific only to contracts whose terms *conflict*. Reply 8. If the Court finds that the contract terms conflict, then both parties agree that the Court must decide whether the NDA supersedes the GTC; if the Court finds that the contract terms do not conflict, then Matthews argues that the Court must allow the arbitrator to decide whether the terms of the GTC or the NDA control Tesla's claims, pursuant to section 15.6(c) of the GTC. *See id.* Tesla did not dispute this interpretation during oral argument.

The Court agrees with Matthews. *Coinbase* teaches that the Court must determine whether the NDA's venue-selection clause and the GTC's arbitration clause conflict, and if so, which contract controls. *Coinbase*, 144 S. Ct. at 1193. If, however, the Court determines that the two contracts are harmonious, and there are no other validity or enforceability issues with the arbitration clause, then pursuant to GTC § 15.6(c), the parties must arbitrate whether Tesla's claims fall within the scope of the GTC's arbitration clause. *See id.; see also, e.g., Happy Puppy*

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
7

*LA, Inc. v. Bank of Am.*, No. 2:23-CV-01354-JLS-PD, 2023 WL 6192702, at *2 (C.D. Cal. June 30, 2023), motion to certify appeal denied sub nom. *Happy Puppy LA, Inc. v. Bank of Am., N.A.*, No. 2:23-CV-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023); *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, No. 822CV01187FWSADS, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023).[2]

### B.     The NDA and GTC Do Not Conflict

The Court finds that the arbitration clause in the GTC does not conflict with the venue-selection clause in the NDA.

In California, when there are "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction," the Court must read the contracts together and harmonize the terms if possible. Cal. Civil Code § 1642. This is particularly required when one contract expressly incorporates the other. *See Bell v. Rio Grande Oil Co.*, 23 Cal. App. 2d 436, 440 (Cal. 1937) ("A written agreement may, by reference expressly made thereto, incorporate other written agreements; and in the event such incorporation is made, the original agreement and those referred to must be considered and construed as one.").

Here, there are two contracts relating to confidentiality and intellectual property, between the same two parties, made as part of the parties' commercial relationship as supplier and purchaser, and one contract expressly incorporates the other. Therefore, pursuant to California Civil Code section 1642, the Court must begin by reading both the GTC and the NDA together to determine whether their terms can be harmonized. *See, e.g.*, *Fiorentine v. Marvell Semiconductor Inc.*, No. 24-CV-01136-MMC, 2024 WL 3012805, at *6 (N.D. Cal. June 14, 2024) ("As the Arbitration Agreement and the ECIIA, along with other documents, constitute the terms of Fiorentine's employment with MSI, said writings must be interpreted together . . . .") (internal quotation marks omitted).

---

[2] While *Happy Puppy* and *Roma* were decided prior to the Supreme Court's decision in *Coinbase*, they rely on the Ninth Circuit's decision in *Suski v. Coinbase*, 55 F.4th 1227 (9th Cir. 2022), which the Supreme Court affirmed in *Coinbase*.

Case No.:   5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
8

1       The circumstances here—where a prior contract contains an arbitration clause, and a
2  subsequent contract contains only a venue-selection clause—are not novel.  Courts have often
3  found that venue-selection clauses and arbitration clauses can be read harmoniously where the
4  venue-selection clause does not explicitly require that all disputes shall be brought in a court.  *See,*
5  *e.g., Happy Puppy*, 2023 WL 6192702, at *2 (finding that the venue-selection provision in
6  subsequent contract merely specified the venue for any litigation, but did not require that disputes
7  be litigated rather than arbitrated); *Roma*, 2023 WL 3150076, at *6 (finding that a venue-selection
8  clause did not defeat the arbitration provision because the venue-selection clause applied only to
9  "[a]ny legal suit, action, or proceeding" and thus applied only "if the parties litigate, not that
10 litigation is required"); *Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-CV-00856-
11 WHO, 2021 WL 2190912, at *1, 7 (finding that the second contract did not void the arbitration
12 clause in the first contract because it did not "state or imply that the parties must litigate *instead* of
13 arbitrate").
14      In this case, the GTC provides that "any dispute arising under or relating to" the GTC
15 "shall be resolved exclusively by final and binding arbitration."  GTC § 15.6(c).  The NDA
16 provides that "[t]he exclusive venue for any judicial action arising out of or relating to this NDA
17 will be the state, federal, or regional courts for [Santa Clara County, California]."  NDA § 12.
18 Similar to the cases cited above, the NDA does not provide that any dispute between the parties
19 arising out of or relating to the NDA must be resolved in court; it provides only that any "judicial
20 action" must be brought in a court in Santa Clara County—whereby, notably, "any action" is
21 qualified by the adjective "judicial."  In other words, when read together with the arbitration
22 clause, the NDA merely states that parties must bring any dispute that is appropriate for judicial
23 action (i.e., disputes not subject to mandatory arbitration, such as judicial actions to enforce or
24 challenge an arbitration award) before a court in Santa Clara County.
25      The cases Tesla cites where courts have found conflicts between arbitration clauses and

subsequent forum-selection clauses are distinguishable.[3]  For example, the forum-selection clause in *Coinbase* conflicted with the arbitration clause because it provided that "[t]he California courts (state and federal) **shall** have sole jurisdiction of **any controversies** regarding the [sweepstakes] promotion."  *Coinbase*, 144 S.Ct. at 1191 (emphasis added).  The forum-selection clause in *Goldman, Sachs & Co. v. City of Reno* similarly conflicted with the arbitration clause because it provided that "**all actions and proceedings** . . . **shall** be brought in the . . . District of Nevada."  747 F.3d 733 (9th Cir. 2014).[4]  By contrast, the venue-selection clause here does not state that the courts in Santa Clara County *shall* have sole jurisdiction, or *all* actions and proceedings *shall* be brought in the courts in Santa Clara County.  Again, the venue-selection clause here when read harmoniously with the arbitration clause provides that, should judicial action be appropriate, it must be brought in a court in Santa Clara County.

The Court also finds Tesla's arguments regarding the integration clause in the NDA unpersuasive.  During oral arguments, Tesla advanced a theory that the venue-selection clause conflicts with the arbitration clause because the NDA states that it "supersedes all prior agreements, representations, and understandings between the parties regarding its subject matter."  NDA § 13.  First, an integration clause is not evidence of conflicting terms—whether the 2022 NDA supersedes the 2020 GTC is only relevant if the Court finds that the two contracts conflict.  As discussed above, the Court finds that the two clauses can be read harmoniously, thus there are no conflicting terms in the 2022 NDA to supersede the arbitration clause in the GTC.  Second,

---

[3] Tesla argues only that the NDA, not the GTC, *controls* Tesla's claims, therefore Tesla's claims are not subject to arbitration under the GTC.  Opp'n 7–8.  However, Tesla fails to put forth any arguments specific to whether the NDA's venue-selection clause *conflicts* with the GTC's arbitration clause.  Even so, the cases cited by Tesla discuss the issue of conflicting clauses such as these, so the Court will interpret Tesla's citation to these cases as argument that the clauses conflict.

[4] Tesla also cites to *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023), which the Court finds immaterial to this specific inquiry.  In *Johnson* the court examined two contracts that covered entirely separate subject matters—an arbitration clause in the contract governing the use of Walmart's website and a separate contract issued by the Walmart Auto Care Center governing the service of a customer's tires.  Here, as Tesla concedes, both the GTC and NDA contain overlapping provisions regarding confidentiality that relate to Tesla's claims here.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
10

1   even if Tesla's argument was relevant to the Court's inquiry here, Tesla conceded during oral

2   argument that the 2022 NDA was intended only to be an extension of the 2019 NDA.  There is no

3   evidence that the parties intended this extension of the 2019 NDA to supersede the 2020 GTC in

4   any way.  To the contrary, Tesla's 2023 communications accusing Matthews of violating the

5   GTC's confidentiality and IP provisions reveal that Tesla did not in fact believe the NDA

6   superseded those provisions in the GTC.  Considering this evidence, the plainer reading of this

7   clause is that the 2022 NDA supersedes the 2019 NDAs that proceeded it, which contained

8   identical "subject matter."

9   Therefore, the Court finds that the venue-selection clause in the NDA does not displace the

10  arbitration clause in the GTC.  Given that the parties have not raised any additional arguments

11  regarding the GTC's validity or enforceability, the Court finds that the arbitration clause in the

12  GTC is valid and enforceable.

### C. The Scope of the Arbitration Agreement is Delegated to the Arbitrator

The only remaining question now is whether Tesla's claims fall under the scope of the arbitration agreement in the GTC, or conversely, arise solely under the NDA.

Because the GTC explicitly delegates questions regarding arbitrability to an arbitrator, GTC § 15.6(c), the Court must defer to the arbitrator for resolution of this question.  *See, e.g., Patrick*, 93 F.4th at 481 ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Happy Puppy*, 2023 WL 6192702, at *5 ("[B]ecause the deposit agreement contains a delegation clause, the Court must defer . . . questions of arbitrability to the arbitrator.") (internal quotation marks omitted) (quoting *Informatech Consulting, Inc. v. Bank of Am. Corp.*, 2021 WL 242888 (N.D. Cal. Jan. 25, 2021) and *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).  Therefore, the Court's inquiry ends here.

### D. Equitable Estoppel

However, regardless of whether the venue-selection clause displaces the arbitration clause, the Court notes that it also finds Matthews's equitable estoppel arguments persuasive.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
11

United States District Court
Northern District of California

1  Under California law, "[t]he doctrine of equitable estoppel . . . provides that a person may
2  not deny the existence of a state of facts if he intentionally led another to believe a particular
3  circumstance to be true and to rely upon such belief to his detriment." *Aerojet-Gen. Corp. v. Com.*
4  *Union Ins. Co.*, 155 Cal. App. 4th 132, 147 (Cal. 2007); *see also Comer v. Micor, Inc.*, 436 F.3d
5  1098, 1103–04 (9th Cir. 2006) ("[Equitable estoppel] precludes a party from claiming the benefits
6  of a contract while simultaneously attempting to avoid the burdens the contract imposes.").

7  Here, Tesla repeatedly asserted over the course of nearly five months, and currently asserts
8  in the pending ▮▮▮▮ that the very same conduct alleged here—the sale of DBE equipment
9  with Tesla's trade secrets and the filing of a patent with Tesla's trade secrets—violates the terms
10 of the GTC. While Tesla mentioned the NDA in its Notice of Breach Letter, it explicitly
11 referenced the NDA as being "incorporated by reference into the GTCs." *See* Notice of Breach
12 Letter 1. Tesla did not state that Matthews's conduct violated any specific terms of the NDA or
13 indicate in any way that Tesla would bring claims against Matthews arising from the NDA instead
14 of the GTC. Tesla even went so far as to explicitly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to resolve Tesla's allegations. Miller Decl., Ex. B, ECF No. 38-1.
16 Matthews detrimentally relied on Tesla's allegations that Matthews violated the GTC when it
17 adhered to the dispute resolution requirements in the GTC and initiated ▮▮▮▮▮ to ▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Court's understanding is that this
19 ▮▮▮▮▮ proceeding is actively pending as of the date of this Order. Now, nearly five months
20 after Matthews initiated ▮▮▮▮▮ pursuant to the GTC in response to Tesla's allegations, Tesla
21 claims that the GTC is irrelevant to its claims, and instead, the terms of the NDA both supersede
22 the GTC's arbitration provision and control Tesla's claims.

23 Not only did Tesla fail to inform the Court of this ongoing ▮▮▮▮▮ proceeding or the
24 GTC's arbitration clause in its Complaint, but Tesla also failed to present argument in its
25 Opposition sufficient to explain why it should not be estopped from changing its mind now, after
26 Matthews has already expended considerable time, effort, and money preparing for the ▮▮▮▮
27 and compensating the ▮▮▮▮▮ As it stands, the record supports a finding that Tesla should be

28 Case No.: 5:24-cv-03615-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
12

estopped from contending at this time that its claims should be resolved in federal court rather than

**IV. CONCLUSION**

Based on the foregoing, the Court **GRANTS** Matthews's motion to compel arbitration. This case is **STAYED** pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). The parties shall notify the Court within 10 days of reaching a final resolution in the pending arbitration.

**IT IS SO ORDERED.**

Dated: October 7, 2024

EDWARD J. DAVILA
United States District Judge