UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>MATTHEWS INTERNATIONAL CORPORATION,<br><br>   Defendant. | Case No.  5:24-cv-03615-EJD<br><br>**ORDER DENYING EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 57 |

Before the Court is Plaintiff Tesla, Inc.'s ("Tesla") emergency motion for a temporary restraining order ("TRO") enjoining Defendant Matthews International Corporation ("Matthews") from selling[1] dry battery electrode ("DBE") technology[2] containing Tesla's alleged trade secret ▇▇▇▇ Technology.  Mot., ECF No. 57.  Matthews filed an opposition, and the Court heard oral arguments on February 12, 2025.  Opp'n, ECF No. 60; ECF No. 64.

For the reasons stated below, the Court **DENIES** Tesla's motion for an emergency TRO.

I. **BACKGROUND**

Matthews designs, develops, and manufactures continuous process machinery for battery electrode manufacturing equipment, including solutions for the manufacture of battery electrodes from dry powder.  DBE manufacturing solutions streamline the production of lithium-ion batteries and reduce the cost of EVs.  Tesla hired Matthews approximately five years ago to design equipment for Tesla's DBE process to Tesla's specifications.  Tesla essentially alleges that Matthews breached the parties' contract and misappropriated Tesla's trade secrets by selling DBE

---

[1] The Court's use of "selling" includes marketing, demonstrating, delivering, and negotiating specifications.
[2] The Court's use of "technology" includes the DBE process and manufacturing of DBE solutions.

Case No.: 5:24-cv-03615-EJD
ORDER DEN. EMERGENCY MOT. FOR A TRO

1

solutions that incorporated Tesla's specifications and by filing a patent application containing Tesla's trade secrets.³

The following events are relevant to Tesla's present motion.

**A.** ▬▬▬▬▬▬▬

Before Tesla filed its complaint, and after the parties could not informally resolve Tesla's allegations, Matthews filed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The Court will refer to these proceedings as the "▬▬▬▬▬▬▬." ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.³

**B.     District Court Proceedings**

On June 14, 2024, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Tesla filed its claims here based on essentially the same conduct subject to ▬▬▬▬▬▬▬. The Court granted Matthews's motion to compel arbitration on October 9, 2024, finding that the arbitration clause in the GTCs was valid and enforceable but reserving the determination of whether Tesla's claims fell under its scope for the arbitrator, pursuant to the parties' agreement. The Court stayed the case pending arbitration.³

Tesla indicated in the hearing on Matthews's motion to compel arbitration that it intended to file a motion for a preliminary injunction in the weeks following, but it did not. Instead, on December 3, 2024, the parties entered a global standstill agreement ("Standstill Agreement") ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Standstill Agreement, ECF No. 56-27.

---

³ These facts are summarized from the Court's Order granting Matthews's motion to compel arbitration. Order Granting Mot. to Compel Arb., ECF No. 50.

Case No.: 5:24-cv-03615-EJD
ORDER DEN. EMERGENCY MOT. FOR A TRO
2

1     **C.**   ▓▓▓▓▓▓▓▓▓▓

2     Tesla then filed its ▓▓▓▓▓▓ on ▓▓▓▓▓▓, pursuant to the Court's

3     October 7, 2024, Order.  Second Arbitration Demand, ECF No. 59-7, at 17–23.  The Court will

4     refer to these proceedings as the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8     ▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10    ▓▓▓, ECF No. 59-7, at 17–103; ▓▓▓▓▓▓▓▓▓▓, ECF No. 59-7, at 107. ▓▓

11    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13    Tesla has not informed ▓▓ of the need for emergency relief or contacted ▓▓ to

14    inquire into the status of the ▓▓▓▓▓▓ prior to, or since, filing its present motion.

15    **D.**   ▓▓▓▓▓▓▓▓▓▓

16    On February 5, 2025, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, issued

17    an ▓▓▓▓▓▓ ("▓▓▓▓▓▓"). ▓▓▓▓▓▓, ECF No. 56-28.  Most relevant here, ▓▓

18    ▓▓ declared:

19    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
      ▓▓▓▓

24    *Id.* at 38 (emphasis added).

25    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28    Case No.: 5:24-cv-03615-EJD
      ORDER DEN. EMERGENCY MOT. FOR A TRO
                                   3

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 38–39. The
2  Court does not have the exact ▓▓▓▓▓▓▓▓▓▓▓▓ relied upon, but Matthews
3  represents that Tesla's alleged trade secret ▓▓▓ Technology was "included ▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp'n 16. Tesla disputed this at oral arguments.

### E. Matthews's Press Release

The Standstill Agreement between Tesla and Matthews expired upon the issuance of ▓▓▓
▓▓▓▓▓▓▓▓▓. The next day, on February 6, 2025, Matthews issued a press release
("the Press Release") indicating that it prevailed in ▓▓▓▓▓▓▓▓ and that it will resume its
DBE sales. Press Release, ECF No. 57-26.

### F. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The same day that Matthews published the Press Release, Tesla filed ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, ECF No. 59-7, at 111–117. ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Opp'n 5.

### G. Tesla's Emergency TRO Motion in District Court

On February 7, 2025, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tesla filed ▓▓▓▓ emergency motion regarding the Press Release
here. *See* Mot. This motion is before the Court now. Here, Tesla argues that the Press Release
revealed Matthews's plans to immediately resume selling DBE machinery, and Matthews's DBE
machinery contains "▓▓▓▓ Technology." Tesla claims to have "IP rights" to the ▓▓▓▓
Technology and identifies four features in the technology as Tesla's trade secrets. *Id.* at 2, 9.
Accordingly, Tesla seeks to enjoin Matthews's sale of DBE machinery containing the ▓▓▓▓
Technology.

Pursuant to the Court's order, Matthews filed a response. *See* Opp'n. Among other points,
Matthews disputes Tesla's purported ownership of ▓▓▓▓ Technology, claims that ▓▓▓▓▓▓
already found ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and argues that this dispute

United States District Court
Northern District of California

1 should be heard in either of the two pending ▓▓▓▓▓▓ not in this Court.

2   The Court notes that Tesla did not inform Matthews of its intent to file this motion or seek an extension of their previous Standstill Agreement pending resolution of ▓▓▓▓▓▓.

## II.    LEGAL STANDARD

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect the applicant's rights until a hearing can be held. A temporary restraining order is "not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted). Under Federal Rule of Civil Procedure 65(a), an applicant is entitled to a temporary restraining order upon demonstrating four factors: (1) the applicant "is likely to succeed on the merits"; (2) the applicant "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) the balance of equities favors the requested preliminary relief; and (4) the "injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

District courts generally have the authority to grant temporary injunctive relief to maintain the status quo pending arbitration. *Toyo Tire Holdings of Ams. Inc. v. Continental Tire N.A., Inc.*, 609 F.3d 975, 979–82 (9th Cir. 2010). However, issuing an injunction during arbitration may be inappropriate, for example, when an arbitrator is authorized to grant the equivalent of the relief sought, or when the injunction would upend the status quo rather than preserve it. *See, e.g., See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024) ("[T]he mere existence of an arbitration provision does not necessarily preclude a district court from awarding preliminary injunctive relief to preserve the status quo in advance of, and in support of, the arbitration."); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 871 (9th Cir. 2021) ("Likewise, because Plaintiffs' request for injunctive relief regarding their classification was properly a matter for the arbitrator, the district court did not err by declining to reach the merits of Plaintiffs' request for a preliminary

Case No.: 5:24-cv-03615-EJD
ORDER DEN. EMERGENCY MOT. FOR A TRO

5

injunction under [*Winter*]."); *Toyo*, 609 F.3d at 979–82 ("[A] district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied."); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) ("Because the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite,* it would have been inappropriate for the district court to grant preliminary injunctive relief.").

## III.   DISCUSSION

The Court finds that this is not the proper forum to litigate Tesla's emergency motion for a TRO.  Tesla and Matthews are currently opposing parties in two ▬▬▬▬ proceedings arising out of the same or similar conduct.  ▬▬▬▬ are authorized to grant the emergency relief requested here, and issuing an order now in this Court that may conflict with or disturb these ▬▬▬▬ proceedings would upend the status quo rather than preserve it.

As an initial matter, Tesla's proposed TRO would likely be duplicative of, or contrary to, the ▬▬▬▬ currently in place.  The ▬▬▬▬ essentially ▬▬▬▬ ▬▬▬▬.  Tesla argues that the ▬▬▬▬ Technology in Matthews's DBE equipment is Tesla's IP.  If this is correct, which Matthews disputes, then Tesla conceded during oral arguments that it believes Matthews's sale of the ▬▬▬▬ Technology would violate the ▬▬▬▬.  When asked by the Court, Tesla could not articulate the remedies generally available when a party violates an ▬▬▬▬ in an ongoing ▬▬▬▬ proceeding; but the Court recognizes options include raising the violation with ▬▬▬▬ still overseeing ▬▬▬▬ for appropriate sanctions, or seeking confirmation and enforcement[4] of the ▬▬▬▬—instead of an emergency motion in this Court for a TRO to enjoin the very same conduct based on a different trade secret misappropriation legal theory.[5]  *See, e.g.,* ▬▬▬▬

---

[4] Tesla has decidedly not attempted to confirm or enforce the ▬▬▬▬ in its motion.
[5] The underlying legal theory is irrelevant to whether the conduct at issue has already been

1   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[6]; 9 U.S.C § 9 (providing procedures for

2   confirmation and enforcement of arbitration awards).  On the other hand, if Matthews is correct

3   that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4   ▇▇▇▇▇▇, then an order restricting Matthews's ability to sell or disclose this technology would

5   likely conflict with the ▇▇▇▇▇▇▇▇, interfere with the parties' agreement to ▇▇▇▇▇▇ and upend

6   the current status quo preserved by the ▇▇▇▇▇▇▇▇.[7]

7   However, if somehow the ▇▇▇▇▇▇ Technology is neither covered by the ▇▇▇▇▇▇▇▇

8   nor intentionally excluded from it, then the appropriate forum for Tesla's request would be ▇▇

9   ▇▇▇▇▇▇▇▇▇▇.  There, Tesla has already submitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

10  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

12  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13  Should Tesla require an expedited ▇▇▇▇▇▇▇▇ process on an emergency basis, as it has argued

14  the circumstances warrant, ▇▇▇▇▇▇ has emergency relief procedures available to Tesla. *See, e.g.*,

15  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

16  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

18  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

19  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Indeed, Tesla has used ▇▇▇▇▇▇ expedited and

20  emergency procedures for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[8]  Tesla did not attempt to

---

22  estopped by the ▇▇▇▇▇▇▇▇.
    [6] The Court sua sponte takes judicial notice of the publicly available ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23  pursuant to Fed. R. Evid. 201(c)(1).
    [7] The Court does not find that the parties' standstill agreement constituted the "status quo." The
24  ▇▇▇▇▇▇▇▇ terminated the two-month agreement ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and is now the
    status quo. *See* ▇▇▇▇▇▇▇▇ 2, 7–8.
25  [8] First, Tesla filed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
26  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  ECF No. 37-4, at 53–55.
    Second, the day before filing this motion, Tesla filed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF No. 59-7, at 111–117. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

28  Case No.: 5:24-cv-03615-EJD
    ORDER DEN. EMERGENCY MOT. FOR A TRO
                                           7

1    initiate emergency procedures in this instance.  Tesla also highlights the only issue that will be

2    before ▓▓▓▓ currently is ▓▓▓▓▓▓▓▓▓▓▓▓.  Even so, the Court

3    sees no reason why this would restrict ▓▓▓▓ authority to enter the interim emergency

4    injunction sought here pending resolution of ▓▓▓▓▓▓.  *See, e.g.,* ▓▓

5    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

7         In summary, Tesla is currently engaged in two ▓▓▓▓ proceedings regarding the same

8    or similar alleged conduct committed by Matthews.  One proceeding examines ▓▓▓▓

9    ▓▓▓▓▓▓▓▓▓▓▓▓ and has issued an ▓▓▓▓ which, according to Tesla,

10   already protects the ▓▓▓▓ Technology, and according to Matthews, permits its sale of the

11   ▓▓▓▓ Technology.  The other proceeding, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is set to begin imminently.  In the context of this

13   landscape, the Court finds that issuing Tesla's proposed TRO here would not "preserve the status

14   quo and the meaningfulness of the arbitration process"—it would needlessly interfere with already

15   expedited ▓▓▓▓ proceedings and upend the status quo preserved by the ▓▓▓▓.  *Toyo*,

16   609 F.3d at 979–82.  Accordingly, the Court need not examine the *Winter* factors and **DENIES**

17   Tesla's motion.  *See Capriole*, 7 F.4th at 871.

18   **IV.   CONCLUSION**

19        Based on the foregoing, the Court **DENIES** Tesla's motion for an emergency TRO.  This

20   case remains stayed.

21        **IT IS SO ORDERED.**

22   Dated: February 14, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-03615-EJD
ORDER DEN. EMERGENCY MOT. FOR A TRO

8