David C. Kiernan (SBN 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700

Ryan K. Walsh (*Pro Hac Vice*)
rkwalsh@jonesday.com
JONES DAY
1221 Peachtree Street, N.E.
Atlanta, GA 30361
Telephone:     (404) 521-3939
Facsimile:     (404) 581-8330

Stuart W. Yothers (*Pro Hac Vice*)
syothers@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Attorneys for Defendant*
*Matthews International Corporation*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC., | Case No. 24-cv-03615-EJD |
| Plaintiff, | **MATTHEWS' OPPOSITION TO TESLA, INC.'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| MATTHEWS INTERNATIONAL CORPORATION, | |
| Defendant. | Date:     February 11, 2025 |
| | Time:     4:00 PM |
| | Place:    Courtroom 4, 5th Floor |
| | Judge:    Hon. Edward J. Davila |

**PUBLIC / REDACTED VERSION**

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 6

I.  THIS COURT IS NOT THE PROPER FORUM FOR TESLA'S MOTION. ..................... 6

    A.  Tesla must obtain relief from the arbitrator, not this Court. ........................................... 6

    B.  The TRO would go far beyond preserving the status quo. ............................................. 8

    C.  There is no basis for Tesla to obtain discovery in connection with this TRO. ............... 9

II.  TESLA FAILS TO MEET THE HIGH STANDARD FOR THE ISSUANCE OF A TRO. ................................................................................................................................ 9

    A.  Legal standard. ............................................................................................................... 9

    B.  Tesla has no likelihood of success on the merits. ...................................................... 10

        1.  Tesla's claims are barred by *res judicata*. ............................................................ 10

        2.                                          .......................... 13

        3.  Tesla has not established a likelihood of trade secret misappropriation. ............. 14

        4.  Tesla's requested injunction would be unenforceable for lack of specificity. ...... 18

    C.  Tesla has not made a showing of irreparable harm. ..................................................... 20

        1.  Tesla's claim of irreparable harm is contrary to adjudicated fact. ........................ 20

        2.  Tesla's purported harms are speculative. .............................................................. 21

        3.  Tesla's unreasonable delay demonstrates a lack of irreparable harm. ................. 22

    D.  The balance of equities favors Matthews, not Tesla. ................................................... 22

    E.  Enjoining Matthews would not be consistent with the public interest. ....................... 24

    F.  Tesla's Motion ignores the security requirement in the Federal Rules. ...................... 24

III.  MATTHEWS REQUESTS FEES AND COSTS ASSOCIATED WITH THIS MOTION. ....................................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

C̲ASES

4

5
*3M Co. v. Ugly Juice, LLC*,
No. 5:21-CV-02338-EJD, 2021 WL 1947579 (N.D. Cal. May 14, 2021) ............................ 19

6

7
*Action Learning Sys., Inc. v. Crowe*,
No. 14-cv-5112-GW, 2014 WL 12564011 (C.D. Cal. Aug. 11, 2024) ................................. 19

8

9
*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ............................................................................................... 8

10

11
*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ............................................................................................... 19

12
*CanWe Studios LLC v. Sinclair*,
No. 13-cv-6299-PSG, 2013 WL 12120437 (C.D. Cal. Nov. 20, 2013) ................................ 19

13

14
*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ......................................................................................... 6, 8, 9

15

16
*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ......................................................................................... 19, 21

17

18
*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
No. 2021-1839, 2022 WL 1530491 (Fed. Cir. May 16, 2022) ............................................. 19

19

20
*Chung v. Intellectsoft Grp. Corp.*,
No. 21-cv-03074-JST, 2024 WL 813445 (N.D. Cal. Feb. 12, 2024)..................................... 17

21
*Cisco Sys., Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................................ 18

22

23
*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................................................. 24

24

25
*Degree Mech., Inc. v. J.C. Welding, LLC*,
No. 5:19-CV-05133-EJD, 2019 WL 4082689 (N.D. Cal. Aug. 29, 2019) ........................... 22

26

27
*Estrada v. Gipson*,
No. 1:13-CV-00919 LJO DLB, 2014 WL 585444 (E.D. Cal. Feb. 14, 2014)....................... 25

28

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

**TABLE OF CONTENTS**
(continued)

Page

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*,
    356 F. Supp. 2d 1048 (N.D. Cal. 2005) ............................................................... 22

*Genfit S.A. v. Cymabay Therapeutics Inc.*,
    No. 21-cv-00395-MMC, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022).................................. 18

*Global Indus. Ivn. Ltd. v. Chung*,
    No. 19-CV-07670-LHK 2020 WL 5355968 (N.D. Cal. Sept. 7, 2020).................................. 10

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*,
    415 U.S 423 (1974).................................................................................... 8, 18

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001).............................................................................. 24

*High Tech Med. Instrument., Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995)............................................................................. 22

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 542 (9th Cir. 2020).............................................................................. 14

*Kelton v. Stravinski*,
    138 Cal. App. 4th 941 (2006)............................................................................. 24

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
    402 F. Supp. 3d 877 (N.D. Cal. 2019)................................................................... 22

*Lag Shot LLC v. Facebook, Inc.*,
    545 F. Supp. 3d 770 (N.D. Cal. 2021)..................................................................... 8

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006).............................................................................. 25

*Micrel, Inc. v. Advanced Monolithic Sys., Inc.*,
    1995 WL 138569 (N.D. Cal. Mar. 20, 1995).............................................................. 22

*Mpoyo v. Litton Electro-Optical Sys.*,
    430 F.3d 985 (9th Cir. 2005).......................................................................... 10, 11

*Nat. Res. Def. Council, Inc. v. Winter*,
    508 F.3d 885 (9th Cir. 2007).............................................................................. 23

- ii -

**TABLE OF CONTENTS**
(continued)

Page

*Neo4j, Inc. v. PureThink, LLC*,
No. 5:18-CV-07182-EJD, 2023 WL 7093805 (N.D. Cal. Oct. 25, 2023) ............................ 20

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) ................................................................................. 20, 21

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
55 F. Supp. 2d 1070 (C.D. Cal. 1999) .......................................................................... 22

*Pom Wonderful LLC v. Pur Beverages LLC*,
No. CV 13-06917 MMM, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ............................ 20

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995) ............................................................................. 19

*Rogers v. Lyft, Inc.*,
452 F. Supp. 3d 904 (N.D. Cal. 2020), *aff'd*, 2022 WL 474166 (9th Cir. Feb.
16, 2022) .............................................................................................................. 6, 8

*Schmidt v. Lessard*,
414 U.S. 473 (1974) .................................................................................................. 18

*Siam v. Kizilbash*,
130 Cal. App. 4th 1563 (2005) .................................................................................... 25

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ......................................................................................... 6

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ....................................................................................... 23

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
322 F.3d 1064 (9th Cir. 2003) ..................................................................................... 11

*Thibodeau v. Crum*,
4 Cal. App. 4th 749 (1992) .......................................................................................... 10

*Toyo Tire Holdings of Am. Inc. v. Cont'l Tire N. Am., Inc.*,
609 F.3d 975 (9th Cir. 2010) ......................................................................................... 6

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

**TABLE OF CONTENTS**
(continued)

Page

*uSens, Inc. v. Shi*,
    No. 18-cv-01959-SVK, 2018 WL 11436323 (N.D. Cal. Oct. 18, 2011) ............................... 19

*W. Radio Servs. Co. v. Glickman*,
    123 F.3d 1189 (9th Cir. 1997)............................................................................................ 10

*Walker v. Mohadjer*,
    No. 2:13-CV-1193 WBS AC, 2014 WL 130793 (E.D. Cal. Jan. 14, 2014) ......................... 25

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) .............................................................................................................. 9

*World Financial Grp. Ins. Agency v. Olson*,
    No. 24-cv-00480-EJD, 2024 WL 730356 (N.D. Cal. Feb. 22, 2024) ............................... 9, 19

**STATUTES**

18 U.S.C. § 1839(3) ................................................................................................................ 15

Cal. Civ. Code § 3426.1(d) ....................................................................................................... 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65 ......................................................................................................... 18, 19, 24

**INTRODUCTION**

Tesla's request for a temporary restraining order (the "Motion") is procedurally and substantively flawed and should be denied. It was brought in the improper forum;

; and it does not approach the high standard necessary for the extraordinary relief it seeks.

First, this Court is the wrong forum. Months ago, this Court compelled Tesla to arbitrate its claims, including its challenge to arbitrability. ECF 50. Thus, to the extent Tesla is entitled to any relief, it must seek that relief from an arbitrator. Tesla cannot lose a motion to compel arbitration, and then return to this Court months later claiming wrongly that

Second, Tesla is estopped from pursuing the relief it seeks under the principles of *res judicata*. At bottom, Tesla contends that Matthews breached its contracts and misappropriated Tesla's trade secrets by selling a machine called the



Tesla is therefore barred from asserting them here. Moreover,

(1)                                  (2)

(3)

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

and (4)

Tesla has therefore already litigated (and lost) the very same issues it seeks to relitigate here.  Indeed, the testimony Tesla submitted in support of its Motion makes allegations

Third, even a cursory review of the *Winter* factors confirms that Tesla cannot come close to satisfying the high standard necessary for the extraordinary relief it seeks.

This is the second time Tesla has raised these allegations and sought relief in this Court.  It is now evident that Tesla continues to file these claims on the public docket here—as opposed to in arbitration—as part of its strategy to disclose a one-sided (and now proven false) version of the parties' private dispute to attempt to devalue, or destroy, Matthews.  And at the same time,

Tesla's actions should neither be condoned nor rewarded.  Matthews respectfully requests that Tesla's Motion be denied, and that Tesla be directed to pay Matthews' fees and costs in responding to this Motion.

## BACKGROUND

which Tesla claims was a "clone" of Tesla's          .  As this Court previously noted, "[f]rom August to December 2023, Tesla repeatedly alleged that Matthews's conduct in selling DBE

---

[1] Tesla cites this language to suggest                    Mot. at 3.

equipment with Tesla's trade secrets and filing a patent with Tesla's trade secrets violated the terms of" the parties' ▓▓▓▓▓ (the "GTCs").  ECF 50 at 4.  Tesla's allegations culminated in a notice of breach asserting that Matthews had breached the GTCs.  *Id.*  After the parties were unable to resolve their disputes amicably, ▓▓▓▓▓

▓▓▓▓▓

▓▓▓▓▓ *Id.* at 5.  ▓▓▓▓▓

▓▓▓▓▓

▓▓▓▓▓ *Id.*

▓▓▓▓▓ Tesla filed its complaint in this Court, on the public docket, notwithstanding the parties' confidentiality agreements and the ADR provision in the GTCs.  ECF 1.  Tesla only filed this complaint after ▓▓▓▓▓

▓▓▓▓▓ ECF 17-6, Ex. 3, ¶ 3.  Tesla's complaint contained no meaningful detail regarding its claims, but asserted damages "which Tesla conservatively estimates will exceed $1 billion."  ECF 1, ¶ 29.  Matthews promptly moved to compel arbitration.  ECF 16.

Along with its opposition to Matthews' motion, Tesla publicly filed a declaration from Dr. Bonne Eggleston, the Senior Director of Tesla's battery program.  ECF 32-5.  Dr. Eggleston's declaration made several demonstrably false allegations about Matthews' business, including that "Matthews had no substantive DBE experience" before working with Tesla's predecessor-in-interest (¶ 5), that "Matthews is not a company that performs primary research relating to battery technology," (¶ 5), that he had "never observed Matthews performing important research or development relating to DBE," (¶ 6), that "Matthews had no real expertise or history of independent innovation relating to DBE" (¶ 11), and other comments along those lines.  Virtually none of the comments disparaging Matthews were redacted.  These remarks had no relevance to the motion— which turned on the scope of the ▓▓▓▓▓, not Matthews' business lines or expertise.

The press picked up on Tesla's complaint. *See, e.g.*, Miller Decl. Exs. 18, 19.  So did the markets.  Matthews' stock declined 7.1% the next trading day.  *Id.*, Ex. 1.  The damage has persisted long past Tesla's original filing.  For instance, on August 7, 2024, Moody's downgraded Matthews'

1  credit rating, specifically citing "[t]he company's ongoing legal dispute with major customer, Tesla

2  Inc." *Id.*, Ex. 2.

3          During the October 3, 2024 hearing on Matthews' motion, Tesla informed the Court that it

4  intended to seek immediate injunctive relief.  ECF 52 at 56:13–15.  On October 7, 2024, this Court

5  granted Matthews' motion to compel arbitration.  ECF 50.  Among other things, the Order noted

6  that "

7

8                                            *Id.* at 5–6.  The Order also found that Tesla had

9                                            and that "the record supports a finding that Tesla should

10  be estopped from contending at this time that its claims should be resolved in federal court rather

11  than arbitration." *Id.* at 12–13.

12          After being compelled to arbitration, Tesla repeatedly threatened to launch further

13  proceedings for emergency injunctive relief on precisely the same basis.  *See, e.g.* ECF 1 at 14;

14  ECF 57-15; 57-16; 57-19; ECF 52 at 56:13–15.  Matthews is a fraction of Tesla's size, with a

15  fraction of its ability to spend on legal expenses.  To avoid fighting expensive legal battles on

16  multiple fronts, in September 2024, Matthews agreed not to sell DBE equipment to Chinese

17  customers                                            ECF 57-17.

18

19

20

21

22

23          Matthews agreed to expand the scope and timing of the standstill.  ECF 57-23.

24          Tesla waited a month—until the Friday evening (November 8, 2024) before the hearing—

25                                            based on this Court's October 7 Order (ECF 50).

26  Miller Decl. Ex. 4.

27

28



ECF 57-25

Despite what Tesla says in the Motion,                                    *Id.* at

39.

*Id.* at 4.  Also contrary to Tesla's claims,

(*id.* at 7), and that

(*id.* at 30).

(*id.* at 16–17),                                    (*id.* at 38).

*Id.* at 39.

On February 6, 2025, in light of Tesla's public disclosure of its one-sided narrative of the parties' dispute—including suggestions that Matthews did not develop DBE technology and does not have the right to sell it to others—Matthews disclosed, at a high level,

ECF 57-26.

That evening,

The next day, February 7, 2025, Tesla filed this Motion only an hour before Matthews'

1   quarterly earnings announcement.  ECF 57.  Tesla's counsel did not contact the Court for a hearing

2   date, nor did Tesla's counsel contact Matthews' counsel regarding the TRO.

3                                                                             Miller Decl. Ex. 9.  Once again,

4   following Tesla's filing of a public motion disparaging Matthews' business and threatening to

5   enjoin its sales of DBE equipment, Matthews' stock declined 9.9%.  Miller Decl. Ex. 10.

**ARGUMENT**

**I.    THIS COURT IS NOT THE PROPER FORUM FOR TESLA'S MOTION.**

**A.    Tesla must obtain relief from the arbitrator, not this Court.**

9       Tesla is, once again, seeking relief in the wrong forum.  It is true, as Tesla notes (Mot. 14–15,

10  20–21), that "a district court may issue interim injunctive relief on arbitrable claims if interim relief

11  is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided,

12  of course, that the requirements for granting injunctive relief are otherwise satisfied."  *Toyo Tire*

13  *Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010).  But the

14  Ninth Circuit has held that "it would [be] inappropriate for the district court to grant preliminary

15  injunctive relief" where all of a party's claims are arbitrable and the "arbitral tribunal is authorized

16  to grant the equivalent of an injunction *pendente lite*."  *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716,

17  725–26 (9th Cir. 1999).  And where the injunction sought by the plaintiff would not "defeat any

18  ultimate award," and would "upend, rather than preserve, the status quo," the arbitral tribunal is the

19  right body to deal with the plaintiff's request for injunctive relief, not the court.  *Capriole v. Uber*

20  *Techs., Inc.*, 7 F.4th 854, 867–68 (9th Cir. 2021); *see also, e.g.*, *Rogers v. Lyft, Inc.*, 452 F. Supp.

21  3d 904, 912 (N.D. Cal. 2020), *aff'd,* 2022 WL 474166 (9th Cir. Feb. 16, 2022) (rejecting plaintiff's

22  motion for a preliminary injunction in part because "[t]he issuance of the preliminary injunction

23  would reclaim for the judiciary a matter assigned by the parties to arbitration.").

24      The law is therefore clear that when an arbitrator is authorized to grant the injunctive relief

25  a plaintiff seeks, the plaintiff must obtain that relief from the arbitrator, not from a court.  That is

26  the case here.                                                             like the ICC Rules

27  at issue in *Simula* and *Toyo*, provide that "[t]he Arbitrator may grant whatever interim measures

28

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

1    are deemed necessary, including injunctive relief and measures for the protection or conservation

2    of property and disposition of disposable goods."  Rule 19(d) (ECF 16-2, Ex. 4).

3         While                                    —this Court already

4    found that "[a]s it stands, the record supports a finding that Tesla should be estopped from

5    contending at this time that its claims should be resolved in federal court rather than arbitration."

6    ECF 50 at 12-13.  Thus, Tesla's sole basis for seeking relief from this Court is that "[t]he claims in

7    Tesla's Complaint are momentarily suspended

8                                         Mot. 13, 20.

9         First, this position is impossible to credit.

10

11

12

13

14         Second, to the extent Tesla now finds itself "between two tribunals," that is an issue of

15    Tesla's own making.  Even if we

16

17                                                                        four months

18    have passed since this Court issued an Order compelling arbitration on October 7, 2024.  ECF 50.

19    Tesla told this Court during the motion to compel arbitration hearing that "Tesla in fact does plan

20    to file a motion for preliminary injunction before [this Court] next week."  ECF 52 at 56:13–15.

21

22

23

24

25

26

27         Moreover, the issues raised in Tesla's Motion highlight why this matter is best left for the

28

arbitrator to resolve.

ECF 17-5, Ex. 1, § 15.6(c); *see also Rogers*, 452 F. Supp. 3d at 912 ("[I]f the parties agreed that the arbitrator would get the first stab at the [legal] question, the issuance of the preliminary injunction would reclaim for the judiciary a matter assigned by the parties to arbitration.").

Miller Decl. Ex. 4.

**B.    The TRO would go far beyond preserving the status quo.**

TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).  As in other contexts, courts have declined to grant injunctions in aid of arbitration where the injunction would go beyond preserving the status quo.  *See, e.g.*, *Capriole*, 7 F.4th at 868 (injunction in aid of arbitration denied where it would "upend, rather than preserve, the status quo"); *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 786–87 (N.D. Cal. 2021) (same); *Rogers*, 452 F. Supp. 3d at 912 (same).

"The relevant status quo is that between the parties pending a resolution of a case on the merits." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (quotation omitted).  Here, That is precisely what Matthews is now doing, By contrast, a TRO that prohibits Matthews from exercising its contractual rights would alter that status quo.

Tesla refers to a standstill agreement (Mot. 1, 5, 17) that Tesla bullied Matthews into while the parties *Supra*, p. 4.  Matthews understandably did not want to incur the expense and reputational harm of litigating a public motion for injunctive relief Indeed, the primary

1    reason for Matthews' �@▨▨ was so that Matthews did not have to live in

2    constant threat of suits and/or motions for injunctive relief by Tesla.  Now, by some alchemy, Tesla

3    claims that its earlier threats to seek injunctive relief entitle it to injunctive relief—in other words,

4    because Tesla threatened Matthews until Matthews agreed ▨▨

5    ▨▨

6    ▨▨ Matthews has suddenly found itself in a new status quo.  That is nonsense.

7    **C.  There is no basis for Tesla to obtain discovery in connection with this TRO.**

8    Moreover, even if Tesla were entitled to an injunction, the most Tesla would be entitled to

9    is an injunction in aid of arbitration—that is, a status quo injunction until there is an arbitrator

10   appointed who is empowered to grant the relief Tesla seeks.  *E.g.*, *Capriole*, 7 F.4th at 867–68.

11   Accordingly, Tesla's demand that Matthews provide one-sided discovery in connection with the

12   TRO (Mot. 21–22) makes no sense.  Tesla cites no authority in support of this position, and it is

13   illogical—no discovery is needed in connection with an injunction of this type.  This appears to be

14   an attempt to circumvent the discovery procedures ▨▨

15   ▨▨ ECF 17-5, Ex. 1, § 15.6(c).  Tesla's request should be denied.

16   **II.  TESLA FAILS TO MEET THE HIGH STANDARD FOR THE ISSUANCE OF A TRO.**

17   **A.  Legal standard.**

18   Requests for TROs are governed by the same general standards as preliminary injunctions.

19   *World Fin. Grp. Ins. Agency v. Olson*, No. 24-cv-00480-EJD, 2024 WL 730356 at *4 (N.D. Cal.

20   Feb. 22, 2024).  A TRO is "'an extraordinary remedy that may only be awarded upon a clear

21   showing that the plaintiff is entitled to such relief.'"  *Winter v. Natural Resources Defense Council,*

22   *Inc.*, 555 U.S. 7, 22 (2008).  "[A] party must establish four factors: (1) it is likely to succeed on the

23   merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

24   of equities tips in its favor; and (4) an injunction is in the public interest."  *World Fin. Grp.*, 2024

25   WL 730356 at *4.  "Because it is a threshold inquiry, when a plaintiff has failed to show the

26   likelihood of success on the merits, [the court] need not consider the remaining three *Winter*

27   elements."  *Google*, 786 F.3d at 740 (cleaned up).

28

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

Tesla cannot establish any of the four *Winter* factors, much less make a "clear showing" that it is entitled to such extraordinary relief.

### B.    Tesla has no likelihood of success on the merits.

Tesla cannot establish the threshold inquiry of likely success on the merits.  First, Tesla is estopped from even seeking a TRO based on the sale or threatened sale of equipment "based on Tesla's ▓▓▓▓" because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tesla does not identify any other alleged claims of misappropriation besides the ▓▓▓▓, and to the extent the ▓▓▓▓ actually contains any Tesla trade secrets, those trade secrets were certainly known to Tesla when Matthews filed its Demand in the ▓▓▓▓▓▓▓ Second, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Finally, even if Tesla were permitted to proceed with its misappropriation claims, Tesla has not met its burden to show that it would be likely to succeed.

#### 1.    Tesla's claims are barred by *res judicata*.

Tesla's trade secret claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ are now barred by *res judicata*.  "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  Claim preclusion "applies when the earlier suit (1) involved the same claim or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro-Optical Sys*., 430 F.3d 985, 987 (9th Cir. 2005) (cleaned up).  These concepts apply equally to litigation and arbitration.  S*ee, e.g., Glob. Indus. Ivn. Ltd. v. Chung*, No. 19-CV-07670-LHK 2020 WL 5355968, at *6 (N.D. Cal. Sept. 7, 2020) (dismissing for res judicata lawsuit seeking to "relitigate what was adjudicated in the [prior] arbitration"); *Thibodeau v. Crum*, 4 Cal. App. 4th 749, 755 (1992) (dismissing for res judicata, because "arbitrating parties are obliged . . . to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues").

The Ninth Circuit has identified four factors for determining whether successive claims are in fact the same claim: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo*, 430 F.3d at 987.  Of these factors, the first—whether the claims share "the same transactional nucleus of facts"—is often "outcome determinative." *Id.* at 988; *see also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

First, as this Court has already found, Tesla's claims do not just arise out of the same transactional nucleus of facts; it is the "very same conduct"—sale of an          "clone"—                ECF 50 at 12.

ECF 17-6, Ex. 1 at ¶ 108.  Each of the equipment features specifically called out in Tesla's present motion

Miller Decl. Ex. 13.  On November 10, 2023, Tesla accused Matthews of "breach of contractual obligations and misappropriation of intellectual property" for allegedly selling "the Tesla developed          tool to" a third party."  ECF 17-5, Ex. 6.



Tesla then filed an action in this Court seeking injunctive relief and a judgment that Matthews misappropriated Tesla's trade secrets in connection with the very same third-party sales.  ECF 1 at 14–16.  This Court compelled arbitration, finding that Tesla had asserted the "very same conduct" Tesla alleged in the ███████████ *i.e.*, that "the sale of DBE equipment to ████ with Tesla's trade secrets . . . ██████████████████  ECF 50 at 12.

Second, Matthews' rights and interests established ██████████ would be impaired by prosecution of Tesla's misappropriation claims.  For example, ████████████ that ██████████████████████████████████████████████████████ Award at 16–17, 27–34, 38.

Third, substantially the same evidence presented in the ████████ would be presented in relation to Tesla's present claims.  ██████████████████████ ECF 17-6, Ex. 1 at ¶ 108.

1                                                                      The same

2   evidence would establish Matthews has not wrongfully disclosed Tesla's confidential information

3   because Matthews already had the relevant know-how before its relationship with Tesla.

4          Because Tesla's claims are barred, Tesla cannot establish a likelihood of success.

5          **2.**

6          Not only is Tesla barred by *res judicata*, the issues Tesla raises in its Motion have already

7   been decided by                    Tesla asks this Court to enjoin Matthews from the very activity (1)

8

9

10

11

12

13  Award at 38 (emphasis added).  Indeed,                    articulated Tesla's position as

14

15                        Award at 3.

16              *Id.* at 37.  Tesla now "asks that the Court temporarily enjoin Matthews from selling,

17  attempting to sell, disclosing, or attempting to disclose any article, document, equipment, or other

18  matter comprising Tesla's valuable trade secrets relating to dry battery electrode ("DBE")

19  manufacture and/or Tesla's            DBE tool," Mot. at 1,

20

21          Tesla would have this Court believe that                made findings of fact and entered

22  judgments in Tesla's favor, claiming that

23                                    Mot. at 21.  But the award shows that this is not so.

24

25          To the contrary,

26

27

28

1    (Award at 22).

2    a

3    number of ▨▨▨▨▨ findings.  For example, Tesla's Motion states "As Dr. Eggleston's

4    Declaration explains, whatever experience Matthews has relating to DBE—and particularly any

5    experience it has in multi-roll calenders for DBE, or in pilot tools employ the details of Tesla's

6    confidential 'All-In-One' design—is solely attributable to Matthews'[] past work with Tesla."  Mot.

7    at 19.  But ▨▨▨▨ found:

8

9

10

11

12

13

14

15

16

17

18

19

20

### 3.    Tesla has not established a likelihood of trade secret misappropriation.

22    The elements of a misappropriation of trade secrets claim under the DTSA and CUTSA are

23    "substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir.

24    2020).  To state a claim under either statute, a plaintiff must prove "(1) that the plaintiff possessed

25    a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that the

26    misappropriation caused or threatened damage to the plaintiff."  *Id.* at 657–58.  To succeed on a

27    claim for trade secret misappropriation under both the DTSA and CUTSA, Tesla must prove, the

28

existence of a trade secret.  To be a "trade secret," (1) "the owner" of information must have "taken reasonable measures to keep such information secret," and (2) "the information [must] derive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  *Id.* at 657, 660; 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

In its Motion, Tesla purports to "focus[] on four specific trade secrets as justifying the need for a temporary restraining order."  Mot. at 9.  To the extent Tesla purports to explain its positions on these four alleged trade secrets, all these arguments were available to Tesla before Matthews filed it Demand, and none pass muster.  Matthews respectfully submits that should the Court entertain a full *Winter* analysis, it should order production of that testimony and evidence that                   .  At a high level:                                          and is "solely unique to Tesla" because it has                                                                        Motion at 14.  But this configuration is disclosed in *Matthews*' patent, stemming from the '333 patent application that                             ; *see* Miller Decl. Ex. 12 [C317] at ¶ [0028].                          This patent application described and claimed (before Matthews ever met Tesla)                             Matthews has since been granted the U.S. patent, which, itself, is public proof enough that Tesla's tale is exaggerated.

Tesla further argues that the tool is "extraordinarily complex," identifying the existence of a handful of what it claims to be                                     Mot. at 9–10.  Tesla makes no attempt to explain what is                                                         ,

1    nor does it attempt to explain why the combination makes the _____ a trade secret.[2]

2

3

4    _____ As discussed above, the genesis of the parties' dispute was Tesla's

5    accusation that Matthews was misappropriating Tesla's trade secrets by selling a "clone" of the

6    _____ to third parties, and

7

8

9

10   _____ it cannot establish a likelihood of success.

11   _____ Doctor blades are essentially squeegees that are fixed in place to scrape

12   unwanted material off of the rolls.

13

14

15   Mot. at 10, 15.

16   as Matthews' engineer

17   testified,

18

19   Miller Decl. Ex. 14 at ¶¶ 176–184.

20

21

22

23

24   As Matthews'

25   engineer _____ testified,

26   _____

27   [2] Though Tesla adjusts some of the wording, these technologies were included in the

28

1    Miller Decl. Ex. 15 at ¶¶ 46, 58, 74, 77, 85,

2    116–122.  And Matthews' engineer Thomas Hackfort sketched a system showing edge trim and

3    vacuum systems to create the strips of electrode material on the roll in connection with an "all-in-

4    one" machine 2017.  Miller Decl. Ex. 16 [C222].  Tesla offers nothing more than vague references

5

6

7

8    Mot. at 12.  Notably

9    absent from Tesla's Motion is the fact that *Matthews* owns a torque fence patent

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    To constitute a trade secret, information has to have *independent* economic value that exists

26    ───────────────

27    [3] Matthews, not Tesla, created the design for the image included in Tesla's Motion papers (Mot. at

28    12; Eggleston Decl. ¶ 25).  Miller Decl. Ex. 17 at ¶¶ 49–57.

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

*because* of that information's confidentiality.  Tesla asserts only that █████████████████ ████████████████████████████ are "similarly valuable" to the "enormous commercial value of Tesla's Asserted ███████ Technology" that "promises to be transformational."  Mot. at 16.  But just because something is a component of a "valuable" machine does not mean that component has independent economic value.  *See Chung v. Intellectsoft Grp. Corp.*, No. 21-cv-03074-JST, 2024 WL 813445, at *8–9 (N.D. Cal. Feb. 12, 2024) ("But Plaintiffs' evidence does not concern the cost of developing an alleged trade secret *itself*; rather, it shows the cost of developing something that was intended to *use* the trade secret . . . what Plaintiffs may have paid to develop software using their alleged trade secrets tells the Court nothing about the cost to develop the secrets themselves and is therefore irrelevant to the ultimate question of what independent economic value, if any, the alleged trade secrets derive from not being generally known." (emphasis in original)); *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1053–54 (N.D. Cal. 2020) ("The above allegations only generally related to plaintiff's [system] . . . While [the] subject matter may serve as constituent parts falling under the umbrella of plaintiff's [system], that relationship does not compel a reasonable inference that any information about such particular subject matter is itself economically valuable."); *Genfit S.A. v. Cymabay Therapeutics Inc.*, No. 21-cv-00395-MMC, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022) (dismissing claims where plaintiff "failed to adequately allege how any individual component part standing on its own, has any independent economic value different from the value that [GENFIT] attaches to its [Protocol] as a whole." (cleaned up)).  Moreover, according to Dr. Eggleston, ████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████ ████████████████

### 4.    Tesla's requested injunction would be unenforceable for lack of specificity.

Tesla's proposed order fails to specify its trade secrets with enough particularity for the Court to even craft the requested relief.  Rule 65 requires that an injunction "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d).  That language ensures

1   "those against whom an injunction is issued should receive fair and precisely drawn notice of what

2   the injunction actually prohibits." *Granny Goose*, 415 U.S. at 444; *Schmidt v. Lessard*, 414 U.S.

3   473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements.

4   The Rule was designed to prevent uncertainty and confusion on the part of those faced with

5   injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague

6   to be understood.").

7       Broadly enjoining all sales and other activity "comprising Tesla's valuable trade secrets

8   relating to dry battery electrode ("DBE") and/or Tesla's ▭ DBE tool" is hopelessly vague

9   and does not provide fair and precisely drawn notice of what is prohibited. *See* B. Babe Decl. ¶¶ 5–

10  6. Courts have refused injunctions on similarly broad grounds. *See Carl Zeiss Meditec, Inc. v.*

11  *Topcon Med. Sys., Inc.*, No. 2021-1839, 2022 WL 1530491, at *1–2 (Fed. Cir. May 16, 2022)

12  (vacating injunction prohibiting use of "confidential, proprietary, or trade secret information" for

13  lack of "reasonable detail"); *uSens, Inc. v. Shi*, No. 18-cv-01959-SVK, 2018 WL 11436323 at *2

14  (N.D. Cal. Oct. 18, 2011) (request to enjoin "disclosing, copying, or using Plaintiff's confidential

15  information" as set forth in a "Consulting Agreement" failed to meet Rule 65's specificity

16  requirement); *see also Action Learning Sys., Inc. v. Crowe*, No. 14-cv-5112-GW, 2014 WL

17  12564011, at *4 (C.D. Cal. Aug. 11, 2024) ("[T]he Court does not see how it could possibly issue

18  an order consistent with Rule 65(d)(1) without knowing what exactly the plaintiff owns."); *CanWe*

19  *Studios LLC v. Sinclair*, No. 13-cv-6299-PSG, 2013 WL 12120437, at *3 (C.D. Cal. Nov. 20, 2013)

20  (denying injunctive relief where it was "not clear where the boundary of Plaintiff's trade secret

21  ends"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc*., 923 F. Supp. 1231, 1252

22  (N.D. Cal. 1995) (denying injunction because court was "not satisfied [that plaintiffs identified]

23  trade secrets with sufficient definiteness to support injunctive relief").

24              *       *       *

25      "Because [Tesla] has failed to show a likelihood of success on the merits, the Court need

26  not address the remaining factors." *World Financial Grp.*, 2024 WL 730356, at *11 (cleaned up).

27  However, even if the Court considers the other *Winter* factors, Tesla's claims still fail.

28

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD

**C.   Tesla has not made a showing of irreparable harm.**

The Court also must deny Tesla's request because Tesla failed to demonstrate the existence of irreparable harm.  "A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction.'"  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "[T]he element of irreparable harm is particularly important."  *3M Co. v. Ugly Juice, LLC*, No. 5:21-CV-02338-EJD, 2021 WL 1947579, at *3 (N.D. Cal. May 14, 2021) (Davila, J.).  "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  "The analysis focuses on irreparability, 'irrespective of the magnitude of the injury.'"  *Azar*, 911 F.3d at 581.  "[E]conomic injury alone does not constitute irreparable harm."  *Neo4j, Inc. v. PureThink, LLC*, No. 5:18-CV-07182-EJD, 2023 WL 7093805, at *15 (N.D. Cal. Oct. 25, 2023) (Davila, J.).

The movant's delay is a factor bearing on the existence of irreparable injury.  *See, e.g.*, *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Tesla's conduct and unreasonable delay confirms that it will not suffer irreparable harm if the Court does not grant it the interim relief it seeks.

Tesla contends that if Matthews "grant[s] teams outside Tesla unrestricted access to Tesla's ▨ tool, those teams will gain an unfair advantage against Tesla in the marketplace for lithium-ion electrodes and batteries," Mot. 6, such that "Tesla would stand to lose pricing freedom, relationships with both suppliers and customers, and customer goodwill, all without any hope of meaningful recovery," *id.* at 18.  Tesla's contention of harm fails for several reasons.

**1.   Tesla's claim of irreparable harm is contrary to adjudicated fact.**

Tesla's claim of irreparable harm is based on a false premise, not evidence.  "[A] party seeking injunctive relief must adduce *evidence* of likely irreparable harm and may not rely on 'unsupported and conclusory statements regarding harm [the plaintiff] *might* suffer.'"  *Pom Wonderful LLC v. Pur Beverages LLC*, No. CV 13-06917 MMM (CWx), 2015 WL 10433693, at *5

(C.D. Cal. Aug. 6, 2015) (quoting *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)).  Tesla claims it faces irreparable harm "if Matthews pursues its threatened disclosures," Mot. 18, which Tesla mischaracterizes as granting others "unrestricted access to Tesla's ▉▉▉ tool," *id.* at 6.  Matthews never threatened any such thing.  Rather, Tesla's claim of harm is premised on its disproven assertion that Matthews' DBE products "are not Matthews' at all. They are Tesla's."  *Id.*

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Accordingly, Matthews announced in its press release that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  ECF 57-26 at 2 (emphases added). Matthews made no mention of the ▉▉▉▉▉ or any intention to disclose Tesla proprietary information.  *See id.*  Tesla's contention that Matthews' DBE products must be "copies of Tesla's prized ▉▉▉▉▉ tool," Mot. at 6, is unfounded speculation based on Tesla's discredited position that Matthews has no independent DBE technology.  *See* II.B.2, *supra*.

### 2.    Tesla's purported harms are speculative.

Tesla also failed to show its purported harm is imminent and not merely speculative.  Tesla "must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).  On one hand, Tesla claims that it will "lose pricing freedom, relationships with both suppliers and customers, and customer goodwill" if others have access to its ▉▉▉▉▉ tool, Mot. at 18, while on the other hand, Tesla asserts that others already have had unrestricted access to "a Tesla

1  tool of its own," *id.* at 4, since 2022.  ECF 17-6, Ex. 7 at 5.  Tesla fails to demonstrate how its

2  purported harms are imminent now, yet have not materialized over the past two years.

3       **3.  Tesla's unreasonable delay demonstrates a lack of irreparable harm.**

4       Tesla's delay undercuts its claim of imminent, irreparable injury.  *Oakland Tribune, Inc. v.*

5  *Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Tesla has been claiming Matthews

6  disclosed its alleged trade secrets for well over a year, and cannot now, after such delay, seek

7  injunctive relief.

8       Tesla admitted that it learned in June 2023 that Matthews had sold DBE machines that,

9  according to Tesla, "unambiguously" incorporated Tesla's confidential DBE technology,

10  specifically alleging that Matthews sold "a pilot '_____'  machine . . . _____

11  _____  in 2022.  ECF 17-6, Ex. 7 at 5.  As this Court has already recognized, this is the same

12  incident that gave rise to Tesla's allegations of breach in August 2023 and November 2023. ECF 50

13  at 4.  At neither of these points did Tesla ever seek injunctive relief.

14       Tesla has known about the conduct it now complains of for nearly two years.  Indeed, over

15  six months have passed since _____

16  _____  ECF 37-4, Ex. D.  Courts have found shorter delays fail to support claims

17  of imminent, irreparable harm.  *E.g.*, *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d

18  877, 898–99 (N.D. Cal. 2019) (one year); *High Tech Med. Instrument., Inc. v. New Image Indus.,*

19  *Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (17 months); *First Franklin Fin. Corp. v. Franklin First*

20  *Fin., Ltd.*, 356 F. Supp. 2d 1048, 1054–55 (N.D. Cal. 2005) (three months); *Playboy Enters., Inc. v.*

21  *Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (five months).

22       Matthews' recent press release should come as no surprise to Tesla and does not excuse

23  Tesla's delay.  Matthews has consistently maintained throughout its dispute with Tesla that it

24  intended to continue selling DBE machines to other customers.  _____

25  _____

26       **D.  The balance of equities favors Matthews, not Tesla.**

27       The balance of equities favors Matthews, not Tesla.  If Tesla could wait nearly two years to

28

seek preliminary relief on its claims, and forego the opportunity to assert a counterclaim when it

had the chance,

Also, as argued throughout this brief, Tesla's conduct has been extremely inequitable in this action.

Such draconian relief cannot be

justified here. *See, e.g.*, *Micrel, Inc. v. Advanced Monolithic Sys., Inc.*, No. C 94-20644 RMW,

1995 WL 138569, at \*6 (N.D. Cal. Mar. 20, 1995) ("[P]laintiff essentially asks the court to prohibit

Alpha from doing *any business at all* with any customer or potential customer with whom it

qualified using allegedly rebranded products.  Such a prohibition would go far beyond the

'preservation of the status quo' that is 'the primary purpose of a preliminary injunction.'"); *Degree*

*Mech., Inc. v. J.C. Welding, LLC*, No. 5:19-CV-05133-EJD, 2019 WL 4082689, at \*3 (N.D. Cal.

Aug. 29, 2019) (Davila, J.) (denying TRO in trade secret case in part because "[e]njoining

Defendants from pursuing any such business would impose an overly harsh sanction on

Defendants"); *see also Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007)

("Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad

preliminary injunction is an abuse of discretion.").

The sworn statement of Brandon Babe, the President of the Matthews Engineering Business

Unit, identifies the very real harm Matthews will suffer if the interim relief is granted.  B. Babe

Decl. ¶¶ 5–23.  For example,

As the Ninth Circuit has held, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

**E.    Enjoining Matthews would not be consistent with the public interest.**

Matthews' legal rights have now been adjudicated:

ECF 57-25.  The public has an interest in the DBE solutions that Matthews can provide, and it is in the public interest to keep this technology available. By contrast, prohibiting Matthews from selling equipment to Tesla competitors would stifle competition. *See, e.g.*, *Kelton v. Stravinski*, 138 Cal. App. 4th 941, 946 (2006) ("California has a settled public policy in favor of open competition.").  And allowing Tesla to circumvent its would run afoul of "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

**F.    Tesla's Motion ignores the security requirement in the Federal Rules.**

Under the Federal Rules, the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Tesla's Motion entirely ignores this requirement.

It is true that the parties' Even assuming this one-sided provision is enforceable under these circumstances, it is Tesla's position that its

1   claims in this Court, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, do not arise from or relate to that agreement.

2   *See, e.g.*, ECF 32-4. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4   ▓▓▓▓▓▓▓▓▓▓▓▓. *See, e.g.*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782

5   (9th Cir. 2001) ("Judicial estoppel . . . precludes a party from gaining an advantage by asserting

6   one position, and then later seeking an advantage by taking a clearly inconsistent position.").

7   Matthews anticipates that if Matthews were enjoined from selling and marketing its DBE solutions

8   for a month, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ B. Babe

9   Decl. ¶ 22.  Matthews therefore believes that a bond in that amount is necessary to protect Matthews

10  against any erroneous losses stemming from entry of the TRO.  Tesla has not offered any proposed

11  bond amount for the Court to weigh against this proposal.

12  **III. MATTHEWS REQUESTS FEES AND COSTS ASSOCIATED WITH THIS MOTION.**

13          For the reasons above, Tesla's Motion is frivolous and abusive.  The reason Tesla filed here

14  is transparent:  Tesla wants to harm Matthews by once again making false statements about it in a

15  public forum while hiding behind the fig leaf of its assertion (that this Court has already discredited)

16  that its trade secret claims are irrelevant to the parties' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ECF 50 at

17  12–13.  This Court has "the inherent power . . . to levy sanctions in response to abusive litigation

18  practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Tesla's request for a TRO

19  in this forum is sanctionable, and Matthews asks the Court to award Matthews its fees and costs

20  associated with defending itself against it.  *See Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1579

21  (2005) (abuse of process can be satisfied by improper use of a TRO); *Estrada v. Gipson*, No. 1:13-

22  CV-00919 LJO DLB, 2014 WL 585444, at *2 (E.D. Cal. Feb. 14, 2014) (repeated, meritless motions

23  for injunctive relief are sanctionable), *report and recommendation adopted,* No. 1:13-CV-00919

24  LJO DLB, 2014 WL 1270550 (E.D. Cal. Mar. 26, 2014); *Walker v. Mohadjer*, No. 2:13-CV-1193

25  WBS AC, 2014 WL 130793, at *4 (E.D. Cal. Jan. 14, 2014) (same).

26

27

28

1    Dated: February 10, 2025                                  JONES DAY

2

3                                                              By: *David C. Kiernan*
                                                                   David C. Kiernan
4                                                                  dkiernan@jonesday.com
                                                                   JONES DAY
5                                                                  555 California Street, 26th Floor
                                                                   San Francisco, CA  94104
6                                                                  Telephone: (415) 875-5745
                                                                   Facsimile: (415) 875-5700
7
                                                                   Ryan K. Walsh (*pro hac vice*)
8                                                                  rkwalsh@jonesday.com
                                                                   JONES DAY
9                                                                  1221 Peachtree Street, N.E.
                                                                   Atlanta, GA  30361
10                                                                 Telephone: (404) 521-3939
                                                                   Facsimile: (404) 581-8330
11
                                                                   Stuart W. Yothers (*pro hac vice*)
12                                                                 syothers@jonesday.com
                                                                   JONES DAY
13                                                                 250 Vesey Street
                                                                   New York, NY  10281
14                                                                 Telephone: (212) 326-3939
                                                                   Facsimile: (212) 755-7306
15
                                                                   *Attorneys for Defendant Matthews*
16                                                                 *International Corporation*

17

18

19

20

21

22

23

24

25

26

27

28

Matthews' Opposition to
Tesla's Motion for a TRO
24-cv-03615-EJD