David M. Barkan (CA 160825 / barkan@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Robert Courtney (CA 248392 / courtney@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

A. Louis Dorny (CA 212054 / ldorny@tesla.com)
Terry Ahearn (CA 216543 / tahearn@tesla.com)
TESLA, INC.
1501 Page Mill Road
Palo Alto, CA 94304
Tel: (510) 298-8516

Paul Margulies (*pro hac vice* / pmargulies@tesla.com)
TESLA, INC.
800 Connecticut Ave. NW
Washington, DC 20006
Tel: (202) 695-5388

Attorneys for Plaintiff TESLA, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEWS INTERNATIONAL CORPORATION, a Pennsylvania corporation,<br><br>Defendant. | Case No. 5:24-cv-03615-EJD-VKD<br><br>**TESLA'S PETITION TO CONFIRM PERMANENT INJUNCTION ENTERED IN ARBITRATION**<br><br>Date:    April 2, 2026<br>Time:    9:00 a.m.<br>Place:   Courtroom 4 (5th Floor)<br>Before:  Hon. Edward J. Davila |

■ **REDACTED DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

I.      NOTICE OF TESLA'S PETITION ................................................................. 1

II.     STATEMENT OF REQUESTED RELIEF ................................................... 1

III.    POINTS AND AUTHORITIES SUPPORTING TESLA'S PETITION .......... 1

        A.      Statement of the Issue to be Decided ................................................ 1

        B.      Jurisdiction and Venue ...................................................................... 1

        C.      Introduction ....................................................................................... 1

        D.      Statement of Facts ............................................................................. 2

                1.      Background ............................................................................. 2

                2.      The Court's Arbitration Order and the Arbitrator's
                        Determination That Matthews Is Entitled to Arbitration ........ 3

                3.      The Arbitrator's Permanent Injunction Order, Based on a
                        Binding Determination That ███████████████
                        █████████████████████████ ............................. 3

        E.      Argument ........................................................................................... 5

                1.      Legal Standards ..................................................................... 5

                2.      Judicial Confirmation of the Arbitrator's Permanent
                        Injunction Is Warranted ........................................................ 5

IV.     CONCLUSION ........................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Arrowhead Global Solutions, Inc. v. Datapath, Inc.*,
    166 F. App'x 39 (4th Cir. 2006) ...................................................................................... 7, 8

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
    264 F. Supp. 2d 926 (N.D. Cal. 2003) ................................................................................. 5

*Pac. Reinsurance Mgmt. Co. v. Ohio Reinsurance Corp.*,
    935 F.2d 1019 (9th Cir. 1991)................................................................................. 5, 6, 7, 8

*Southern Seas Navigation Ltd. v. Petroleos Mexicanos*,
    606 F. Supp. 692 (S.D.N.Y. 1985)....................................................................................... 6

**Statutes**

Federal Arbitration Act ............................................................................................. *passim*

TESLA PET TO CONFIRM PERMANENT INJUNCTION
Case No. 5:24-cv-03615-EJD-VKD

### TABLE OF EXHIBITS

| No. | Document | Alternative Citations |
|-----|----------|----------------------|
| 1 | Order Granting Permanent Injunction (Feb. 13, 2026) (CONFIDENTIAL) | – |
| 2 | Interim Award of Feb. 13, 2026 (CONFIDENTIAL) | – |
| 3 | ██████████████████ ████████████████ ██████████████ (CONFIDENTIAL) | D.I. 15-5 Ex. 4 |
| 4 | Notice of Arbitrator Appointment (Feb. 12, 2025) (CONFIDENTIAL) | – |
| 5 | Arbitrator messages of Feb. 16 & 18, 2026 (CONFIDENTIAL) | – |

Exhibits are attached to the Declaration of Robert Courtney filed herewith.

1

**I.    NOTICE OF TESLA'S PETITION**

2

PLEASE TAKE NOTICE that at 9:00 a.m. on April 2, 2026, the Court will hear argument

3 on this Petition in Courtroom 4 (5th Floor) of the United States District Court for the Northern

4 District of California, 280 South 1st Street, San Jose, California.

5

**II.    STATEMENT OF REQUESTED RELIEF**

6

Tesla petitions for an order confirming the arbitration order titled Order Granting Permanent

7 Injunction, *Tesla, Inc. v. Matthews International Corp.*, No. 5100002574 (JAMS Feb. 13, 2026)

8 (Ex. 1).

9

**III.    POINTS AND AUTHORITIES SUPPORTING TESLA'S PETITION**

10

**A.    Statement of the Issue to be Decided**

11

Whether confirmation of a final, permanent injunction entered in arbitration is warranted

12 under Section 9 of the Federal Arbitration Act ("FAA").  9 U.S.C. § 9.  Per the FAA, a district court

13 "must" grant a duly submitted confirmation request unless it concludes that the arbitration

14 determination at issue should be modified, vacated, or corrected.  *Id.*

15

**B.    Jurisdiction and Venue**

16

The Court's subject matter jurisdiction and personal jurisdiction over Matthews, and the

17 appropriateness of venue in this District, are described in Tesla's Original Complaint ¶¶ 4–9 (filed

18 June 14, 2024), D.I. 1.  Those descriptions are incorporated by reference herein.

19

**C.    Introduction**

20

In October 2024, the Court referred Tesla's claims against Matthews into arbitration, and

21 ever since the parties have been working toward resolution.  Last week, that arbitration passed a

22 major—████████████████—milestone.  The Arbitrator ████████████████

23 ████████████████████████████████████████

24 ███████  The Arbitrator entered an Interim Award ████████████████

25 ███████ and, crucially, entered a ***permanent injunction*** ████████████

26 ███████

27

28

1      The arbitration is not over. ████████ remain to be determined, as well as other supplemental

2  issues. ███████████████████████████████, and the Arbitrator has

3  instructed that the injunction is both permanent and final.

4      In typical litigation, a permanent injunction is automatically backed by the judicial power of

5  the court that enters it.  Where a permanent injunction arises from arbitration, it becomes enforceable

6  through judicial confirmation.  The Federal Arbitration Act specifically authorizes district courts to

7  confirm arbitration orders, and Tesla now petitions the Court for confirmation.

8      Once confirmed, the arbitrator's Permanent Injunction will ████████████████

9  ██████████████████████  Without confirmation, ████

10  █████████████████████████  The

11  Permanent Injunction Order ██████████████████

12  █████████████████████████████████

13  ████████████  Tesla respectfully requests that the Court confirm the

14  Permanent Injunction Order so as to ███████████████

15  ████████████████

16      **D.**    **Statement of Facts**

17          **1.**    **Background**

18      The identification of the parties and the essentials of their dispute are in Tesla's Original

19  Complaint (filed June 14, 2024), D.I. 1.  Briefly, Tesla is the world's innovation and manufacturing

20  leader for sustainable energy production, storage, and automotive technologies.  This case concerns

21  unauthorized theft by Matthews, a supplier of Tesla's proprietary technology.

22      This case relates to Matthews' misappropriation of Tesla's proprietary technology in the area

23  of dry-electrode battery manufacturing.[1]  In 2019, Tesla selected Matthews to be one of its suppliers

24  that Tesla used to refine DBE manufacturing and to put it into mass-production.  Matthews agreed,

25  in writing, that it would hold those secrets in the highest confidence, and on that basis Tesla trusted

26  Matthews with highly confidential designs of industrial machinery necessary to Tesla's proprietary

27

28

---

[1] In the field, this technology is called "DBE," for "dry battery electrode."

manufacturing process.  However, Matthews betrayed that trust.  To protect itself and to obtain all appropriate legal and equitable relief, Tesla filed this case in mid-2024.

> **2.    The Court's Arbitration Order and the Arbitrator's Determination That Matthews Is Entitled to Arbitration**

Tesla and Matthews are parties to an agreement titled ████████████ ██████████████████████████████████████████████████ Ex. 3. ██ █████ include an arbitration provision.  *Id.* § 15.6.  In October 2024, on a motion from Matthews, the Court referred the parties to arbitration for a determination of whether Tesla's claims fall within that provision.  Arbitration Order (Oct. 7, 2024), D.I. 50.

Roderick Thompson, Esq. was appointed as arbitrator.  Ex. 4.  In March 2025, the arbitrator determined that Tesla's claims are subject to ███████ arbitration provision.  Ex. 3 at 2–3.  The arbitrator ordered that ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████

> **3.    The Arbitrator's Permanent Injunction Order, Based on a Binding Determination That** ████████████████████████████ ███████████████

On February 13, 2026, the arbitrator issued his Interim Award, which determined that ██████████████████████████████████████ Critical to this Petition, the arbitrator also entered a Permanent Injunction ██████████████████████. Ex. 1.

The Interim Award and the Permanent Injunction Order are detailed.  Because this Petition seeks confirmation solely as to the Injunction (which is final and ready for confirmation), the following briefly summarizes the determinations necessary to that order.

████████ ████ █ ███████████████████ ███████████████ ██████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████ █ ████████████████████████████████



***Each of the statements above reflects final determinations by the arbitrator, binding on the parties.*** They are now settled for arbitration purposes. The arbitrator's injunction ███ ███ is "permanent," and the arbitrator has confirmed that it is "final." Ex. 5. The arbitration will advance to other phases, with the mid-arbitration injunction remaining in effect.

So as to confirm the protection established by the Permanent Injunction Order, Tesla duly requests that the Court confirm it, as provided for in Section 9 of the Federal Arbitration Act. 9 U.S.C. § 9.

**E.    Argument**

    **1.    Legal Standards**

FAA Section 9's provision for confirmation of arbitration awards is mandatory: if a district court does not modify, vacate, or correct an award, then that court "must" grant a duly submitted confirmation request. 9 U.S.C. § 9. A petition to confirm an arbitration award must be presented "within one year." *Id.*

In the Ninth Circuit, district courts' FAA authority to confirm arbitration awards includes authority to confirm mid-arbitration injunctions entered to protect the beneficiary while the arbitration is underway. *Pac. Reinsurance Mgmt. Co. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991) [*PRMC*]. Such "equitable relief may be essential to preserving assets or enforcing performance, and [thus] such relief needs to be judicially enforceable at the time it is granted in order to be meaningful." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 936 (N.D. Cal. 2003). Judicial confirmation of mid-arbitration injunctions is necessary because "[a]rbitrators have no power to enforce their decisions. Only courts have that power." *PRMC*, 935 F.2d at 1023. In such cases, a mid-arbitration injunction may be treated as "final" and judicially confirmed like a final arbitration award. *Id.*

FAA Section 6 requires that a petition for confirmation "be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6.

    **2.    Judicial Confirmation of the
Arbitrator's Permanent Injunction Is Warranted**

Confirmation is warranted because there is no cause for either judicial modification, vacatur, or correction of the Permanent Injunction Order. The Permanent Injunction Order is final and was duly entered by an appropriate arbitrator, as provided for in ████████████████████. *See* Ex. 1 (Permanent Injunction Order); Ex. 3 § 15.6 ██████). This Petition satisfies the administrative and timeliness requirements of FAA Sections 9 and 13, and copies of ██████████████████ █████ and the arbitrator appointment are attached. Though styled as a "Petition" as per FAA guidance, the present submission satisfies the requirements of Federal Rule of Civil Procedure 7 and Local Civil Rule 7 concerning motion practice, and in Tesla's view, handling under typical motion

1  practice rules is appropriate. *E.g.*, 9 U.S.C. § 6 (requiring petitions to be presented "in the manner

2  provided by law for the making and hearing of motions"). None of the grounds for vacatur in FAA

3  Section 10 are applicable. For those reasons, Tesla believes that confirmation under FAA Section

4  9 is warranted. Tesla thus requests a judicial order to that extent.

5      The Permanent Injunction is ripe for confirmation, regardless of whether it is premised on

6  an "Interim Award," or additional phases of the arbitration remain ongoing. The Ninth Circuit has

7  specifically addressed this scenario and explained that confirmation is not merely appropriate but

8  required. In *PRMC*, an arbitration panel issued an Interim Final Order ("IFO") instructing the

9  respondent Ohio Reinsurance to establish an escrow account sufficient to cover PRMC's demand.

10 935 F.2d at 1021–22. On a mid-arbitration petition, the district court confirmed the IFO, and the

11 Ninth Circuit affirmed. *PRMC* explains that mid-arbitration equitable orders are suitable for judicial

12 confirmation where, as here, necessary to protect the claimant's ability to obtain meaningful relief:

13      Temporary equitable relief in arbitration may be essential to
        preserve assets or enforce performance which, if not preserved or
14      enforced, may render a final award meaningless. However, if
        temporary equitable relief is to have any meaning, the relief must be
15      enforceable at the time it is granted, not after an arbitrator's final
        decision on the merits. *See Southern Seas Navigation Ltd. v.
16      Petroleos Mexicanos*, 606 F. Supp. 692, 694 (S.D.N.Y. 1985).
        Arbitrators have no power to enforce their decisions. Only courts
17      have that power. . . .

18      . . . Given the potential importance of temporary equitable rewards in
        making the arbitration proceedings meaningful, court enforcement of
19      them, when appropriate, is not an "undue intrusion upon the arbitral
        process," *Southern Seas*, 606 F. Supp. at 694, but essential to preserve
20      the integrity of that process. Therefore, we hold that temporary
        equitable orders calculated to preserve assets or performance needed
21      to make a potential final award meaningful, such as the IFO in this
        case, are final orders that can be reviewed for confirmation and
22      enforcement by district courts under the FAA.

23 935 F.2d at 1022–23.

24      This case fully aligns with *PRMC*. The arbitrator entered a binding determination of

25 ████████████████████████████████████████████████████████████████████

26 ███████████████████, the arbitrator entered a Permanent Injunction ████████████████

27 ████████████████████████████████████████████████████████████████████

28 ██████████████████████████████ The arbitrator properly recognized that without an

1   injunction to ██████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   ████████████. The Permanent Injunction Order is ████████████████████████,

4   and for that reason is on all fours with *PRMC*.

5          Tesla sees no meaningful points of distinction between *PRMC* and this case at all.  That the

6   *PRMC* IFO was for an escrow account does not make the arbitrator's Permanent Injunction Order

7   here non-confirmable.   *PRMC* explains that mid-arbitration injunctions are properly confirmed

8   where they are calculated either to "preserve assets" (as in *PRMC*) or to preserve "performance," as

9   here.   The Permanent Injunction Order requires ████████████████████████████████

10  ████████████████████████.  But (as *PRMC* explains) that requirement is not self-implementing.

11  Only a court has the power to enforce ██████████████████, and for that reason the FAA authorizes

12  the Court to confirm the arbitrator's final Permanent Injunction Order.  *See* 935 F.2d at 1023.

13         The Ninth Circuit characterized the *PRMC* IFO as a "temporary" equitable order, and that

14  nomenclature favors confirmation here even  more strongly.  In this case, unlike *PRMC*, ██████████

15  ████████████████████████████████████  In such a case, the Permanent Injunction Order

16  is even more like a "final" award than the IFO in *PRMC*.

17         The *PRMC* approach has been applied specifically to mid-arbitration injunctions against

18  continued  trade  secret  misappropriation  in  a  multi-phase  arbitration  proceeding.   The  Fourth

19  Circuit's opinion in *Arrowhead Global Solutions, Inc. v. Datapath, Inc.,* 166 F. App'x 39 (4th Cir.

20  2006), describes such a situation, collects authority, and explains why judicial confirmation mid-

21  arbitration is necessary.  *Arrowhead* involved, like this case, an arbitration in which an initial phase

22  resolved a major dispute, but additional phases for further issues would follow.  166 F. App'x at 42

23  (describing "Phase I" for equitable relief, followed by "Phase II" for liability and damages).  Like

24  this case, the claims in *Arrowhead* related to trade secrets.  *Id.* at 44.  After Phase I, the *Arrowhead*

25  arbitration panel entered a preliminary injunction.  *Id.*  The district court confirmed the injunction

26  mid-arbitration, and the Fourth Circuit affirmed.  *Id.* at 44–45.

27         *Arrowhead* reviews authority from multiple circuits, including *PRMC*.  *Arrowhead*

28  explains that the rule in each circuit to have considered the issue is that "district courts must have

the power to confirm and enforce [mid-arbitration] equitable relief as 'final' in order for the equitable relief to have teeth." *Id.* at 44. And, ███████████████, *Arrowhead* explains that but for judicial confirmation of the mid-arbitration injunction, the claimant "would have been powerless to prevent [its adversary] from misusing [the claimant's] proprietary information." *Id.* ███████████. *Arrowhead*, like *PRMC*, further establishes that judicial confirmation is necessary for mid-arbitration injunctions of this type to be effective.

## IV.    CONCLUSION

Because *PRMC* and *Arrowhead* confirm that mid-arbitration injunctions like this one are ripe for judicial confirmation, and because the other requirements for judicial confirmation set forth in FAA Section 9 have all been satisfied, Tesla respectfully requests that the Court judicially confirm the arbitrator's Permanent Injunction Order. A proposed order is attached.[2]

Dated:  February 20, 2026                         FISH & RICHARDSON P.C.


                                                  By:  */s/ Robert Courtney*
                                                       Robert Courtney

                                                  Attorney for Plaintiff,
                                                  TESLA, INC.

---

[2] The proposed order substantially reproduces the operative text from the Permanent Injunction Order. Tesla has waived its right to confidential treatment of that text and believes Matthews has no right to confidential treatment. Matthews has not, however, formally confirmed as much. From an abundance of caution, this submission temporarily seals both the Permanent Injunction Order and text in the proposed order pending Matthews' response and the Court's ruling.