JONES DAY
David C. Kiernan (215335)
dkiernan@jonesday.com
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

JONES DAY
Ryan K. Walsh (*pro hac vice*)
rkwalsh@jonesday.com
1430 Peachtree Road, N.E., Suite 800
Atlanta, Georgia 30309
Telephone:    +1.404.581.8487
Facsimile:    +1.404.581.8330

JONES DAY
Stuart W. Yothers (*pro hac vice*)
syothers@jonesday.com
Jacob Miller (*pro hac vice*)
jakemiller@jonesday.com
250 Vesey Street
New York, New York 10281
Telephone:    +1.212.326.3893
Facsimile:    +1.212.755.7306

Attorneys for Defendant
MATTHEWS INTERNATIONAL CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>        **Plaintiff,**<br><br>    v.<br><br>**MATTHEWS INTERNATIONAL CORPORATION,**<br><br>        **Defendant.** | **Case No. 5:24-cv-03615-EJD-VKD**<br><br>**MATTHEWS' OPPOSITION TO PETITION TO CONFIRM PERMANENT INJUNCTION ENTERED IN ARBITRATION AND CROSS-MOTION TO PARTIALLY VACATE PERMANENT INJUNCTION ENTERED IN ARBITRATION**<br><br>Date:    April 2, 2026<br>Time:    9:00 a.m.<br>Courtroom:   4<br>Judge:  Hon. Edward J. Davila |

**PUBLIC VERSION / REDACTED**

**NOTICE OF CROSS-MOTION AND CROSS-MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2026, at 9:00 a.m. in Courtroom 4 of the above-referenced Court, located at 280 South 1st Street, San Jose, California, Defendant Matthews International Corporation will and hereby does cross-move this Court for an order, pursuant to 9 U.S.C. § 10(a)(4), vacating Paragraphs 2 and 3 of the Arbitrator's Order Granting Permanent Injunction.  The Cross-Motion is made on the ground that Paragraphs 2 and 3 of the Arbitrator's Order Granting Permanent Injunction are impermissibly indefinite and exceed the scope of matters submitted to arbitration.

This Cross-Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed declaration of Ryan K. Walsh, all papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

Dated: March 6, 2026                     JONES DAY


                                         By: *s/ Ryan K. Walsh*
                                             Ryan K. Walsh

                                         Attorneys for Defendant
                                         MATTHEWS INTERNATIONAL
                                         CORPORATION

Opp'n to Pet. to Confirm and Cross-Mot. to
Partially Vacate 5:24-cv-03615-EJD-VKD

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 1

    A.   The Parties and Their Business Relationship. ................................................... 1

         ██████████████████████ ................................................. 2

         ███████████████████████ ............................................... 2

    D.   Tesla's Filing of the District Court Action and Compelled Arbitration. ........ 4

         ██████████████████████ ............................................... 4

    F.   The Interim Award's Permanent Injunction. ................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    THE COURT SHOULD DENY TESLA'S PETITION TO CONFIRM. ........................... 6

    A.   Confirmation of the Interim Award is Premature. ........................................... 6

    B.   Tesla's Reliance on Preliminary Injunction Precedent is Misplaced. ............ 9

    C.   At Minimum, Confirmation Must be Limited to the Torque Fence Injunction. ........... 10

II.   THE COURT SHOULD VACATE PARAGRAPHS TWO AND THREE OF THE PERMANENT INJUNCTION. ................................................................................. 12

    A.   Paragraphs 2 and 3 Fail Rule 65(d)'s Definiteness Requirement. ................. 12

    B.   The Arbitrator Exceeded His Powers. ........................................................... 15

         1.   Paragraph 2 Exceeds the Scope of Matters Submitted to Arbitration. .................. 16

         2.   Paragraph 3 Exceeds the Scope of Matters Submitted to Arbitration. .................. 17

III.  THE FORM OF TESLA'S PROPOSED ORDER IS IMPROPER. ................................. 18

CONCLUSION .................................................................................................................. 18

## TABLE OF AUTHORITIES

*1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise Inc.*,
 2010 WL 325332 (E.D. Wis. Jan. 21, 2010) ................................................................. 13

*Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*,
 478 F.2d 248 (9th Cir. 1973) ......................................................................................... 9

*Aguilera v. Pirelli Armstrong Tire Corp.*,
 223 F.3d 1010 (9th Cir. 2000) ...................................................................................... 11

*Applied Med. Distribution Corp. v. Jarrells*,
 100 Cal. App. 5th 556 (2024) ....................................................................................... 11

*Arrowhead Glob. Sols., Inc. v. Datapath, Inc.*,
 166 F. App'x 39 (4th Cir. 2006) ................................................................................... 10

*Art Movers, Inc. v. Ni West, Inc.*,
 3 Cal.App.4th 640 (1992) ............................................................................................. 11

*Berland v. Conclave, LLC*,
 2021 WL 461727 (S.D. Cal. Feb. 9, 2021) ............................................................... 6, 9

*Bosack v. Soward*,
 586 F.3d 1096 (9th Cir. 2009) ....................................................................................... 8

*City of New York v. Mickalis Pawn Shop, LLC*,
 645 F.3d 114 (2d Cir. 2011) ......................................................................................... 14

*City of S. Pasadena v. Dep't of Transportation*,
 29 Cal.App.4th 1280 (1994) ......................................................................................... 11

*Columbia Pictures Indus., Inc. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013) ...................................................................................... 14

*Comedy Club, Inc. v. Improv W. Assocs.*,
 553 F.3d 1277 (9th Cir. 2009) ...................................................................................... 12

*Concord Music Grp., Inc. v. Anthropic PBC*,
 772 F. Supp. 3d 1131 (N.D. Cal. 2025) ....................................................................... 14

*Diapulse Corp. of Am. v. Carba, Ltd.*,
 626 F.2d 1108 (2d Cir. 1980) ................................................................................. 12, 13

*Emerald Bay Cmty. Assn. v. Golden Eagle Ins. Corp.*,
 130 Cal. App. 4th 1078 (2005) ..................................................................................... 11

*In re Pac. Gas & Elec. Co.*,
 2008 WL 2004275 (N.D. Cal. May 5, 2008) ................................................................. 9

*Int'l Bhd. of Teamsters Loc. 959 v. Horizon Lines of Alaska, LLC*,
 22 F. Supp. 3d 1005 (D. Alaska 2014) ........................................................................... 7

*Louis W. Epstein Fam. P'ship v. Kmart Corp.*,
 13 F.3d 762 (3d Cir. 1994) ........................................................................................... 13

*Markel Am. Ins. Co. v. Internet Brands, Inc.*,
  2017 WL 10433914 (C.D. Cal. Nov. 6, 2017)...............................................................................8

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*,
  686 F.2d 731 (9th Cir. 1982)........................................................................................................12

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
  44 F.3d 826 (9th Cir. 1995)..........................................................................................................15

*Millmen Local 550, etc. v. Wells Exterior Trim*,
  828 F.2d 1373 (9th Cir. 1987).................................................................................................6, 8

*Nat'l Dairy Ass'n v. W. Conf. of Teamsters Pension Tr. Fund*,
  2017 WL 6310623 (W.D. Wash. Dec. 11, 2017)........................................................................9

*Pac Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
  935 F.2d 1019 (9th Cir. 1991)..................................................................................................8, 9

*Squarepoint Ops LLC v. Sesum*,
  2020 WL 996760 (S.D.N.Y. Mar. 2, 2020) ...............................................................................13

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
  2024 WL 2113865 (N.D. Cal. May 9, 2024) .............................................................................12

*uSens, Inc. v. Shi*,
  2018 WL 11436323 (N.D. Cal. Oct. 11, 2018)......................................................................13, 14

*Wachovia Secs., LLC v. Wiegand*,
  2007 WL 9776732 (S.D. Cal. Apr. 16, 2007)............................................................................15

Statutes

9 U.S.C. § 10.................................................................................................................... 12, 13, 15

9 U.S.C. § 11............................................................................................................................... 18

9 U.S.C. § 13............................................................................................................................... 12

## INTRODUCTION

Tesla's petition asks this Court to do something unprecedented:  judicially confirm and enforce a "permanent injunction" issued in an "Interim Award" in an arbitration that remains ongoing.  The Arbitrator expressly labeled his ruling an "Interim Award"

Tesla's petition is, at best, premature; at worst, it represents an improper attempt to circumvent the arbitral process the parties agreed to and this Court ordered.

Even setting aside the fundamental prematurity of Tesla's petition, two of the three substantive paragraphs of the permanent injunction—Paragraphs 2 and 3—fail to satisfy the basic legal requirements for judicial confirmation.  They are impermissibly indefinite, requiring Matthews and the Court to consult external documents and parse ambiguous contractual terms to determine what conduct is prohibited.  They exceed the Arbitrator's authority by imposing categorical prohibitions that bear no relationship to the narrow, specific findings the Arbitrator actually made.  And they would require this Court to assume ongoing supervisory jurisdiction over disputed interpretive questions that properly belong to the arbitral forum.  For each of these independent reasons, Tesla's petition should be denied.

## FACTUAL BACKGROUND

### A.   The Parties and Their Business Relationship.

Matthews International Corporation is a global industrial company with decades of expertise in designing and manufacturing calendering systems,[1] including dry battery electrode

---

[1] "Calendering" in battery manufacturing is a critical production step used to compress and densify electrode sheets by passing them through heavy, rotating rollers.  It is essential for achieving the necessary thickness, density, and electrical conductivity in lithium-ion battery cells.

("DBE") equipment. ████████████ Matthews developed substantial know-how in dry powder electrode processing through its work in this field long before any relationship with Tesla. ████

Beginning in 2010, Maxwell Technologies, Inc.—a company that engineered energy storage solutions and was later acquired by Tesla—sought Matthews' assistance in scaling up its dry powder electrode process for mass production of supercapacitors. ████ After Tesla's acquisition of Maxwell closed on May 16, 2019, Tesla and Matthews negotiated ████ ████ to govern Matthews' manufacture and sale of DBE equipment to Tesla. *Id.* at 6; Ex. 3 to Courtney Decl. ISO Tesla Pet. to Confirm (Dkt. 109-08) (" ████ ").

Following extensive discussions, Tesla sent Matthews a formal notice in November 2023, alleging that Matthews had sold equipment containing Tesla IP and Developed Material to multiple third parties in violation of ████ After it became clear to Matthews that the parties were unable to resolve their dispute, ████

Opp'n to Pet. to Confirm and Cross-Mot. to
Partially Vacate 5:24-cv-03615-EJD-VKD



In June 2025, Matthews asked this Court to judicially confirm ▮▮▮▮ Award. Tesla cross-moved for vacatur. *Id.* at 13 n.6.  The Court granted Matthews' motion and denied

Tesla's in October 2025.  *Matthews Int'l Corp. et al. v. Tesla, Inc.*, No. 5:25-cv-03325-EJD (Oct. 30, 2025), Dkt. 69.  Tesla appealed to the Ninth Circuit.  *Id.*, Dkt. 77.

**D.    Tesla's Filing of the District Court Action and Compelled Arbitration.**

On June 14, 2024 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tesla filed a complaint in the Northern District of California ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, alleging that Matthews misappropriated Tesla's proprietary DBE manufacturing technology, breached its NDAs, and engaged in unfair competition.  *See* Dkt. 1.  This Court denied Tesla's requested TRO.  Dkt. 77.

In granting Matthews' motion to compel arbitration in October 2024, this Court found that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tesla filed its claims in this Court based on the same conduct it raised in its demand letters and the same conduct subject to the ongoing ▓▓▓▓▓ proceedings." Dkt. 50 at 5-6.  The Court noted that "Tesla repeatedly asserted over the course of nearly five months, and currently asserts in the pending ▓▓▓▓▓, that the very same conduct alleged here—the sale of DBE equipment with Tesla's trade secrets and the filing of a patent with Tesla's trade secrets—violates the terms of the GTC." *Id.* at 12.  The Court also noted that "Tesla fail[ed] to inform the Court of this ongoing ▓▓▓▓ proceeding or the GTC's arbitration clause in its Complaint." *Id.*

Opp'n to Pet. to Confirm and Cross-Mot. to Partially Vacate 5:24-cv-03615-EJD-VKD

**F.    The Interim Award's Permanent Injunction.**

On February 13, 2026, as part of the "Interim Award," the Arbitrator issued a permanent injunction against Matthews.  Ex. 1 to Courtney Decl. ISO Tesla Pet. to Confirm (Dkt. 110-03) ("Injunction Order").  The permanent injunction contains three substantive paragraphs of vastly different scope and precision.

**Paragraph 1** orders Matthews to cease using, selling, or disclosing DBE equipment containing: (1) the exact configuration of the Torque Fence Assembly linkage component (as shown in CAD V-007149) used in the Tesla MRC4E; (2) the exact configuration of the Bearing

Opp'n to Pet. to Confirm and Cross-Mot. to
Partially Vacate 5:24-cv-03615-EJD-VKD

Block and Gap Control Assemblies (as shown in CAD V-006218 and V-008091) used in the Tesla MRC4E; and (3) Tesla's source code in the "2500_Tesla" folder. *Id.* at 1.

**Paragraphs 2 and 3**, however, sweep far beyond those findings. Paragraph 2 enjoins Matthews "from publishing in any patent application or otherwise disclosing in violation of the GTCs information that Tesla had marked as 'Confidential and Proprietary' (or words to that effect) before disclosing said information to Matthews. *Id.* at 2. Paragraph 3 enjoins Matthews from "using or disclosing without Tesla's prior written consent information that falls within the GTC's definition of Developed Material and/or Tesla Background IP, as defined and interpreted in the Corrected Final Award, issued by Judge Gandhi (Ret.) dated April 11, 2025, and/or the Interim Award (Phase One – Liability), issued by the undersigned dated February 13, 2026." *Id.*

## ARGUMENT

Tesla now seeks judicial confirmation of the permanent injunction based on the Arbitrator's interim findings, . Tesla's petition should be denied.

## I.   THE COURT SHOULD DENY TESLA'S PETITION TO CONFIRM.

### A.   Confirmation of the Interim Award is Premature.

It is black-letter law that "for an arbitration award to be subject to judicial review, it must be final and binding as to all of the issues presented to the arbitrator." *Berland v. Conclave, LLC*, 2021 WL 461727, at *5 (S.D. Cal. Feb. 9, 2021). Tesla does not—and cannot—seek confirmation of a final award. "To be considered 'final,' an arbitration award must be intended by the arbitrator to be [a] complete determination of every issue submitted." *Millmen Local 550, etc. v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (internal quotation omitted).

Opp'n to Pet. to Confirm and Cross-Mot. to Partially Vacate 5:24-cv-03615-EJD-VKD

Indeed, "interim" and "Final Awards" are defined terms under the JAMS Streamlined Arbitration Rules and Procedures that govern the parties' arbitration. *See* Walsh Decl. Ex. B. Rule 19, "Awards," sets out a process for the finalization of arbitration awards. The Rules empower the Arbitrator to "make other decisions, including interim or partial rulings, orders and Awards" "[i]n addition to a Final Award or Partial Final Award." *Id.*, Rule 19(c). But the Rules provide that a Final Award issues only *after* "the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued." *Id.*, Rule 17(h), Rule 19(a). A correction period of two weeks or more then follows, where either party may "request that the Arbitrator correct any computational, typographical or other similar error in an Award." *Id.*, Rule 19(i). Only after the "Final Award or Partial Final Award" is issued, and the correction period has run, do the Rules provide that "[t]he Award is considered final, for purposes of judicial proceeding to enforce, modify, or vacate the Award" pursuant to the FAA. *Id.*, Rule 19(j), Rule 20.

*Int'l Bhd. of Teamsters Loc. 959 v. Horizon Lines of Alaska, LLC*, 22 F. Supp. 3d 1005, 1007-08 (D. Alaska 2014) ("Where an arbitrator specifically retains jurisdiction to resolve disputes regarding damages, that indicates that the arbitrator did not intend the award to be Final.").

Declining review of the interim award here accords with the principle that federal courts "refuse[] to review awards that decide[] only part of the substantive issues submitted to arbitration." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991); *see also Millmen*, 828 F.2d at 1376-77 (arbitrators' decision determining liability, but not remedy was not final and not confirmable).

Consider *Markel Am. Ins. Co. v. Internet Brands, Inc.*, 2017 WL 10433914, at *2 (C.D. Cal. Nov. 6, 2017), where an arbitrator ruled that one party was entitled to an award for breach of contract, voided the underlying transaction, and reserved additional remedies for later determination. The district court refused confirmation. First, the award was an interim award under the JAMS rules. *Id.* at *5. Second, the Arbitrator himself stated the award was interim, reserving additional substantive determinations for later. *Id.* at *6. Bifurcation of proceedings did not render an award on one phase final where the arbitrator did not understand the award to be final. *Id.* at *5-6; *see also Bosack v. Soward*, 586 F.3d 1096, 1103 (9th Cir. 2009) (several of the arbitration panel's awards not final because the arbitration panel explicitly stated that they were not final). The same analysis compels the same result here.

Tesla attempts to manufacture finality where none exists

This argument fundamentally misapprehends the governing legal standard and should be rejected. The finality inquiry requires examination of the arbitrator's formal, considered intent as expressed in the award itself—not isolated words plucked from informal correspondence. Tesla's position would lead to absurd results. Under Tesla's logic, any time an arbitrator described an injunction as "permanent" or "final" in casual correspondence—even while expressly reserving damages, counterclaims, and prevailing party determinations—courts would be obligated to confirm the award. This would render

, no reasonable reading

can support a finding of finality— ███████████████████████████ ██████████████.

Accordingly, the award below is not final. *Berland*, 2021 WL 461727, at *8 ("[T]he Interim Award was not intended to be final, and therefore is not eligible for confirmation[.]"); *Nat'l Dairy Ass'n v. W. Conf. of Teamsters Pension Tr. Fund*, 2017 WL 6310623, at *2 (W.D. Wash. Dec. 11, 2017) (declining to entertain motion to vacate award issued at end of first phase of three-phase arbitration). Judicial intervention at this interim stage "would contravene the fundamental federal policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings." *In re Pac. Gas & Elec. Co.*, 2008 WL 2004275, at *3 (N.D. Cal. May 5, 2008).

**B.   Tesla's Reliance on Preliminary Injunction Precedent is Misplaced.**

Tesla invokes precedent upholding confirmation of certain preliminary injunctions. That authority does not support confirmation here.

In light of federal policy favoring arbitration when agreed to by the parties, judicial review of non-final arbitration awards "should be indulged, if at all, only in the most extreme cases." *Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). In the Ninth Circuit decision on which Tesla principally relies, *Pacific Reinsurance Management Corp.*, the court confirmed an interim order requiring an escrow to preserve funds and thereby safeguard the meaningfulness of any ultimate award. 935 F.2d at 1022. The Ninth Circuit agreed to confirm that interim award because it "does not attempt to address, even partially, the substantive issues before the arbitrators." *Id.* The Ninth Circuit's holding is limited to "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful." *Id.* at 1023. It says nothing about permanent injunctions on the merits, before damages and counterclaims have been resolved.

The same is true of Tesla's unpublished Fourth Circuit case, which holds that "arbitration panels must have the power to issue temporary equitable relief *in the nature of a preliminary injunction*, and district courts must have the power to confirm and enforce that equitable relief as

- 9 -

'final' in order for the equitable relief to have teeth." *Arrowhead Glob. Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 44 (4th Cir. 2006) (emphasis added).

Tesla argues that the reasoning of *Pacific Reinsurance* applies even more strongly to permanent injunctions than preliminary injunctions. Tesla has it backwards. The premise of *Pacific Reinsurance* is that courts may treat temporary, preservative measures as final so that time-sensitive relief has teeth while arbitration continues. The corollary is clear: the more an order resembles ultimate merits relief, the greater the risk of undue judicial intrusion and fragmentation of the arbitration that *Pacific Reinsurance* seeks to avoid.

The permanent injunction here is the antithesis of temporary, preservative relief.

Confirmation now would invite parallel interpretive proceedings in court and in the arbitration— precisely the piecemeal supervision *Pacific Reinsurance* sought to prevent.

Tesla has identified no authority suggesting that courts have broad license over mid-arbitration confirmation of ultimate equitable remedies. That approach would encourage piecemeal confirmation petitions, divide supervision of injunctive terms between court and arbitrator while the case remains live, and risk inconsistent rulings as the Arbitrator continues to refine definitions and adjudicate related issues. The cases on which Tesla relies avoid those pitfalls by confining confirmation to temporary, preservation-oriented measures whose efficacy depends on immediate enforceability and that do not require ongoing judicial management of the merits. Tesla's invitation to create a new exception to mid-arbitration judicial review should be denied.

**C.   At Minimum, Confirmation Must be Limited to the Torque Fence Injunction.**

Even if the Court were inclined to confirm any portion of the permanent injunction despite its interim status, confirmation cannot extend to

Opp'n to Pet. to Confirm and Cross-Mot. to
Partially Vacate 5:24-cv-03615-EJD-VKD

"'A permanent injunction is merely a remedy for a proven cause of action.  It may not be issued if the underlying cause of action is not established.'"  *City of S. Pasadena v. Dep't of Transportation*, 29 Cal. App. 4th 1280, 1293 (1994).  Put otherwise, "[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action ... against a defendant and that equitable relief is appropriate."  *Art Movers, Inc. v. Ni West, Inc.*, 3 Cal. App. 4th 640, 646 (1992).

*See Applied Med. Distribution Corp. v. Jarrells*, 100 Cal. App. 5th 556, 570 (2024).

"[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage."  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *see also Emerald Bay Cmty. Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1088 (2005) ("[T]o support an action at law for breach of contract, the plaintiff must show it has suffered damage.").

## II.   THE COURT SHOULD VACATE PARAGRAPHS TWO AND THREE OF THE PERMANENT INJUNCTION.

If the Court addresses the merits of Tesla's petition to confirm, it should partially vacate the Permanent Injunction pursuant to 9 U.S.C. § 10(a)(4), which authorizes vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Paragraphs 2 and 3 of the Permanent Injunction suffer from two fatal defects: they are impermissibly indefinite and exceed the scope of matters submitted to arbitration.

Matthews did not have the opportunity to correct these issues with the Arbitrator in the first instance because neither party asked for them in their proposed order, and Tesla filed for confirmation immediately after the Arbitrator issued the injunction order. If the Court does not deny Tesla's petition—which would provide the parties with the opportunity to resolve these issues before the Arbitrator—then the Court should itself vacate the offending provisions.[2]

### A.   Paragraphs 2 and 3 Fail Rule 65(d)'s Definiteness Requirement.

A judgment entered upon an arbitration award has the same force and effect as if it had been entered in an action in the court itself. 9 U.S.C. § 13. Accordingly, an arbitration award granting injunctive relief must comply with Federal Rule of Civil Procedure 65(d). *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980); *see Twitch Interactive, Inc. v. Fishwoodco GmbH*, 2024 WL 2113865, at *3-4 (N.D. Cal. May 9, 2024) (this Court applying case law regarding Rule 65's actual notice requirement to arbitrator-issued injunction); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287-88 (9th Cir. 2009) (vacating injunction that failed to comply with Rule 65(d)).

The question whether an arbitrator's injunction complies with Rule 65(d)(1) is reviewed

---

[2] Partial vacatur is an appropriate remedy here, for the reasons noted below. Alternatively, rather than partially vacating the Injunction, the Court can remand the Injunction back to the Arbitrator for clarification. *See*, *e.g.*, *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734, n.1 (9th Cir. 1982).

Opp'n to Pet. to Confirm and Cross-Mot. to Partially Vacate 5:24-cv-03615-EJD-VKD

de novo. *1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise Inc.*, 2010 WL 325332, at *1 (E.D. Wis. Jan. 21, 2010). Rule 65(d)(1)(C) requires that an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C); *see, e.g.*, *uSens, Inc. v. Shi*, 2018 WL 11436323, at *2 (N.D. Cal. Oct. 11, 2018) (injunction referring to separate "Consulting Agreement" lacked specificity Rule 65(d) requires).

Paragraph 3 violates this rule on its face. It enjoins Matthews from using or disclosing "information that falls within the GTCs' definition of Developed Material and/or Tesla Background IP, *as defined and interpreted in the Corrected Final Award … and/or the Interim Award*[.]" Injunction Order at 2 (emphasis added). This provision requires Matthews to consult external documents—two lengthy arbitration awards and the GTCs themselves—to determine what conduct is prohibited. Cross-referencing unattached exhibits to explain material terms "is insufficient as a matter of form to satisfy the requirements of Rule 65(d)(1)(C)[.]" *Squarepoint Ops LLC v. Sesum*, 2020 WL 996760, at *5 (S.D.N.Y. Mar. 2, 2020). Matthews cannot "ascertain from the four corners of the Award what specifically [it] must do to satisfy the terms of the injunction." *Id.* Because Paragraph 3 requires reference to external documents to determine its scope, it is not "definite" as required by 9 U.S.C. § 10(a)(4). *Diapulse*, 626 F.2d at 1111.

Paragraph 2 is equally deficient. It enjoins Matthews from "publishing in any patent application or otherwise disclosing in violation of the GTCs information that Tesla had marked as 'Confidential and Proprietary' (or words to that effect) before disclosing said information to Matthews." Injunction Order at 2. This provision fails Rule 65(d) in multiple respects.

First, it prohibits disclosure "in violation of the GTCs" without specifying what constitutes such a violation. An injunction that simply references "violation of the GTCs" without identifying prohibited conduct fails Rule 65(d)'s requirement that the enjoined party ascertain from the injunction itself what is prohibited. *See, e.g.*, *Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) ("Broad, non-specific language that merely enjoins

- 13 -

a party to obey the law or comply with an agreement … does not give the restrained party fair notice of what conduct will risk contempt."); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013) (permanent injunction ordering defendant to remove "Infringement-Related Terms" too vague to provide proper notice to the defendant).

Second, the phrase "or words to that effect" is too indefinite.  Matthews cannot reasonably determine what markings or designations qualify as equivalent to "Confidential and Proprietary."

Much of the technology at issue involves "building blocks" that Matthews developed before its relationship with Tesla.  Paragraph 2 provides no guidance for distinguishing between Matthews' own background intellectual property—which it is free to use and disclose—and information that Tesla marked as confidential but which may overlap with or be identical to Matthews' pre-existing knowledge.  *See also, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation.").

For instance, in *uSens, Inc. v. Shi*, 2018 WL 11436323, at *2 (N.D. Cal. Oct. 11, 2018), the court refused to issue an injunction that would have enjoined disclosure of "Plaintiff's confidential information (defined as set forth in Provision 2 of the Consulting Agreement executed by the parties on July 22, 2013)" because it lacked the specificity Rule 65(d) requires. The injunction here is far more problematic—it prohibits disclosure of undefined "Confidential and Proprietary" information "in violation of" complex contractual provisions . *See also, e.g.*, *Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1136-37 (N.D. Cal. 2025) (rejecting request for preliminary injunction that would restrain defendant "from using copies of lyrics (or portions of lyrics) to compositions owned or controlled by Publishers for future training of [defendant's] AI models" because it would apply "to an unknowable universe of songs").

Because Paragraphs 2 and 3 fail to describe the prohibited conduct with reasonable

- 14 -

detail—instead relying on undefined references to external documents, vague contractual terms, and ambiguous marking language—they violate Rule 65(d)(1)(C) and cannot satisfy the definiteness requirement of 9 U.S.C. § 10, warranting vacatur.

### B. The Arbitrator Exceeded His Powers.

Paragraphs 2 and 3 should be vacated for a second, independent reason:  the Arbitrator "exceeded [his] powers" in issuing them.  9 U.S.C. § 10(a)(4).  "When arbitrators rule on a matter not submitted to them, … the award may be overturned because the arbitrators exceeded the scope of their authority."  *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995); *see also Wachovia Secs., LLC v. Wiegand*, 2007 WL 9776732, at *12 (S.D. Cal. Apr. 16, 2007) ("[T]he Court finds the Wiegand panel exceeded its powers by deciding issues not submitted for its resolution.  When a panel so exceeds the scope of its authority, the Court has grounds to vacate the award.").

Paragraph 1 reflects ▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  It enjoins limited, specific conduct involving identified CAD drawings and source code folders.  Injunction Order at 2.



This is why Matthews does not seek to vacate Paragraph 1 ▉▉▉▉▉▉▉▉▉▉.

Paragraphs 2 and 3 have no such grounding.

**1.   Paragraph 2 Exceeds the Scope of Matters Submitted to Arbitration.**

Paragraph 2 of the permanent injunction enjoins Matthews from disclosing all information Tesla has ever marked as confidential, without limitation . This sweeping language would capture information that was previously known to Matthews or that constitutes Matthews' own independently developed technology— . Specifically, Paragraph 2 orders Matthews to "cease and refrain from publishing in any patent application or otherwise disclosing in violation of the GTCs information that Tesla had marked as 'Confidential and Proprietary' (or words to that effect) before disclosing said information to Matthews."

This sweeping injunction grossly exceeds the matters actually submitted to and decided by the Arbitrator.

Yet Paragraph 2 categorically enjoins Matthews from publishing in "any patent application" or "otherwise disclosing" any information that Tesla marked as "Confidential and Proprietary."

**2.    Paragraph 3 Exceeds the Scope of Matters Submitted to Arbitration.**

Paragraph 3 sweeps even more broadly, potentially covering all "Developed Material" and "Tesla Background IP" as defined in prior awards, rather than limiting relief to the few specific configurations and designs that the Arbitrator ██████████. It enjoins Matthews from using or disclosing any "information that falls within the GTCs' definition of Developed Material and/or Tesla Background IP, as defined and interpreted in the Corrected Final Award, issued by Judge Gandhi (Ret.) dated April 11, 2025, and/or the Interim Award (Phase One – Liability), issued by the undersigned dated February 13, 2026."  Injunction Order at 2. Yet Paragraph 3 creates a forward-looking prohibition on all future uses of anything that might fall within the definitional categories, without identifying with specificity what is covered.

Yet Paragraph 3 suffers from the same defect.  It impermissibly shifts the burden to Matthews to divine what falls within the ambiguous category of "Developed Material" as "defined and interpreted" in two lengthy arbitration awards—



## III. THE FORM OF TESLA'S PROPOSED ORDER IS IMPROPER.

Tesla asks this Court to issue a proposed order that "substantially reproduces the operative text from the Permanent Injunction Order." Dkt. 109-3 at 8; *see also* Dkt. 109-11 (Proposed Order) ("…of the form and content substantially reflecting the injunction entered by the Arbitrator."). In other words, Tesla wishes to make certain edits to the Arbitrator's order. And while Tesla's proposed edits are admittedly minor, Tesla did not move the Court for an order correcting or modifying the award under 9 U.S.C. § 11(a), identify its changes, or cite the applicable legal standards. That Tesla is asking this Court in the first instance to correct typographical errors in an arbitral order—having skipped the two-week correction period under the JAMS Rules—is a further sign that Tesla's Petition is premature.

**CONCLUSION**

For these reasons, the Court should either deny the petition as premature and/or vacate Paragraphs 2 and 3 of the Arbitrator's Permanent Injunction Award.

Dated: March 6, 2026                                    JONES DAY


By: *s/ Ryan K. Walsh*
_____
Ryan K. Walsh

Attorneys for Defendant
MATTHEWS INTERNATIONAL
CORPORATION

Opp'n to Pet. to Confirm and Cross-Mot. to
Partially Vacate 5:24-cv-03615-EJD-VKD