David M. Barkan (CA 160825 / barkan@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Robert Courtney (CA 248392 / courtney@fr.com)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

A. Louis Dorny (CA 212054 / ldorny@tesla.com)
Terry Ahearn (CA 216543 / tahearn@tesla.com)
TESLA, INC.
1501 Page Mill Road
Palo Alto, CA 94304
Tel: (510) 298-8516

Paul Margulies (*pro hac vice* / pmargulies@tesla.com)
TESLA, INC.
800 Connecticut Ave. NW
Washington, DC 20006
Tel: (202) 695-5388

Attorneys for Plaintiff TESLA, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEWS INTERNATIONAL CORPORATION, a Pennsylvania corporation,<br><br>Defendant. | Case No. 5:24-cv-03615-EJD-VKD<br><br>**TESLA'S CONSOLIDATED REPLY/ CROSS-RESPONSE ADDRESSING CROSS-MOTIONS FOR JUDICIAL RELIEF CONCERNING THE ARBITRATOR'S PERMANENT INJUNCTION (DKTS. 111, 117)**<br><br>Date: April 29, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4 (5th Floor)<br>Before: Hon. Edward J. Davila |

**REDACTED DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

I.     THE ARBITRATOR'S "PERMANENT INJUNCTION" IS FINAL
       AND READY FOR JUDICIAL CONFIRMATION ........................................................ 1

       A.     The Arbitrator's Permanent Injunction Is Based on a Full
              Liability Trial with Witnesses and Briefing and Was Entered to
              Prevent Irreparable Harm ........................................................................................ 1

       B.     Matthews Cannot Distinguish *PRMC*, *Arrowhead*, and Similar
              Cases ........................................................................................................................ 4

       C.     The Court Should Reject Matthews' Plea That the Court Refuse
              to Confirm >80% of the Arbitrator's Permanent Injunction Order ..................... 7

II.    NOTHING IN THE ARBITRATOR'S INJUNCTION WARRANTS
       VACATUR ......................................................................................................................... 11

       A.     Nothing About Rule 65's Definiteness Requirement Warrants
              Vacatur ................................................................................................................... 11

              1.     Any Application of Rule 65(d) to a Mid-Arbitration
                     Injunction Should Be Flexible and Deferential ....................................... 11

              2.     Even if the Court Applies Matthews' Proposal of Strictly
                     Applying the Rule With Zero Deference, There Is No
                     Rule 65(d) Defect ..................................................................................... 14

                     a)     Paragraph 3's References to the GTCs and
                            Arbitration Awards Are Lawful and Appropriate ...................... 15

                     b)     Paragraph 2's Order That Matthews Cease
                            Breaching Confidentiality Obligations Is Lawful
                            and Appropriate .......................................................................... 17

                     c)     There Is No Rule 65 Deficiency ................................................. 19

       B.     The Arbitrator's Permanent Injunction Is Well Within the
              Arbitrator's Authority, and the Court Should Confirm It ................................... 20

              1.     Paragraph 2 of the Injunction Is Well Within the
                     Arbitrator's Authority, and Matthews' Vacatur Plea Is
                     Unfounded and Speculative ..................................................................... 20

              2.     Paragraph 3 of the Injunction Is Well Within the
                     Arbitrator's Authority, and Matthews' Vacatur Plea Is
                     Unfounded and Speculative ..................................................................... 21

III.   MATTHEWS' COMPLAINT ABOUT THE FORM OF ORDER IS
       SPECIOUS .......................................................................................................................... 23

IV.    REMAND, THOUGH NOT NECESSARY, IS AVAILABLE .................................. 24

V.     CONCLUSION ................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800-Radiator of Wis., LLC v. 1-800-Radiator Franchise Inc.*,
No. 08-C-362, 2010 WL 325332 (E.D. Wis. Jan. 21, 2010)................................................ 13

*Ace/Cleardefense, Inc. v. Clear Defense, Inc.*,
47 F. App'x 582 (D.C. Cir. 2002) ............................................................................. 6

*Aerojet-General Corp. v. American Arbitration Association*,
478 F.2d 248 (9th Cir. 1973)..................................................................................... 6

*Arrowhead Global Solutions, Inc. v. Datapath, Inc.*,
166 F. App'x 39 (4th Cir. 2006) ......................................................................... 4, 6

*Aspic Eng'g & Constr. Co. v. ECC CENTCOM Constructors LLC*,
913 F.3d 1162 (9th Circ. 2019)................................................................................ 3

*Berland v. Conclave, LLC*,
No. 20-cv-922, 2021 WL 461727 (S.D. Cal. Feb. 9, 2021)....................................... 3

*Bosack v. Soward*,
586 F.3d 1096,1102 (9th Cir. 2009)....................................................................... 21

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009)................................................................................. 4

*California v. Campbell*,
138 F.3d 772 (9th Cir. 1998).................................................................................. 16

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)................................................................................... 19

*Coast Trading Co. v. Pac. Molasses Co.*,
681 F.2d 1195 (9th Cir. 1982)................................................................................ 21

*Columbia Pictures Industries, Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)................................................................................ 17

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009)........................................................................*passim*

*Concord Music Group, Inc. v. Anthropic PBC*,
772 F. Supp. 3d 1131 (N.D. Cal. 2025) ................................................................ 19

*Davis v. San Francisco*,
890 F.2d 1438 (9th Cir.1989)........................................................................................... 16, 17, 23

*Diapulse Corporation of America v. Carba, Ltd.*,
626 F.2d 1108 (2d Cir. 1980)................................................................................................ 13, 17

*FEC v. Furgatch*,
869 F.2d 1256 (9th Cir. 1989).................................................................................................... 15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...................................................................................................................... 12

*Flextronics Int'l, Ltd. v. Parametric Tech.., Corp.*,
No. C-13-0034-PSG, 2013 WL 5200175 (N.D. Cal. Sept. 16, 2013)...................................... 9

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004)............................................................................................ 14, 18

*Guaranty Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945).......................................................................................................................... 8

*Henry Hope X-Ray Prods., Inc. v. Marron Carrell, Inc.*,
674 F.2d 1336 (9th Cir. 1982)...................................................................................................... 16

*HR Staffing Consultants LLC v. Butts*,
627 F. App'x 168 (3d Cir. 2015).................................................................................................... 9

*Int'l Ass'n of Plumbing & Mech. Offs. v. Int'l Conf. of Bldg. Offs.*,
No. 95-55944, 1996 WL 117447 (9th Cir. Mar. 15, 1996)........................................................ 9

*International Brotherhood of Teamsters Local 959 v. Horizon
Lines of Alaska, LLC*,
22 F. Supp. 3d 1005 (D. Alaska 2014)........................................................................................ 3

*Island Creek Coal Sales Co. v. City of Gainesville*,
729 F.2d 1046 (6th Cir. 1984)...................................................................................................... 6

*Louis W. Epstein Fam. P'ship v. Kmart Corp.*,
13 F.3d 762 (3d Cir. 1994)............................................................................................................ 18

*Markel American Insurance Co. v. Internet Brands, Inc.*,
No. CV-17-2429, 2017 WL 10433914 (C.D. Cal. Nov. 6, 2017)............................................. 4

*Matthews Int'l Corp. v. Tesla, Inc.*,
No. 25-6918 (9th Cir. filed Oct. 31, 2025)................................................................................ 22

*Matthews Int'l Corp. v. Tesla, Inc.*,
No. 5:25-cv-3325-EJD, 2025 WL 3126825 (N.D. Cal. Oct. 1, 2025) .................................... 22

*McClatchey Newspapers v. Cent. Valley Typographical Union No. 46*,
    686 F.2d 731 (9th Cir. 1982)..............................................................................................24

*Melendres v. Skinner*,
    113 F.4th 1126 (9th Cir. 2024)........................................................................................ 15

*Millmen Local 550 v. Wells Exterior Trim*,
    828 F.2d 1373 (9th Cir. 1987)............................................................................................ 3

*National Dairy Association v. Western Conference of Teamsters*
    *Pension Trust Fund*,
    No. C17-0214, 2017 WL 6310623 (W.D. Wash. Dec. 11, 2017)........................................ 4

*New Meiji Market v. United Food & Comm'l Workers Local Union 905*,
    789 F.2d 1334 (9th Cir. 1986)......................................................................................... 11

*North Atlantic Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999)................................................................................................. 9

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*,
    946 F.2d 722 (9th Cir. 1991).............................................................................................. 5

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013)......................................................................................................... 12

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
    935 F.2d 1019 (9th Cir. 1991)....................................................................................*passim*

*In re Pacific Gas & Electric Co.*,
    No. CV-08-1211-CW, 2008 WL 2004275 (N.D. Cal. May 5, 2008) ................................... 4

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*,
    646 F.2d 800 (2d Cir. 1981)............................................................................................ 17

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006)........................................................................ 14, 15, 16, 18

*Ross-Whitney Corp. v. Smith Kline & French Labs.*,
    207 F.2d 190 (9th Cir. 1953)........................................................................................... 15

*S. Seas Navig'n Ltd. v. Petroleos Mexicanos*,
    606 F. Supp. 692 (S.D.N.Y. 1985)..................................................................................... 6

*Squarepoint Ops LLC v. Sesum*,
    No. 19 Civ. 7317, 2020 WL 996760 (S.D.N.Y. 2020) ................................................. 16, 17

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)................................................................................................. 9

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
No. 22-cv-3218-EJD, 2024 WL 2113865 (N.D. Cal. May 9, 2024)......................................... 13

*United States v. Christie Indus., Inc.*,
465 F.2d 1000 (3d Cir. 1971)................................................................................................. 15

*United States v. V-1 Oil Co.*,
63 F.3d 909 (9th Cir. 1995).................................................................................................... 15

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
363 U.S. 593 (1960)............................................................................................................... 12

*uSens, Inc. v. Shi*,
No. 18-cv-1959-SVK, 2018 WL 11436323 (N.D. Cal. Oct. 11, 2018) .................................. 19

*Yasuda Fire & Marine Ins. Co. v. Continental Cas. Co.*,
37 F.3d 345 (7th Cir. 1994).................................................................................................... 6

**Statutes**

9 U.S.C. § 9 ................................................................................................................................ 7, 24

9 U.S.C. § 11 .................................................................................................................................. 7, 8

Federal Arbitration Act .................................................................................................................. 3, 11

**Other Authorities**

Fed. R. Civ. P. 65 ........................................................................................... 11, 12, 13, 15, 19

**TABLE OF EXHIBITS**

| No. | Document | Docket Citations |
|---|---|---|
| 1 | Order Granting Permanent Injunction (Feb. 13, 2026) (CONFIDENTIAL) | Dkt. 110-3 |
| 2 | Interim Award of Feb. 13, 2026 (CONFIDENTIAL) | Dkt. 109-7 |
| 3 | Tesla General Terms & Conditions for Procurement of Production Equipment and Services (Sept. 17, 2019) (CONFIDENTIAL) | Dkt. 109-8; *see also* Dkt. 17-05 (Ex. 4) |
| 4 | Notice of Arbitrator Appointment (Feb. 12, 2025) (CONFIDENTIAL) | Dkt. 109-9 |
| 5 | Arbitrator messages of Feb. 16 & 18, 2026 (CONFIDENTIAL) | Dkt. 109-10 |
| A | Corrected Final Award, *Matthews International Corp. v. Tesla, Inc.*, No. 5100001732 (JAMS Apr. 11, 2025) (CONFIDENTIAL)I | Dkts. 117-2, 119-3 |
| B | Streamlined Arbitration Rules & Procedures (JAMS June 1, 2021) | Dkt. 117-3 |

After three years of what was to be "streamlined" arbitration proceedings, Matthews' campaign of concealing its misdeeds and delaying its day of reckoning finally ended.  After months of limited discovery, a full six-day trial, hundreds of pages of briefing, and hours of argument, Arbitrator Roderick Thompson issued a well-defined permanent injunction that finally put a stop to Matthews' ongoing theft and misuse of Tesla confidential technology and information.  The Arbitrator found that ███████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████ The Arbitrator further found that ████████████████████████████████████ █████████████████████ The Arbitrator further found that ███████████████████ ██████████████████████████████ The Arbitrator found that ████████████████████████████████████ and this injunction is the first step toward forcing Matthews to live up to its contractual promises.

Matthews' opposition is little more than yet another attempt to excuse its misdeeds, this time through complex procedural manipulation.  Matthews feigns inability to understand and apply the clear dictates of the injunction, but that does not excuse Matthews' continued theft of Tesla's proprietary technology and information.  Matthews asks this Court to digest and reconsider the Arbitrator's voluminous evidence and extensive reasoning in direct contravention of prevailing law, but that also does not excuse Matthews' continued theft of Tesla's proprietary technology and information.  The time has come to foreclose Matthews' repeated attempts to evade answering for its illegal acts.  The Permanent Injunction should be confirmed.

## I.    THE ARBITRATOR'S "PERMANENT INJUNCTION" IS FINAL AND READY FOR JUDICIAL CONFIRMATION

Matthews' principal basis for opposing confirmation attacks the Permanent Injunction's finality and ripeness.  The Court should reject that argument as contravening controlling authority.

### A.    The Arbitrator's Permanent Injunction Is Based on a Full Liability Trial with Witnesses and Briefing and Was Entered to Prevent Irreparable Harm

Matthews' "non-finality" defense is misdirected.  Matthews does not dispute, because it cannot, that this arbitration was expressly set up to focus on liability first, with a six-day in-person

trial and hundreds of documentary exhibits.  That phase ended on February 13, i.e., the date of the Arbitrator's Permanent Injunction.[1]  Matthews does not dispute, because it cannot, that the Arbitrator's injunction is expressly both "permanent" and "final."  Ex. 1 at 1; Ex. 5.  And most crucially, Matthews does not dispute, because it cannot, that the Arbitrator's injunction is an "equitable order[ ] calculated to preserve . . . [Matthews'] performance needed to make a potential final award meaningful."  *See Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991) [*PRMC*].  Per *PRMC*, such an order is sufficiently "final" to be "reviewed for confirmation and enforcement by district courts[.]"  *Id.*

Unable to credibly dispute the finality of the Permanent Injunction, Matthews spends much of its brief decrying the non-finality of *a different document*—the Interim Award that the Arbitrator also entered on the same day.  Opp. 6–10.  The time for judicial review of the full determinations in the 96-page Interim Award has not yet arrived.  Tesla's Petition seeks only confirmation of the two-page Permanent Injunction Order (i.e., Ex. 1), which the Arbitrator entered to protect against the ongoing and irreparable harm of Matthews' continued misconduct.  Pet. 3 (explaining that Tesla "seeks confirmation solely as to the Injunction").  Only those determinations are presented for confirmation.  And while, as discussed herein, judicial review may consider the Interim Award when reviewing the Permanent Injunction Order, Matthews' five-page recitative about the need for judicial caution when confronting "interim" awards is off-point.

---

[1] Matthews' contention of non-finality based on pending damages proceedings ignores the record.  As discussed in more detail *infra*, the arbitrator unambiguously determined that Tesla has been, and unless Matthews is enjoined, will continue to be, harmed by Matthews' misconduct. Ex. 2 at 92 ███████████████████████████████████ ████████████████████████████████████████ ██████.  The arbitrator also noted, correctly, ██████████████████████████ ████████████████████████████████████ ████████████████████████████████ "'  *Id.* (████████████████████████████████).

Nothing about the pendency of damages proceedings renders the Permanent Injunction non-final.

TESLA REPLY/CROSS-RESP RE
MOTIONS ON PERMANENT INJUNCTION
Case No. 5:24-cv-03615-EJD-VKD

The Permanent Injunction Order is final.  That some of its associated fact-finding is in a document titled "Interim Award" does not change the situation—as Matthews' own citations confirm.

The very first citation on which Matthews rests its "non-finality" contention is *Berland v. Conclave, LLC*, No. 20-cv-922, 2021 WL 461727 (S.D. Cal. Feb. 9, 2021).  Opp. 6.  But Matthews ignores *Berland*'s primary relevant holding: **Berland _confirmed_ a mid-arbitration injunction under the same authority (PRMC) raised in Tesla's Petition**:

> The Arbitrator's November 2020 Preliminary  Injunction is a "temporary equitable order[ ] calculated to preserve assets or performance needed to make a potential final award meaningful," and ***is therefore a "final order [ ] that can be reviewed for confirmation*** and enforcement by district courts under the [Federal Arbitration Act]."  *See PRMC*, 935 F.2d at 1023 . . . .
>
> . . . [W]ithout a showing of complete irrationality or manifest disregard of the law by the Arbitrator, ***the Court will not vacate the Arbitrator's conclusion that it is necessary to impose these obligations*** . . . in order to protect assets at issue in the arbitration, and that it is possible for them to comply with such obligations.  *See Aspic Eng'g & Constr. Co. v. ECC CENTCOM Constructors LLC*, 913 F.3d 1162, 1166 (9th Circ. 2019); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009).

*Berland*, 2021 WL 461727, at *7–*8 (emphasis and some alterations added); *see also id.* at *8 ("[T]he Court concludes the Arbitrator did not exceed her powers in issuing the Preliminary Injunction award, and thus must confirm it.").  Though discussing *Berland* twice (Opp. at 6, 9), Matthews' brief ignores that case's most relevant discussion.  That error is dispositive.  *Berland* confirms beyond doubt that Congress has tasked district courts to both review and enforce the mid-arbitration awards that arbitrators enter to protect against irreparable harm.  In this case, as in *Berland*, that means confirming the Arbitrator's order that Matthews be enjoined so as to preserve lawful "'performance needed to make a final award meaningful.'"  *Berland*, 2021 WL 461727, at *8 (quoting *PRMC*, 935 F.2d at 1023).

Matthews' discussion of other cases is misdirected for similar reasons: those cases do not involve mid-arbitration injunctions entered to protect one party from irreparable harms extending from the other party's conduct.  *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987), includes no injunction discussion at all, and in any event predates *PRMC*, 935 F.2d 1019, on which Tesla relies.  *International Brotherhood of Teamsters Local 959 v.*

*Horizon Lines of Alaska, LLC*, 22 F. Supp. 3d 1005 (D. Alaska 2014), also includes no injunction discussion and no *PRMC* discussion.  There is also no injunction discussion or *PRMC* discussion in *Markel American Insurance Co. v. Internet Brands, Inc.*, No. CV-17-2429, 2017 WL 10433914 (C.D. Cal. Nov. 6, 2017).  And there was no injunction in any of *Bosack v. Soward*, 586 F.3d 1096 (9th Cir. 2009); *National Dairy Association v. Western Conference of Teamsters Pension Trust Fund*, No. C17-0214, 2017 WL 6310623 (W.D. Wash. Dec. 11, 2017); or *In re Pacific Gas & Electric Co.*, No. CV-08-1211-CW, 2008 WL 2004275 (N.D. Cal. May 5, 2008).  None of those cases confront the situation at issue here; none are on-point.  As to *PRMC* and its line, Matthews grudgingly acknowledges them but cannot muster any relevant grounds of distinction.  None exist.

If doubt remains that the Arbitrator's Permanent Injunction is "final" for confirmation purposes, the Arbitrator's descriptions of the injunction as both "final" and "permanent," and his presentation of it as a separate document should erase that doubt.  *See* Ex. 1 at 1; Ex. 5.  Those indicia of finality accord with the record.  Matthews had the benefit of a six-day trial and lengthy pre- and post-hearing submissions, at the conclusion of which the Arbitrator found Matthews liable for a variety of misconduct.  The Arbitrator also expressly made the Injunction a stand-alone document distinct from the Interim Award, further confirming that the Arbitrator intended the injunction to be confirmed, and enforceable, at this stage of the proceeding.

**B.    Matthews Cannot Distinguish *PRMC*, *Arrowhead*, and Similar Cases**

Matthews' principal purported distinction between the on-point authorities—those endorsing district courts' authority to confirm mid-arbitration injunctions—and the present case is that mid-arbitration orders in past cases were labeled "temporary" (as in *PRMC*, 935 F.2d at 1022) or "preliminary" (as in *Arrowhead Global Solutions, Inc. v. Datapath, Inc.*, 166 F. App'x 39, 44 (4th Cir. 2006)), while the mid-arbitration injunction here is "permanent."  Opp. 9–10.  That distinction undermines Matthews' position.  If anything, Matthews had ***more*** opportunities to contest Tesla's demonstration of the need for injunctive relief than was available to the enjoined parties in *PRMC* and *Arrowhead*.  The Arbitrator's Permanent Injunction Order here was not based on a likelihood that Tesla would prove Matthews' misconduct, but rather on a six-day trial with witness testimony, extensive documents, pre- and post-hearing briefing, and ultimately, fact-

finding explaining how Tesla finally prevailed.  Nothing here suggests a basis for denying confirmation.

Matthews' proposal that confirmation should be withheld because the injunction here includes discussion of case merits (Opp. 9) is also misdirected, for reasons that are in *PRMC* itself. *See* 935 F.2d at 1022.  *PRMC* explains that, just like in judicial proceedings, "temporary equitable relief" plays an important role in arbitration: it is "essential to *preserve assets or enforce performance* which, if not preserved or enforced, may render a final award meaningless." *Id.* at 1022–23 (emphasis added).  In *PRMC*, the necessary preservation was for assets: the arbitrators ordered an escrow to protect PRMC against a situation in which adversaries emptied their own coffers to avoid an award.[2]  *Id.*  Here, the necessary preservation is *performance*, ordering Matthews to refrain from further disclosure and use of Tesla confidential technology.  On a request by Tesla, the Arbitrator entered that Injunction to protect against Matthews further disclosing Tesla's confidential information and flooding the market with unlawful sales—sales that could not be effectively clawed back.  After all, the underlying dispute here was over Tesla's contention (now proven) that Matthews has misappropriated Tesla's trade secret and other sensitive confidential information.  That the Arbitrator's injunctive reasoning relied in part on fact-finding regarding liability is not disqualifying.  To the contrary, that assessment is crucial.  It convinced the Arbitrator that Matthews' misconduct created a major risk of *irreparable harm to Tesla that could not be undone.*  The Arbitrator made express findings on that account, explaining how Matthews had incorporated Tesla trade secrets and confidential information into equipment it sold to others and made use and disclosures of that material in public filings.  The Arbitrator then also found that these acts (i.e., selling illegal equipment and disclosing confidential information) created a certainty of irreparable harm if Matthews were not enjoined (Ex. 2 at 92) and the

[2] *See also Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 n.2 (9th Cir. 1991) (explaining that in *PRMC*, both the mid-arbitration injunction and judicial confirmation were "necessary because if the interim ruling was not enforced, the assets could have been squandered and a final monetary award would have been meaningless").

TESLA REPLY/CROSS-RESP RE
MOTIONS ON PERMANENT INJUNCTION
Case No. 5:24-cv-03615-EJD-VKD

inadequacy of legal remedies (*id.* at 92–93).  As clear controlling authority from the Ninth Circuit, *PRMC* demonstrates Matthews' error and establishes this Court's authority to confirm the Arbitrator's Permanent Injunction Order here.

Every circuit court that has considered the issue has adopted *PRMC*-type reasoning.  In the Fourth Circuit, *Arrowhead* affirms confirmation of a mid-arbitration injunction against acts likely to breach a party's contract.  166 F. App'x at 42.  Like Matthews, Arrowhead opposed on finality grounds.  Rejecting that attack (and citing *PRMC*), the Fourth Circuit explained:

> [A]rbitration panels must have the power to issue temporary equitable relief in the nature of a preliminary injunction, and district courts must have the power to confirm and enforce that equitable relief as "final" in order for the equitable relief to have teeth.

*Id.* at 44.  Matthews musters no ground on which to distinguish *Arrowhead*'s clear logic.  Tesla sees none.  District courts' authority to confirm and enforce mid-arbitration injunctions is also established in (at least) the Sixth, Seventh, and D.C. Circuits.  *See Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984); *Yasuda Fire & Marine Ins. Co. v. Continental Cas. Co.*, 37 F.3d 345, 348 (7th Cir. 1994) (describing *PRMC* as "persuasive"); *Ace/Cleardefense, Inc. v. Clear Defense, Inc.*, 47 F. App'x 582, 582–83 (D.C. Cir. 2002) ("[I]mportant[ly], in this case, the interim award is a preliminary injunction, and confirmation of the injunction is necessary to make final relief meaningful.").

Finally, Matthews errs again by contending that *Aerojet-General Corp. v. American Arbitration Association*, 478 F.2d 248 (9th Cir. 1973), supports non-confirmation.  Opp. 9.  Matthews ignores that *Aerojet* **predates** *PRMC*, and so does not reflect current Ninth Circuit law.  *PRMC* explains how the admonition against reviewing non-final awards (in *Aerojet* and elsewhere) does not bar confirming mid-arbitration injunctions:

> [Review of mid-arbitration injunctions] is not inconsistent, as might first appear, with the policy favoring arbitration at the expense of the courts when it is chosen by the parties.  Given the potential importance of temporary equitable awards in making the arbitration proceedings meaningful, court enforcement of them, when appropriate, is not an "undue intrusion upon the arbitral process," *S. Seas Navig'n Ltd. v. Petroleos Mexicanos*, 606 F. Supp. 692, 694 (S.D.N.Y. 1985), but is essential to preserve the integrity of that

process.   Therefore, *we **hold** that temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful, such as the [mid-arbitration order] in this case, are final orders that can be reviewed for confirmation* and enforcement by district courts under the FAA.

*PRMC*, 935 F.2d at 1023 (emphasis added, citation edited).  Matthews has no response.

### C.   The Court Should Reject Matthews' Plea That the Court Refuse to Confirm >80% of the Arbitrator's Permanent Injunction Order

Matthews' fallback—a proposal that the Court limit confirmation to the first bullet-point of the Injunction Order's first paragraph, and refuse to confirm everything else—has neither legal nor factual support.  Opp. 10–11.  The Court should reject it.

First, Matthews fails to establish that the Court has authority to carve up the Arbitrator's injunction in Matthews' proposed manner.  As Tesla's Petition explains, the FAA instructs that a district court "must grant a duly submitted confirmation request" unless the non-requesting party proves that the Arbitrator's order "should be modified, vacated, or corrected."  9 U.S.C. § 9.  When asking the Court to deny confirmation to those parts of the injunction "predicated on Tesla's breach of contract claims" (Opp. 10), Matthews cites nothing granting the Court to excise most of the Injunction's content based on non-deferential review.  Nothing in the FAA supports such acts.  Section 11 therein provides the only grounds on which a Court may "modify" an arbitral award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.  The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.  Matthews does not meet any of those limited grounds.

When discussing its plea to carve up the injunction, Matthews does not substantively discuss § 11, or the rest of the FAA.  Matthews only cites two authorities: the permanent injunction standards for state courts in California, and cases reciting the elements of breach.

7

Opp. 11. State-law equitable standards do not constrain the Court.[3] But setting that aside, Matthews ignores the Congressional instruction that district courts defer to arbitrators' assessments of both law and fact. *E.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). The Court may not, as Matthews' request for piecemeal confirmation suggests, undertake *de novo* review of each injunction section. If the Court modifies (or corrects, or vacates) the Permanent Injunction Order, it must be according to the guidance of FAA § 11. Matthews' failure to recognize the very limited modifications that are permitted, and the absence of effort by Matthews to navigate them, is fatal.

Second, even had Matthews laid the framework for substantive FAA review of the Permanent Injunction's latter sections, it falls short of demonstrating error sufficient to deny confirmation. As Tesla's Petition explains, the Injunction orders Matthews to cease conduct that misappropriates trade secrets or breaches confidentiality obligations to Tesla. Matthews' suggestion that the record lacks evidence of harm connected to contract breach sufficient to support the injunction fails several times over. Matthews is ignoring inconvenient evidence, not traversing it.



---

[3] *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945) ("State law cannot define the [equitable] remedies which a federal court must give . . . . Contrariwise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it.").

[REDACTED]

Ex. 3 § 15.6(c) (emphasis added).  The Arbitrator relied (in part) on [REDACTED] to support the Permanent Injunction Order.[4]  Ex. 2 at 91–93.  Matthews' failure to traverse or mention [REDACTED] [REDACTED] is fatal.

Compounding its error, Matthews also ignores cases confirming that contractual stipulations like the one above, though not always dispositive, can support irreparable harm findings.  *Cf. Int'l Ass'n of Plumbing & Mech. Offs. v. Int'l Conf. of Bldg. Offs.*, No. 95-55944, 1996 WL 117447, at *2 n.3 (9th Cir. Mar. 15, 1996) (advising such provisions may be "evidence of irreparable injury"); *see also Flextronics Int'l, Ltd. v. Parametric Tech.., Corp.*, No. C-13-0034-PSG, 2013 WL 5200175, at *8 (N.D. Cal. Sept. 16, 2013) (relying in part on similar provision when entering injunction).  Nationwide authority accords.  *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999), explains that where, as here, the dispute is over disclosure of valuable technical information, irreparable harm can be established (in part) by the enjoined party's written "[a]greement that a breach of confidentiality would cause 'irreparable injury'" to his former employer.  188 F.3d at 49; *cf. also HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 n.8 (3d Cir. 2015) ("[S]uch a clause . . . reflects the parties' acknowledgement that money may be insufficient to compensate the non-breaching party."); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (similar).

Third, Matthews' suggestion that the Arbitrator's injunction lacks corroborative fact-finding ignores the underlying record.  As is typical in injunctive contexts, the necessary explanation is found in the associated fact-finding.  The Arbitrator [REDACTED]

[REDACTED]

[REDACTED]

---

[4] As discussed *infra*, the Arbitrator also cited other evidence corroborating the likelihood of irreparable harm.  Ex. 2 at 91–93.



Finally, Matthews' fundamental error is confusing the "going-forward" relief represented by an injunction with the "looking-backward" relief that damages grant. Matthews notes, correctly, that *past damages* have not yet been computed. But for an injunction, it is not past damages that matter. What matters is the danger posed by Matthews' *ongoing behavior*—e.g., its scofflaw handling of confidentiality obligations. The Arbitrator reviewed Matthews' record of conduct, correctly determined that if said conduct continued it would irreparably harm Tesla in a manner for which legal remedies would be inadequate, and duly ordered that Matthews to cease. Nothing about that configuration, and nothing in the law, supports Matthews' request to carve up

the Arbitrator's injunction so that Matthews can resume breaching its contractual obligations. The Court should confirm the Permanent Injunction Order.

## II.    NOTHING IN THE ARBITRATOR'S INJUNCTION WARRANTS VACATUR

The latter parts of Matthews' opposition present requests for judicial vacatur based on FAA § 10. Opp. 12–18. The Court is familiar with the FAA's vacatur standard; in brief, "arbitrators' decisions are subject only to the question whether the arbitrators exceeded their powers. To answer that question, courts must not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the [arbitration] decision 'draws its essence' from the contract." *PRMC*, 935 F.2d at 1024 (quoting *New Meiji Market v. United Food & Comm'l Workers Local Union 905*, 789 F.2d 1334, 1335 (9th Cir. 1986)). Matthews falls short of demonstrating that kind of egregious transgression by the Arbitrator here.

### A.    Nothing About Rule 65's Definiteness Requirement Warrants Vacatur

Matthews' plea for Fed. R. Civ. P. 65 review is meritless on the record. First, the Court should reject Matthews' plea for strict, de novo application of Rule 65. District courts may not ignore (as Matthews improperly urges) the deference owed to both arbitrators and the arbitration process. Under the correct standard of review (flexible application of Rule 65, with deference to the Arbitrator's determinations), the record is overwhelming that the Arbitrator's Injunction Order is lawful. Second, even if the Court were to embrace Matthews' theory of strict de novo review, the record and law surrounding the Permanent Injunction Order passes that test, too.

#### 1.    Any Application of Rule 65(d) to a Mid-Arbitration Injunction Should Be Flexible and Deferential

Matthews' proposal for strict application of Rule 65(d), on a de novo review standard, is wholly lacking in precedential support. The Ninth Circuit has never endorsed de novo review for arbitration injunctions' compliance with Rule 65(d). It has never endorsed strict application of Rule 65(d) to arbitration injunctions. Serious jurisprudential questions surround both issues. That is because Matthews' plea for strict, de novo review here flies in the face of decades of authority establishing that when it comes to judicial review of arbitration outcomes, district courts generally defer to arbitrators.

Three things are clear about the complex regime governing approval of arbitration injunctions.  First: it is clear that Rule 65(d) does not strictly apply to the products of arbitration.  That is because more than fifty years ago the Supreme Court established that arbitrators "have no obligation to the court to give their reasons for an award."  *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).  There is an obvious tension between that holding and Rule 65(d)(1)(A)'s requirement that each injunction "state the reasons why it issued."  The implication is that if Rule 65(d) applies to arbitration injunctions, it must apply flexibly, to accommodate the unique position arbitrators occupy in the realm of dispute resolution.

Second: Congress instructed district courts to defer to properly appointed arbitrators in nearly every aspect of a case.  "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'"  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).  Most of the authorities discussing judicial review of arbitration underline that deference.  *E.g.*, *Oxford Health Plans*, 569 U.S. at 569 ("[T]he sole question for [a court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."); *Comedy Club*, 553 F.3d at 1290 (limiting review to assessing "manifest disregard of the law").  There, the implication is that whatever the contours of Rule 65(d) review for arbitration injunctions might be, the reviewing court should defer to the arbitrator wherever reasonably possible.

Third: in 2009, though the Ninth Circuit cited Rule 65 when evaluating an arbitration injunction, it did not develop or analyze the surrounding review standards.  *Comedy Club*, 553 F.3d at 1287.  *Comedy Club* finds an arbitrator's injunction overbroad where it purported to bind individuals not meaningfully connected to the parties.[5]  *Id.* at 1287–88.  But *Comedy Club* does

---

[5] *Comedy Club* reasons that injunctions may bind non-parties who are "agents, employees, or [otherwise] in active concert or participation" with an enjoined party, but enjoining "family members, . . . former spouses, and all collateral relatives of former spouses" is a step too far.  553 F.3d at 1287–88.  The Ninth Circuit vacated and remanded for correction of the injunction's coverage, among other issues.

not describe the review standard and does not take up aspects of Rule 65(d) beyond its restriction on the scope of non-parties who may be enjoined. *Id. Comedy Club* leaves many questions open.

In view of the foregoing, the Court should reject Matthews' underdeveloped theories proposing that Rule 65(d) strictly applies and judicial review is de novo. None of the authority presented by Matthews supports either contention. To support its request for strict Rule 65(d) review, Matthews principally cites the Second Circuit's opinion in *Diapulse*, but that case scarcely discusses the issue. *Diapulse* merely says, "an order which does not satisfy [Rule 65(d)'s] requirement of specificity and definiteness will not withstand appellate scrutiny." 626 F.2d at 1111. *Diapulse* does not explain the level of Rule 65(d) adherence that is required. Thus, it does not teach how rigid Rule 65(d) application must be.

The other authority Matthews cites is the Court's opinion in *Twitch Interactive, Inc. v. Fishwoodco GmbH*, No. 22-cv-3218-EJD, 2024 WL 2113865 (N.D. Cal. May 9, 2024). In that case, the parties did not "present[ ] cases applying Rule 65(d)(2) in an arbitration context." 2024 WL 2113865, at *3. Notably, *Twitch* **declines** to find that Rule 65(d) applies to arbitration injunctions—a fact Matthews ignores:

> [T]he Court is not inclined to find that Rule 65(d), a rule governing the Federal Rules of Civil Procedure, extends to an arbitrator-issued injunction such that the Court can bypass a jurisdictional analysis.

*Id.* at *4.

Matthews' proposal that district courts apply Rule 65(d) de novo (i.e., with zero deference to the Arbitrator) is even less supported. Matthews relies on an unpublished opinion from an out-of-circuit district court. Opp. 12–13 (citing *1-800-Radiator of Wis., LLC v. 1-800-Radiator Franchise Inc.*, No. 08-C-362, 2010 WL 325332, at *1 (E.D. Wis. Jan. 21, 2010)). *1-800-Radiator* received no appellate review and has never been relied upon (or even cited) by any other court. *1-800-Radiator* falls far short of establishing that the deference typically accorded to arbitrators is suddenly discarded where Rule 65(d) is concerned.

Matthews' misdirected reasoning suffers a fundamental flaw: it ignores that arbitration injunctions, unlike judicial injunctions, ultimately reflect a ***bargain between the parties***. By contract, Matthews and Tesla agreed that certain disputes would be submitted to arbitration. *See*

TESLA REPLY/CROSS-RESP RE
MOTIONS ON PERMANENT INJUNCTION
Case No. 5:24-cv-03615-EJD-VKD



They further agreed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ *Id.* Indeed, this was an express choice of the parties, as the parties could have ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As noted above, Matthews

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In this context, an arbitrator's entry of an injunction resembles an arbitrator's other dispute-resolving determinations. Those determinations are subject to judicial review, but on the standard typically required by the FAA: review that is "limited and highly deferential." *Comedy Club*, 553 F.3d at 1288. Additionally, such review should reflect that arbitration is by definition (and by contract) a less procedurally elaborate process than litigation. With that in mind, the Court should reject Matthews' plea for strict application of Rule 65(d) with de novo review. The Court should apply that rule flexibly and with deference.[6] Upon such flexible, arbitrator-deferring review, the Court should find that nothing in Rule 65(d) bars confirmation of the Permanent Injunction Order for the reasons discussed *supra*.

### 2. Even if the Court Applies Matthews' Proposal of Strictly Applying the Rule With Zero Deference, There Is No Rule 65(d) Defect

Temporarily accepting Matthews' (questionable) proposal for strict and non-deferential Rule 65(d) review, there is no reversible error in either the Arbitrator's Permanent Injunction (Ex. 1) or in Tesla's Proposed Order (Dkt. 110-4). Matthews' attacks are unsupported because they ignore long-standing Ninth Circuit authority.

In the Ninth Circuit, injunctions are not set aside under Rule 65(d) "'unless they are so vague that they have no reasonably specific meaning.'" *Fortyune v. Am. Multi-Cinema, Inc.*,

---

[6] As discussed *supra*, the Ninth Circuit has already embraced flexibility even for judicial injunctions. *E.g.*, *Reno Air Racing*, 452 F.3d at 1133–34 (declining to follow "our sister circuits" by requiring strict application).

364 F.3d 1075, 1087 (9th Cir. 2004) (quoting *United States v. V-1 Oil Co.*, 63 F.3d 909, 913 (9th Cir. 1995)).  Crucially (and misunderstood by Matthews), Rule 65(d)'s requirements "'must be applied in light of the circumstances surrounding [the injunction's] entry: the relief sought by the moving party, the evidence produced at the hearing of the injunction, and the mischief that the injunction sought to prevent.'"  *FEC v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir. 1989) (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1000, 1007 (3d Cir. 1971) (emphasis added, alteration *Furgatch*'s)).  "Circumstances" appropriate for consideration include, but are not limited to, history of the dispute, the past conduct of the enjoined party, and relevant historical orders.  *Melendres v. Skinner*, 113 F.4th 1126, 1140 (9th Cir. 2024).  An injunction survives Rule 65(d) review so long as it is "not so vague that the [enjoined party] cannot understand what is required of him."  *Id.*; *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1133 (9th Cir. 2006) ("Ultimately, there are no magic words . . . and the inquiry is context-specific.").

### a)    Paragraph 3's References to the GTCs and Arbitration Awards Are Lawful and Appropriate

Matthews' nonsensical contention that Rule 65(d) requires reviewing an injunction's text without considering "external documents" contravenes at least seventy years of settled law.  In 1953, a drug manufacturer proposed to the Ninth Circuit that Rule 65 review may not consider collateral documents surrounding an injunction.  The Ninth Circuit unambiguously rejected that proposal.  Its opinion explains that assessing an injunction's Rule 65(d) compliance requires reviewing the injunction "in connection with the [underlying] findings of fact[.]"  *Ross-Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir. 1953).  In other words: context matters.  When they apply Rule 65(d), courts in the Ninth Circuit consider the context surrounding an injunction.

Still further, courts in the Ninth Circuit do not apply a strict rule against injunctions referencing unattached documents.  Where—as here—it is not disputed that the enjoined party possesses all referenced documentation, in the Ninth Circuit Rule 65(d) does not bar injunctions referring to that documentation:

> [In this appeal the enjoined party] suggests that the TRO's reference to an outside document . . . automatically violated Rule 65(d). Although a number of our sister circuits read the "no reference" requirement strictly, we have permitted incorporation by reference in limited scenarios, for example where the referenced document is "physically attached to the [order] itself." *California v. Campbell*, 138 F.3d 772, 783 (9th Cir. 1998); *Henry Hope X-Ray Prods., Inc. v. Marron Carrell, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982) (holding that the district court did not err in attaching a confidential appendix to its order that set out the prohibited acts); *see also Davis v. San Francisco,* 890 F.2d 1438, 1450 (9th Cir.1989) (permitting reference to fire department rules "already binding upon the officers" and where "[i]t is ***unlikely the officers could argue they were unaware*** of these rules").

*Reno Air Racing*, 452 F.3d at 1133–34 (footnote omitted, emphasis added, citations edited).

*Reno Air Racing*'s positive citation to *Davis* is on-point here. In *Davis*, as here, the enjoined party tried to void an injunction based on reference to an unattached document. The Ninth Circuit had no difficulty rejecting the attack. Because the enjoined individuals were already aware of the document's contents, the Ninth Circuit found that the "failure to cause a copy of the [document] to be stapled to the [ ] injunction" did not warrant reversal. *Davis*, 890 F.2d at 1450. Here, Matthews' attack is far weaker than the one in *Davis*. Not only would it be "unlikely" Matthews could claim unawareness of the referenced documents, ***Matthews was a full participant in all the underlying history.*** Matthews signed the GTCs, it participated in the arbitrations, it presented witnesses, it submitted hundreds of pages of briefing, and it was served with the Interim Award and Permanent Injunction on the day they issued. In that context, nothing in Rule 65(d) supports Matthews' theory that the injunction's references to such documents are unlawful.

Thus Matthews' contention that Rule 65(d) bars any injunctive reference to an unattached document is demonstrably wrong. Matthews' error is in its exclusive reliance on Second Circuit authority. Opp. 13. Its principal citation is *Squarepoint Ops LLC v. Sesum*, No. 19 Civ. 7317, 2020 WL 996760 (S.D.N.Y. 2020), which applies such a strict and inflexible rule. 2020 WL 996760, at *5 (vacating-in-part based on injunction's "refer[ence] to certain unattached exhibits"). But *Squarepoint* cannot control because it contravenes Ninth Circuit law like *Reno Air Racing* and

*Davis*.[7] Matthews' only other citation, *Diapulse Corporation of America v. Carba, Ltd.*, 626 F.2d 1108 (2d Cir. 1980), fares no better. *Diapulse* includes no holding, or even discussion, about injunctive references to unattached documents. The discussion in *Diapulse* on which Matthews relies presents boilerplate statements that injunctions must be descriptive and specific. 626 F.2d at 1111. Nothing in *Diapulse* suggests that mere citation to unattached documents is a basis for reversal. The Court should reject Matthews' contention that the Permanent Injunction is unlawful because it references other documents.

**b)    Paragraph 2's Order That Matthews Cease Breaching Confidentiality Obligations Is Lawful and Appropriate**

Matthews' contention that the Injunction "simply references 'violation of the GTCs' without identifying prohibited conduct" is facially inaccurate. *See* Opp. 13. The Injunction is clear that the prohibited conduct is any act of "publishing" or "using" certain Tesla-confidential information—which is the same conduct for which the Arbitrator found Matthews liable after a six-day trial. *See generally* Ex. 1 ¶ 2 (enjoining Matthews from "publishing . . . or otherwise disclosing" information marked by Tesla as "'Confidential and Proprietary' (or words to that effect)"). Matthews' contention that ███████████████████████████████████ ██████████████████ contravenes the record.

Matthews' legal citations are inapt. Its single in-circuit precedent, *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013), is off-point. *Columbia Pictures* addresses irreconcilable vagueness in a copyright-related preliminary injunction. The injunction barred Mr. Fung using "Infringement-Related Terms" in web pages, but failed to define "Infringement-Related Terms." 710 F.3d at 1048 ("[N]o one reading this injunction can tell what [that term]

---

[7] It is also far from clear that *Squarepoint* correctly recites Second Circuit law. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 809 (2d Cir. 1981) ("[W]e find [no] merit in Acme's contention that, because the May 18 order referred in haec verba to Plaintiff's Exhibits 2 and 3 without attaching those exhibits, Acme was unable to comply with the injunction because it was too vague.").

means[.]"). That is emphatically not the case here, where the enjoined conduct (i.e., Matthews' unlawful publication/disclosure of Tesla-confidential information) was exhaustively analyzed in the Interim Award. As discussed *supra* (and as ignored by Matthews), for Rule 65(d) analysis context matters. *Reno Air Racing*, 452 F.3d at 1133 ("Ultimately, there are no magic words . . . and the inquiry is context-specific."). Here, that context abundantly apprises Matthews of the scope of enjoined conduct. Matthews' backup, out-of-circuit citation is not contrary. In that case, the injunction required compliance with every term of a complex agreement—not the more limited circumstance, present here, of covering clearly specified conduct for which irreparable harm was likely. *See generally Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) (vacating injunction that purported to bar violating "any term").

Finally, Matthews contends that it is impossible to determine what it means for a document to have been labeled "'Confidential and Proprietary' (or ***words to that effect***)." Opp. 14. That contention is absurd, and Matthews is unable to show how the emphasized phrase "***words to that effect***" is "too vague to be understood." *Fortyune*, 364 F.3d at 1087. The term is not vague at all. Put simply: if Tesla has labeled a document, "Confidential and Proprietary," Matthews' treatment of that document is subject to the injunction. If the document lacks the words "Confidential and Proprietary," but has other indicia of Tesla's confidentiality right (e.g., "Secret," "Tesla Proprietary," "Not For Publication"), the injunction also applies. The test is simple, readily apparent to typical businesspeople, and Matthews does not establish that any reasonable person could become confused.

As to its unfounded assertion that Paragraph 3 creates a problem surrounding "Matthews' own background intellectual property," Opp. 14, Matthews entirely misses the point. ***Matthews has been held liable for ongoing mishandling of Tesla's confidential information.*** To avoid further irreparable harm, the Arbitrator enjoined Matthews against further acts of taking information marked by Tesla as confidential and publishing it (e.g., in patent applications).

Matthews now pleads for rescue from the consequences of its conduct. It asks that the Court grant Matthews—against the Arbitrator's express holding—a positive right to publish information marked by Tesla as confidential. For that remarkable plea, Matthews presents not an

18

iota of documentary evidence or supporting legal authority. The Arbitrator's reasons for his injunction are provided in the Interim Award. Matthews had a lengthy trial, and hundreds of pages of pre- and post-trial briefing, in which to defend itself. Those attempts having failed, the Court should be skeptical of Matthews' plea to have the Court judicially strip it of consequences. The Court should particularly be skeptical of Matthews making that request without a single piece of competent evidence. To the extent Matthews finds the Arbitrator's injunction burdensome, it has totally failed to show that such burden is unfair or unlawful, and in fact, the injunction is what justice required in this case.

None of the authority presented by Matthews supports it. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011), presents a boilerplate reminder that injunctions should not restrain conduct "that was not fairly the subject of litigation." But that is not applicable here. Matthews' mishandling of Tesla-confidential material was the very core of the arbitration. *Mickalis Pawn Shop*, even if it were controlling, does not aid Matthews. Nor do previous opinions from this Court. *uSens, Inc. v. Shi*, No. 18-cv-1959-SVK, 2018 WL 11436323 (N.D. Cal. Oct. 11, 2018), generically expresses specificity concerns in the context of denying a plaintiff's preliminary injunction motion. 2018 WL 11436323, at *2. It does not address, at all, whether the phrase "or words to that effect" are per se disqualifying, which is Matthews' contention. And *Concord Music Group, Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131 (N.D. Cal. 2025), does not discuss Rule 65 at all. That opinion denies a preliminary injunction motion for numerous reasons, none of which involve the close parsing of text that Matthews is advancing.

### c)      There Is No Rule 65 Deficiency

Even if review were strict and de novo, as Matthews proposes, every paragraph of the Permanent Injunction amply complies. Nothing in Rule 65 warrants a decision not to confirm.

**B.    The Arbitrator's Permanent Injunction Is Well Within the Arbitrator's Authority, and the Court Should Confirm It**

Matthews' final set of contentions, that the Arbitrator exceeded his assigned powers on substantive grounds, fares no better than its other protests. Matthews' arguments are unsupported by the record and lack merit.[8] The Court should reject them.

**1.    Paragraph 2 of the Injunction Is Well Within the Arbitrator's Authority, and Matthews' Vacatur Plea Is Unfounded and Speculative**

Except for several citations to the Interim Award, Matthews presents no evidence supporting its contention that Paragraph 2 bars Matthews publishing or filing patents on "information that was previously known to Matthews or that constitutes Matthews' own independently developed technology." Opp. 16–17. Matthews also does not present a single legal citation suggesting that unfounded rhetoric is a competent basis for a district court vacating an arbitration injunction. Tesla is unaware of any such authority.

This arbitration, like the litigation Complaint that preceded it (Dkt. 1), was about Matthews' egregious mishandling of Tesla's confidential information. During pleadings Tesla alleged that Matthews had unlawfully taken Tesla-confidential information and used it to submit and publish patent applications (Dkt. 1); ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ultimately, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ :

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ Accordingly, the Arbitrator ordered that Matthews be enjoined from *doing what it has already unlawfully done*—taking Tesla-confidential information that Tesla had labeled as confidential, and disclosing it. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[8] Matthews' motion makes sweeping allegations about the state of the record that are scantly corroborated. By electing to omit documentary exhibits from its response/cross-motion, Matthews waived its right to submit such material to the Court. Any submission of new exhibits as part of Matthews' cross-reply would be improper.

Matthews' Opposition alleges, without support, that ████████████████████████ ███████████████████████████ ████████ Matthews presented that argument to the Arbitrator who, after weighing it along with all Matthews' others, crafted the Permanent Injunction.  It is not the Court's role to re-weigh that record (even if Matthews had submitted competent evidence, which it did not).  In the Ninth Circuit, district courts must be mindful that "arbitration is a consensual agreement of the parties to substitute a final and binding judgment of an impartial entity for the judgment of the court." *Coast Trading Co. v. Pac. Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982).  Importantly, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Bosack v. Soward*, 586 F.3d 1096,1102 (9th Cir. 2009).  Matthews' allegations regarding Paragraph 2 of the Injunction lack the compelling showing necessary for vacatur.

### 2. Paragraph 3 of the Injunction Is Well Within the Arbitrator's Authority, and Matthews' Vacatur Plea Is Unfounded and Speculative

Matthews' objection to Paragraph 3 suffers the same defects as its Paragraph 2 objection, but more pronounced.  With neither documentary corroboration nor legal support, Matthews inaccurately contends that Paragraph 3 is unlawful because of a particular burden it assigns to

---

[9] ████████████████████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████████

TESLA REPLY/CROSS-RESP RE
MOTIONS ON PERMANENT INJUNCTION
Case No. 5:24-cv-03615-EJD-VKD

Matthews: the burden of adhering to its own contractual commitments, as interpreted by two arbitration awards. Opp. 17 (complaining that the Injunction requires Matthews to determine what falls within the "category of 'Developed Material' as 'defined and interpreted' in two lengthy arbitration awards"). Matthews' argument is meritless.



*See generally Matthews Int'l Corp. v. Tesla, Inc.*, No. 5:25-cv-3325-EJD [*Matthews-Tesla -3325*], 2025 WL 3126825 (N.D. Cal. Oct. 1, 2025). In 2025,

Again, Matthews does not substantiate a single one of its alleged harms. Matthews speculates about the burden associated with "divin[ing] what falls within the ambiguous category of 'Developed Material'" but does not present a single corroborated example of either ambiguity or burden. *Id.*

---

[10] Appellate review is pending. *Matthews Int'l Corp. v. Tesla, Inc.*, No. 25-6918 (9th Cir. filed Oct. 31, 2025).



Cutting through all of its rhetoric, Matthews actually seeks substantive redetermination of the Arbitrator's weighing of the evidence and the law. As the Court knows, that kind of reweighing is expressly barred by the FAA. The Court should reject Matthews' plea for vacatur of Paragraph 3.

## III.    MATTHEWS' COMPLAINT ABOUT THE FORM OF ORDER IS SPECIOUS

Matthews objects to Tesla's proposed order, but fails to specifically state its objection and concedes that the differences between Tesla's proposed order and the Arbitrator's Permanent Injunction are "admittedly minor" and "typographical." Opp. 18. Tesla prepared the Proposed Order to accurately reflect the substantive content of the Arbitrator's Permanent Injunction. Because Matthews presents no substantive objection, there is nothing for Tesla to respond to. But for avoidance of doubt and to resolve unnecessary conflict: Tesla does not object to the Court simply appending the Arbitrator's Permanent Injunction to any final injunctive order in this case.[11]

---

[11] Though Tesla is willing to accommodate Matthews, it bears repeating that physically attaching the Injunction is not necessary in these circumstances. *E.g.*, *Davis*, 890 F.2d at 1450 (declining to find reversible error based on the "failure to cause a copy of the [referenced document] to be stapled to the [ ] injunction").

## IV.    REMAND, THOUGH NOT NECESSARY, IS AVAILABLE

Tesla believes that there are no defects in the Permanent Injunction warranting a decision not to confirm.  Should the Court find errors, the Ninth Circuit has approved arbitration remand for "limited" contexts, which (in Tesla's view) would be applicable here.  *McClatchey Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 n.1 (9th Cir. 1982). Matthews concurs.  Opp. 12 n.2.  As discussed *supra*, the Arbitrator continues to have jurisdiction over the parties as the case moves into the damages phase.

## V.    CONCLUSION

As Tesla's Petition explains, the FAA requires that a district court "must" grant a duly submitted confirmation request unless it concludes that the arbitration determination at issue should be modified, vacated, or corrected.  9 U.S.C. § 9.  As discussed *supra*, Matthews has failed to demonstrate that modification, vacatur, or correction is needed.  Matthews has also failed to overcome controlling authority teaching that mid-arbitration injunctions like the one here are "final" for confirmation purposes.  On that basis Tesla respectfully asks that the Court grant Tesla's confirmation petition and deny Matthews' vacatur cross-motion.

Dated:  March 20, 2026                              FISH & RICHARDSON P.C.


                                                    By:   */s/ Robert Courtney*
                                                          Robert Courtney

                                                    Attorney for Plaintiff,
                                                    TESLA, INC.