UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

TESLA, INC.,

         Plaintiff,

    v.

MATTHEWS INTERNATIONAL CORPORATION,

         Defendant.

Case No.   5:24-cv-03615-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CONFIRM ARBITRATION AWARD; GRANTING IN PART AND DENYING IN PART CROSS-MOTION TO VACATE ARBITRATION AWARD**

Re: ECF Nos. 111, 117

*PUBLIC REDACTED VERSION*

Before the Court is Tesla's motion to confirm and Matthews's cross-motion to vacate a permanent injunction issued during arbitration.  Tesla Mot., ECF No. 111; Matthews Cross-Mot, ECF No. 117; Tesla Reply, ECF No. 130; Matthews Reply, ECF No. 132.  On April 29, 2026, the Court held a hearing and heard oral arguments from all parties.  ECF No. 136.  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** both motions.

I.    **BACKGROUND**

This is one of several cases between Tesla and its vendor for battery electrodes from dry powder ("DBE"), Matthews.  *See also* Case Nos. 25-cv-01533-EJD, 25-cv-3325-EJD.  Tesla filed this case on June 14, 2024, alleging trade secret misappropriation, breach of contract, and unfair competition.  The Court granted Matthews's motion to compel arbitration of Tesla's claims on October 7, 2024.  Order, ECF No. 50.  Since then, the parties have been engaging in arbitration.

The Arbitrator decided to split the arbitration into three phases: (1) liability, (2) damages, and (3) other issues including Matthews's counterclaims.  Interim Award, ECF No. 109-7.  Phase

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD

1

1 concluded with an Interim Award issued on February 13, 2026. *Id.* Relevant here, the Arbitrator found ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* The Arbitrator also found ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*

The Interim Award indicated that the Arbitrator would also issue a Permanent Injunction by separate order and provided the substance of that Permanent Injunction. *Id.* The Permanent Injunction was issued that same day, and this is the award that Tesla seeks to confirm. Permanent Injunction, ECF No. 110-3.

The Permanent Injunction contains three paragraphs:

1. Respondent, Matthews International Corporation ("Matthews"), together with its subsidiaries, officers, agents, servants, employees and attorneys, are as of this day ENJOINED AND ORDERED to cease and refrain from using, selling, attempting to sell, delivering, disclosing, demonstrating, or offering to sell to customers other than Tesla any Dry Battery Electrode (DBE) equipment that contains or discloses:

   - The exact configuration of the Torque Fence Assembly linkage component (as shown in CAD V-007149) used in the Tesla MRC4E manufactured by Matthews under the agreements entitled "General Terms and Conditions for Procurement Equipment Services" dated September 17, 2019 and July 14, 2020 (the "GTCs");

   - The exact configuration of the Bearing Block and Gap Control Assemblies, as shown in CAD V-006218 and V-008091, respectively, used in the Tesla MRC4E manufactured by Matthews under the GTCs; and

   - Any of Tesla's source code in the folder named "2500_Tesla" that contains one or more of Tesla's Closed Loop Feedback Control Systems that was installed in the MRC4E by Matthews under the GTCs.

2. Matthews is further ENJOINED AND ORDERED to cease and refrain from publishing in any patent application or otherwise disclosing in violation of the GTCs information that Telsa had marked as "Confidential and Proprietary" (or words to that effect) before disclosing said information to Matthews.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
2

United States District Court
Northern District of California

3. Matthews is further ENJOINED AND ORDERED to cease and refrain from using or disclosing without Tesla's prior written consent information that falls within the GTCs' definition of Developed Material and/or Tesla Background IP, as defined and interpreted in the Corrected Final Award, issued by Judge Gandhi (Ret.) dated April 11, 2025, and/or the Interim Award (Phase One – Liability), issued by the undersigned dated February 13, 2026.

*Id.*

Tesla seeks to confirm the Permanent Injunction in its entirety. Matthews seeks to defer confirmation until the conclusion of arbitration, or alternatively, confirm only Paragraph 1 but vacate and remand Paragraphs 2 and 3 for further clarification of the conduct enjoined.

## II.    DISCUSSION

The parties dispute two overarching issues: (1) whether Tesla's motion to confirm is premature; and (2) whether Paragraphs 2 and 3 violate Federal Rule of Civil Procedure 65(d). The Court will address each in turn.[1]

### A.    Premature

"[F]or an arbitration award to be subject to judicial review, it must be final and binding as to all of the issues presented to the arbitrator." *Berland v. Conclave, LLC*, No. 20-CV-00922-H-WVG, 2021 WL 461727, at *5 (S.D. Cal. Feb. 9, 2021). "To be considered 'final,' an arbitration award must be intended by the arbitrator to be [a] complete determination of every issue submitted." *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (internal quotation omitted).

Matthews first argues the Court cannot confirm the Permanent Injunction because it is not a final and binding award. The Arbitrator explicitly stated as much when he indicated that the Interim Award was "not intended" to be "subject to review pursuant to the FAA, 9 U.S.C. Sections 10-12." Interim Award 5. Because many issues remain to be resolved—primarily damages (which is a necessary element of Tesla's contract claims) and Matthews's counter-

---

[1] Matthews's alternative argument that Tesla's proposed order improperly contains corrections to typographical errors in the Interim Award is moot; Tesla agrees in reply to forgo its proposed language. Tesla Reply 23.

United States District Court
Northern District of California

claims—Matthews argues this Interim Award is not a "complete determination of every issue submitted." *Millmen Local 550, United Broth. of Carpenters and Joiners of America, AFL-CIO*, 828 F.2d at 1376 ("To be considered 'final,' an arbitration award must be intended by the arbitrator to be [a] complete determination of every issue submitted.") (internal quotation omitted).

Tesla contends that the Permanent Injunction is a "final" order because the Arbitrator called it "final" in a correspondence, and the Permanent Injunction was issued in a separate document. But regardless, Tesla highlights that the Ninth Circuit allows judicial confirmation of mid-arbitration equitable orders where necessary to protect the claimant's ability to obtain meaningful relief. *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp. ("PRMC")*, 935 F.2d 1019, 1023 (9th Cir. 1991) ("[W]e hold that temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful, such as the IFO in this case, are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA."). Matthews rebuts that this case is distinguishable from *PRMC* and its progeny because the injunctions there were temporary, while this one is permanent. Matthews contends this is significant because temporary injunctions, unlike permanent injunctions, implement preservation-oriented measures that depend on immediate enforceability to be effective.

The Court agrees with Tesla's latter argument and finds it has jurisdiction to review the Permanent Injunction here. Although the arbitration award is not "final" given the ongoing proceedings and the Arbitrator's explicit statement of intent, the injunction is an "equitable order[] calculated to preserve assets or performance needed to make a potential final award meaningful." *PRMC*, 935 F.2d at 1023. The Court finds little significance in the "permanent" nature of this particular injunction. It remains that district courts must have the authority to confirm and enforce equitable relief where there has been a finding of imminent and irreparable harm for that equitable relief to be effective. And here, the Arbitrator found that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 92. The Arbitrator also noted Matthews'

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
4

stipulation that the enjoined conduct, if permitted to continue, would ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Given the Arbitrator's

finding that the Permanent Injunction is necessary to protect Tesla's trade secrets and prevent

irreparable harm, the Court finds the order can be reviewed for confirmation and enforcement at

this time pursuant to *PRMC*.

**B.    Rule 65**

Moving to the merits of the parties' motions, Matthews contends that the second and third

paragraphs of the injunction should be vacated and remanded because they violate Rule 65(d).

Rule 65(d) describes in part the content and scope of permissible injunctions. Relevant

here, it provides that "every" injunction must: "(A) state the reasons why it issued; (B) state its

terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or

other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)–(C).

The Court will examine in turn arguments regarding: (1) the Court's authority to confirm

only part of an arbitration award; (2) the applicability of Rule 65(d) to arbitration injunctions; (3)

the applicable standard of review; and (4) whether Paragraphs 2 and 3 violate Rule 65(d).

**1.    Authority to Sever**

As an initial matter, Tesla briefly argues that the Court cannot vacate only part of an

arbitration award; but this is directly contradicted by *Comedy Club, Inc. v. Improv W. Assocs.*, 553

F.3d 1277, 1288 (9th Cir. 2009), which explicitly held: "If an arbitrator exceeded the scope of his

authority in issuing an award, and that award is divisible, we may vacate part of the award and

leave the remainder in force." The Court finds the Permanent Injunction here is divisible, and

accordingly, it has the authority to order the relief Matthews seeks under *Comedy Club*.

**2.    Applicability of Rule 65**

Matthews begins with the proposition that an arbitration award granting injunctive relief

must comply with Rule 65(d). It cites again *Comedy Club*, which vacated an injunction that failed

to comply with Rule 65(d), as well as this Court's order in *Twitch Interactive, Inc. v. Fishwoodco*

*GmbH*, No. 22-CV-03218-EJD, 2024 WL 2113865, at *3–4 (N.D. Cal. May 9, 2024), which

United States District Court
Northern District of California

applied case law regarding Rule 65's actual notice requirement to an arbitrator-issued injunction.

Though many of Tesla's arguments overlap with the standard of review discussion in the next section, there is one argument specific to Rule 65(d)'s generally applicability—Tesla contends there is a conflict between Rule 65(d) and Supreme Court precedent regarding judicial review of arbitration awards.  The Supreme Court in *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960), held that arbitrators "have no obligation to the court to give their reasons for an award."  Yet, Tesla highlights that Rule 65(d)(1)(A) requires each injunction "state the reasons why it issued."  Tesla argues these two conflicting directives are incompatible, and this friction signals that Rule 65(d) is inappropriate in the arbitration context. And in response to Matthews's citations, Tesla argues the Ninth Circuit in *Comedy Club* did not explicitly develop or analyze the standard of reviewing Rule 65(d) beyond its restriction on the scope of non-parties who may be enjoined.

The Court ultimately agrees with Matthews that Rule 65(d) applies equally to injunctions issued in arbitration and issued in court.  Although the Ninth Circuit in *Comedy Club* did not *explicitly* hold that arbitration injunctions must comply with Rule 65(d), such a holding is implicit in its order vacating an injunction that failed to comply with Rule 65(d).  And in response to Tesla's citation to *United Steelworkers*, it remains true that arbitrators' findings are subject to significant deference under the FAA, but the language of their injunctions must still comply with the requirements of Rule 65 to be enforceable in federal court, as discussed in greater detail below.

### 3.    Standard of Review

Having decided that Rule 65(d) applies to arbitration injunctions, the Court next decides the appropriate standard of review.  Matthews argues the Court should review the Permanent Injunction's compliance with Rule 65(d) de novo, citing *1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise Inc.*, No. 08-C-362, 2010 WL 325332, at *1 (E.D. Wis. Jan. 21, 2010), and *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980).  Matthews recognizes that courts generally accord great deference to arbitration awards, but it highlights that judicial confirmation "converts a final arbitration award into a judgment of the court"—"[o]nce

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD

United States District Court
Northern District of California

the award is confirmed, the judgment has the same force and effect of a judgment in a civil action and may be enforced by the means available to enforce any other judgment." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011). Matthews contends that a party cannot be held in contempt for violating an arbitral injunction—once confirmed—if that injunction fails to meet the plain requirements of Rule 65(d). *Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75 (1967).

Tesla argues the Court must still give great deference to the decisions of an arbitrator in nearly every aspect of a case, including when examining an injunction's compliance with Rule 65(d). "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)); *id.* at 569 ("[T]he sole question for [a court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."). According to Tesla, the implication is that the reviewing court should defer to the arbitrator wherever reasonably possible, regardless of whether that review is of compliance with Rule 65. In other words, Tesla argues Rule 65 should merely serve as *guidance*. Instead of de novo review, Tesla argues for a more "flexible" review that is typical of the FAA.

The Court finds a de novo review of Rule 65 compliance appropriate. As discussed briefly in the section prior, the Court is not reviewing the Arbitrator's ultimate finding or the reasons behind that finding. The Court is simply reviewing whether the injunction's language can become an enforceable judicial order. Tesla has provided no authority for the notion that a court can enforce an order that violates the explicit requirements of Rule 65.[2] And none exists for good reason—courts cannot enforce injunctions if it is unclear what conduct is enjoined. It would make little sense to apply an ambiguous "flexible" standard of review for purposes of confirming an

---

[2] It is true that no case explicitly holds that court must apply a "strict review," as put by Tesla; but it is also true that all cases cited by both parties apply Rule 65 without any level of deference. Though Tesla points to the Ninth Circuit's reference to "deference" in *Comedy Club,* the Circuit there referred to an arbitrator's findings, not the form of the injunction.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
7

arbitration award but applying a de novo review to enforce it.

### 4.    Rule 65 Violations

Having found the authority to review the injunction for compliance with Rule 65(d) without deference to the Arbitrator's drafting, the Court will now examine whether the Permanent Injunction does, in fact, violate Rule 65(d).

The Court begins with Paragraph 3, which states:

> Matthews is further ENJOINED AND ORDERED to cease and refrain from using or disclosing without Tesla's prior written consent information that falls within the GTCs' definition of Developed Material and/or Tesla Background IP, as defined and interpreted in the Corrected Final Award, issued by Judge Gandhi (Ret.) dated April 11, 2025, and/or the Interim Award (Phase One – Liability), issued by the undersigned dated February 13, 2026.

Interim Award.

Matthews argues this language violates Rule 65(d)(1)(C)'s directive to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required" because it requires Matthews to consult at least three separate, lengthy, unattached documents (the GTCs and two arbitration awards) in order to identify the category of information to which the injunction applies.  While Matthews acknowledges there are some circumstances where cross-referencing documents is permissible, as described by the Ninth Circuit in *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006), and *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438 (9th Cir. 1989), Matthews argues this is not one of those cases.

In *Davis*, the Ninth Circuit permitted an injunction against the San Francisco Fire Department to incorporate by reference "fire department rules already binding upon the officers of the SFFD."  *Davis*, 890 F.2d at 1450.  Because the enjoined defendants were already obligated to comply with the incorporated document, it was "unlikely the officers could argue they were unaware of these rules."  *Id.*  Matthews characterizes *Davis* as "stand[ing] for an exceedingly narrow proposition: where the incorporated document consists of pre-existing, binding internal rules with which the enjoined parties are already legally obligated to comply—and where the

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
8

injunction references a static, identified version of that document—incorporation by reference may survive Rule 65(d) scrutiny." Matthews Reply 6. Matthews argues Paragraph 3 falls outside of *Davis* because it does not incorporate a simple document that was independently binding on Matthews before the injunction issued. It instead incorporates two lengthy arbitration awards containing complex interpretive analyses of the GTCs' intellectual property framework. The Arbitrator himself found that

In *Reno Air Racing*, the Ninth Circuit vacated a contempt finding premised on a TRO that enjoined a party from making or distributing items bearing the trademarks set forth in an accompanying exhibit. *Reno Air Racing*, 452 F.3d 1126. The Circuit permitted incorporation by reference because the exhibit was attached to the order, but nonetheless vacated the lower court's finding because neither the TRO nor the exhibit clearly identified the trademarks at issue. *Reno Air Racing* also cautioned that "incorporation by reference should be the rare exception rather than the rule." *Id.* at 1133. Matthews interprets *Reno Air Racing* as holding "that the referenced document itself [must] provide specific, unambiguous identification of the prohibited conduct." Matthews Reply 7. For similar reasons as those discussed in the prior paragraph, Matthews argues there is no specific, unambiguous identification of the prohibited conduct here—instead, there is once again reference to an ongoing definitional analysis governing complex intellectual property classifications.

Tesla urges the Court to interpret *Reno Air Racing* and *Davis* as standing for the broad proposition that there is no strict rule against injunctions referencing unattached documents where the enjoined party possesses all referenced documentation. Tesla also cites to *Ross-Whitney Corp. v. Smith Kline & French Lab'ys*, 207 F.2d 190, 198 (9th Cir. 1953), which explains that "assessing an injunction's Rule 65(d) compliance requires reviewing the injunction "in connection with the [underlying] findings of fact." Tesla argues Matthews understands its obligations under the injunction because of the context of their litigation and the six-day trial that ultimately led to the

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD

United States District Court
Northern District of California

Interim Award and Permanent Injunction.

The Court agrees with Matthews that the Arbitrator's incorporation of multiple complex intellectual property definitional analyses across two arbitration awards and one contract, which is still currently in dispute in this and other ongoing arbitration, violates Rule 65(d).  These facts are quite different from the internal fire department rules attached in *Davis*, or the one exhibit displaying a trademark in *Reno Air Racing*.  Although reference to external documents is not strictly prohibited in the Ninth Circuit, it is still an exception to the rule, and this is not one of those exceptions.  *See, e.g., uSens, Inc. v. Shi*, No. 18-CV-01959-SVK, 2018 WL 11436323, at *2 (N.D. Cal. Oct. 11, 2018) (injunction referring to separate "Consulting Agreement" lacked specificity Rule 65(d) requires).

As for Paragraph 2, this language provides:

> Matthews is further ENJOINED AND ORDERED to cease and refrain from publishing in any patent application or otherwise disclosing in violation of the GTCs information that Telsa had marked as "Confidential and Proprietary" (or words to that effect) before disclosing said information to Matthews.

Matthews argues Paragraph 2 violates Rule 65(d)(1)(B) and (C)'s requirement that the restrained conduct be described in terms that are "not so vague that the [enjoined party] cannot understand what is required."  *Melendres v. Skinner*, 113 F.4th 1126, 1140 (9th Cir. 2024).

Matthews specifically takes issue with two parts of this paragraph.  First, Matthews argues that the simple reference to a "violation of the GTCs" without identifying prohibited conduct fails to sufficiently describe the conduct enjoined.  The GTCs contain numerous complex provisions regarding confidentiality and intellectual property, all of which are subject to extensive litigation and competing interpretations in multiple arbitration proceedings.  Within this framework, it is possible that Tesla may mark certain content is "confidential" even when outside the scope of the GTCs.  Matthews compares this case to *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013), where the Ninth Circuit found a permanent injunction ordering a defendant to remove "Infringement-Related Terms" was too vague to provide proper notice to the defendant.  *See also, e.g.*, *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (vacating

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
10

injunction that provided "little, if any, guidance to [the defendant] regarding how he should determine what particular information is confidential or privileged"); *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (vacating injunction that did "not identify the trade secrets and the copyrighted works that it bar[red the defendant] from, respectively, misappropriating and infringing.").

Second, Matthews argues the phrase "or words to that effect" is too indefinite. Neither Tesla nor the Arbitrator have identified the full universe of markings that constitute "words to that effect."

Tesla contends that Paragraph 2 clearly describes the conduct enjoined because it targets the same conduct for which the Arbitrator found Matthews liable after a six-day trial— specifically, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Again emphasizing context, Tesla argues that the conduct enjoined was exhaustively analyzed in the Interim Award. According to Tesla, ▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒. *See contra Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) (vacating injunction that purported to bar violating "any term").

Similarly here, the Court finds the phrasing is too broad to satisfy the notice and enforcement requirements in Rule 65—specifically, the Court agrees that the phrases "in violation of the GTCs" and "words to that effect" are problematic. The GTCs are not self-effecting; they are guided by multiple arbitration awards. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Tesla merely marking a document "confidential" does not translate to that document being "confidential" for purposes of the GTCs. While there is some additional context for Matthews to discern the prohibited conduct than was the case in, for example, *Columbia Pictures*, the Court still finds the phrasing here is too broad as written and could be perceived to cover conduct beyond the scope of the Arbitrator's

United States District Court
Northern District of California

findings, including conduct that does not actually violate the GTCs.

Ultimately, in discussing the ambiguities in both paragraphs during the hearing, it became clear that the Permanent Injunction will likely be subject to further litigation regarding its bounds. For example, it became apparent during the hearing that the parties have different interpretations of the Permanent Injunction's applicability to the notion of a "clean room." In explaining the boundaries of the injunction, Tesla originally stated:



04/29/2026 Tr. 51:21–52:6, ECF No. 141.

Then, Matthews' counsel took the position that Tesla's "clean room" limitation was explicitly rejected by both arbitrators:



*Id.* at 59:2–10.

To that question, Matthews merely repeated that it would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 59:13–18.

This colloquy suggests that Tesla believes the Permanent Injunction enjoins ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such disputes regarding the scope of enjoined conduct should be resolved now before the arbitrators rather than before this Court in the context of contempt proceedings.

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
12

United States District Court
Northern District of California

### III.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** both motions.  The Court **CONFIRMS** Paragraph 1, but **REMANDS** for further specificity in Paragraphs 2 and 3 in compliance with Rule 65(d).

**IT IS SO ORDERED.**

Dated: May 27, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-03615-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. RE ARBITRATION AWARD
13